**Patterson Belknap Webb & Tyler** LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

December 10, 2021

Gregory L. Diskant
(212) 336-2710
gldiskant@pbwt.com

**BY ECF**

The Honorable Victor Marrero
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:    *Civil Rights Corps, et al. v. Pestana, et al.*, **21-CV-9128 (VM)**

Dear Judge Marrero:

This firm represents the Plaintiffs in the above-captioned case. We write pursuant to section II(A) of Your Honor's individual rules to request a pre-motion conference regarding Plaintiffs' proposed motion for partial summary judgment, which will address two issues. The City Defendants have stated they will oppose the motion; the State Defendants have not selected counsel yet and so have not taken a position.

**I.    Third-Party Participants In Grievance Proceedings Cannot Constitutionally Be Bound By The Confidentiality Provisions Of Judiciary Law § 90(10)**

The third claim in the Complaint contends that New York State Judiciary Law § 90(10) is unconstitutional insofar as it purports to limit the free speech rights of third-party participants in grievance proceedings, i.e., complainants, respondents, witnesses, and any third-party who is not an agent or employee of the Grievance Committee or the courts. This is a pure question of law.

Absent a court order otherwise, Section 90(10) requires absolute secrecy of "all papers, records and documents" connected with "any complaint . . . relating to the conduct or discipline of an attorney." The secrecy demanded by Section 90(10) continues forever unless the proceeding results in public discipline that is sustained by the Appellate Division. Plaintiffs have been accused of violating the law by publishing their complaints and will face further accusations if they publish correspondence about their complaints with the Grievance Committee and the Corporation Counsel of New York. The threat of discipline has forced Plaintiffs to file this correspondence under seal. Such an overreaching prior restraint on speech is unconstitutional. That has been the unanimous conclusion of the four state supreme courts and one federal district court that have considered this issue. *See In re Warner*, 21 So. 3d 218, 262 (La. 2009); *R.M. v. Supreme Court*, 883 A.2d 369, 377-82 (N.J. 2005); *Doe v. Doe*, 127 S.W.3d 728, 734-36 (Tenn. 2004); *In re Petition of Brooks*, 678 A.2d 140, 143-46 (N.H. 1996); *Doe v. Supreme Court of Fla.*, 734 F. Supp. 981, 988 (S.D. Fla. 1990). Without a single dissenting vote, these courts have all found that similar content-based restrictions on speech are presumptively

unconstitutional and are not narrowly tailored to accomplish a compelling state interest sufficient to warrant a blanket gag order on parties not associated with the court or grievance committees.

As applied here, Section 90(10) would unconstitutionally limit Plaintiffs' ability to publicize their efforts to reform the grievance process. It would prevent publication of future complaints of prosecutorial misconduct that Plaintiffs might file and of communications that Plaintiffs may receive from the Grievance Committee in their capacity as complainants, such as decisions to institute or decline an investigation. The Grievance Committee has already sent several letters to Plaintiffs and has designated those letters "Confidential," raising the threat that Plaintiffs may be found to have violated the Judiciary Law if they publish the letters. Indeed, Section 90(10) would even prevent a respondent exonerated by the process in a non-public decision from sharing that decision.

To date, the New York courts have dealt with the overbreadth of Section 90(10) on an ad hoc basis, ruling for instance (without First Amendment analysis and on a particular set of facts) that a respondent did not violate Section 90(10) by publishing a complaint filed against him. *In re Aretakis,* 16 A.D.3d 899, 900 (3d Dep't 2005) (granting order *nunc pro tunc* approving respondent's release of complaint). But that approach leaves substantial uncertainty about what Section 90(10) permits, and this uncertainty chills the free speech rights of parties such as Plaintiffs. As the Louisiana Supreme Court concluded about a similar law, the rule "violate[s] the First Amendment, as it constitutes an unconstitutional content-based restriction of speech." *In re Warner*, 21 So. 3d at 262. Such a restriction serves no compelling state interest. Rather, as the Florida federal court noted, "[i]mposing an enforced silence on all aspects of Bar disciplinary matters . . . is more likely, in our view, to engender resentment, suspicion, and contempt for [the] Bar and its legal institutions than to promote integrity, confidence, and respect." *Doe v. Supreme Ct. of Fla*., 734 F. Supp. at 987.

## II. Disciplinary Hearings On Plaintiffs' Complaints Should Be Public

Plaintiffs' fourth and fifth claims for relief seek a ruling that, as applied to the facts presented here, the First Amendment, Article I § 8 of the New York Constitution, and New York Judiciary Law § 4 require that any proceedings arising out of the 21 complaints filed by the Professors be open to the public. At the very least, good cause exists for opening these proceedings, as is permitted by Judiciary Law § 90(10).

Plaintiffs do not seek a ruling that all disciplinary proceedings be open to the public; rather, we seek a ruling on undisputed facts that any proceedings arising from the Professors' complaints should be public. The following facts are undisputed: (1) the Professors' complaints are all based on findings of prosecutorial misconduct by the courts on the public record; (2) resolving whether such findings warrant attorney discipline is a matter of public interest; (3) the accused prosecutors have a diminished interest in privacy because the allegations against them

are public; and (4) the complainants, the Professors, have waived any interest in privacy by publishing their complaints.

On these facts, the Grievance Committee proceedings should be public. "[I]t is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). Attorney disciplinary hearings are "judicial proceedings" and the grievance committees that investigate and hear misconduct complaints in New York act as a "quasi-judicial body" and "an arm of the Appellate Division." *Wiener v. Weintraub*, 29 N.E.2d 540, 541 (N.Y. 1968).

The First Amendment right of access to judicial proceedings exists to provide courts "a measure of accountability and for the public to have confidence in the administration of justice." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013). These are exactly the reasons that Plaintiffs seek access here. A presumption of access arises if the public has historically been given access to the proceeding and if public access plays a significant positive role in the functioning of the process. This presumption can only be overcome by showing that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Ct. of California for Riverside Cty.*, 478 U.S. 1, 8–9 (1986). Defendants will be unable to meet this test.

Judicial and quasi-judicial proceedings have long been open to the public in this country. New York law affirmatively requires that "[t]he sittings of every court within this state shall be public, and every citizen may freely attend the same." Judiciary Law § 4. In New York, attorney disciplinary complaints were historically heard in a public forum, the Supreme Court. *Wiener*, 239 N.E.2d at 541. Even if these disciplinary proceedings are viewed as administrative, rather than judicial or quasi-judicial, they are "administrative hearings at which individual rights are adjudicated," which is a type of administrative hearing that has "traditionally been open [to the public]." *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 302 n. 12 (2d Cir. 2011).

There is no valid countervailing rationale for making these proceedings private. Neither purpose of Section 90(10) applies here: the Professors have already chosen to publicize their complaints and the prosecutors have at best a diminished interest in privacy because the allegations are based on judicial findings already in the public record. Application of Section 90(10) to close the proceedings in this case serves no legitimate government interest whatsoever.

On Plaintiffs' motion for summary judgment, the Court can find that Section 90(10) is unconstitutional as applied to the facts of this case. Alternatively, and for the same reasons, it can find that "good cause" exists to open the proceedings pursuant to Section 90(10), which permits the public a right of access to disciplinary proceedings and all records of such proceedings upon a finding of good cause. In either event, Plaintiffs' summary judgment motion can be decided on the undisputed facts presented.

Honorable Victor Marrero
December 10, 2021

                                  Respectfully submitted,

                                  */s/ Gregory L. Diskant*

                                  Gregory L. Diskant

Cc:    Elizabeth A. Figueira, NYS Office of the Attorney General
        Krista Friedrich, NYC Law Department