USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/2022

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CIVIL RIGHTS CORPS, ET AL.,         :
                                    :
              Plaintiffs,           :
                                    :    21 Civ. 9128 (VM)
    - against -                     :
                                    :    ORDER
GEORGIA PESTANA, ET AL.,            :
                                    :
              Defendants.           :
------------------------------------X
```

**VICTOR MARRERO**, **United States District Judge**.

On November 4, 2021, Plaintiffs Cynthia Godsoe, Nicole Smith Futrell, Daniel Medwed, Justin Murray, Abbe Smith, and Steven Zeidman, (together the "Law Professors"), and Civil Rights Corps ("CRC," and with the Law Professors, "Plaintiffs") filed suit against Georgia Pestana, Corporation Counsel of the City of New York; Melinda Katz, Queens District Attorney; Andrea Bonina, Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee"); Justice Hector D. LaSalle, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of New York; and Diana Maxfield Kearse, Chief Counsel of the Grievance Committee (together, "Defendants"). (See "Complaint," Dkt. No. 1). Plaintiffs attached seven exhibits to the Complaint, but filed those exhibits under seal. Now before the Court is Plaintiffs' motion requesting the Court

1

unseal the exhibits. (See "Motion," Dkt. No. 9). Also before the Court are Defendants' three letter briefs in opposition to the request to unseal. (See "Bonina and LaSalle Opposition," Dkt. No. 48; "Pestana and Katz Opposition," Dkt. No. 49; "Kearse Opposition," Dkt. No. 50.) For the reasons stated below, the Motion is hereby GRANTED.

## I. BACKGROUND[1]

CRC is a non-profit organization that seeks to challenge systemic injustice across the country. CRC and the Law Professors assert that they share an interest in combatting prosecutorial misconduct. To that end, and recognizing attorney grievance committees' unique role in regulating the conduct of prosecutors, in May 2021 the Law Professors filed twenty-one grievance complaints (the "Grievance Complaints") against current and former Queens District Attorney's Office employees, all alleging misconduct committed while the subjects were working as assistant district attorneys. The Grievance Complaints requested that the respective grievance committees publicly investigate and, if appropriate, discipline each attorney.

In addition to filing the complaints with the Grievance Committee, Plaintiffs created a website to bring awareness to

---

[1] All factual and procedural background is drawn from the Complaint. Except where directly quoted, no citations will be made to the relevant docket entries.

2

their campaign for prosecutorial accountability. Plaintiffs posted the Grievance Complaints on the website and urged visitors to put pressure on the Grievance Committee by means of an email campaign.

There was one substantial obstacle to this public campaign plan: Section 90(10) of the New York Judiciary Law, which states that "all papers, records, and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of attorneys, shall be sealed and deemed private and confidential." N.Y. Jud. Law. § 90(10) ("Section 90(10)"). Because of this provision, James Johnson, then-Corporation Counsel for the City of New York, sent letters to the Grievance Committee expressing his concerns about the online publication of the Grievance Complaints (the "Johnson Letter"). He copied the Law Professors on this correspondence. Shortly thereafter, the Law Professors received a letter from defendant Kearse notifying them that any investigation into the Grievance Complaints would be initiated *sua sponte* by the Grievance Committee and kept confidential (the "Kearse Letter").

The Law Professors interpreted the Kearse letter as their dismissal from the Grievance Complaints and a denial of their "complainant" status. They also believe the Johnson Letter was the impetus for the Kearse Letter, as Plaintiffs

3

allege the Johnson Letter was sent in retaliation for their publishing the Grievance Complaints and the Kearse Letter notified them of adverse action taken upon Kearse's receipt of the Johnson Letter. Plaintiffs exchanged further letters with Kearse and defendant Pestana, Johnson's successor as Corporation Counsel, but the parties were unable to see eye-to-eye about whether the Corporation Counsel should rescind the Johnson Letter and Kearse should reinstate the Plaintiffs as complainants. Thus, Plaintiffs filed suit in this Court.

The Kearse and Johnson Letters are at the heart of Plaintiffs' Complaint. The merits of the Complaint are not before the Court at this time, but Plaintiffs bring various claims, alleging violations of the United States and New York Constitutions, all stemming from the Johnson Letter and Plaintiffs' subsequent dismissal as complainants, as described in the Kearse Letter. Plaintiffs attached seven letters as exhibits to the Complaint: the Johnson Letter, the Kearse Letter, and five other letters between Plaintiffs' counsel and Defendants (the "Exhibits"). The Exhibits were initially filed under seal because the Corporation Counsel asserted, in their letters, that the letters were confidential.

Shortly after filing the Complaint, Plaintiffs submitted the Motion to this Court requesting that the Court order the

unsealing of the Exhibits, arguing that they are judicial records subject to public disclosure. The *New York Times*, a non-party to this suit, submitted a letter in support of the Motion, emphasizing the public interest in the Exhibits. (See "Times Letter," Dkt. No. 57.) All Defendants oppose the Motion, arguing that the Exhibits fall within the purview of Section 90(10) and must remain confidential.

## II. LEGAL STANDARD

Courts have recognized that both common law and the First Amendment protect a right of public access to court documents. See Trump v. Deutsche Bank AG, 940 F.3d 146, 150 (2d Cir. 2019). Both rights are qualified rather than absolute. While the First Amendment right offers greater protection than the common-law right, the rights are intimately connected.

To determine whether a First Amendment right of access attaches in a given case, the Second Circuit has developed two approaches. The first calls on the Court to consider "experience and logic," or "whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." Bernstein v. Bernstein Litowitz Berger & Grossman, 814 F.3d 132, 141 (2d Cir. 2016) (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006)). The second

5

approach is "relevant only after court proceedings have commenced" and, thus, is irrelevant in evaluating a newly filed civil complaint. Id. In taking the first approach, courts "have generally invoked the common law right of access to judicial documents in support of finding a history of openness." Lugosch, 435 F.3d at 120 (quotations omitted).

The common law right of access applies only to "judicial records and documents." Brown v. Maxwell, 929 F.3d 41, 49 (2d. Cir. 2019) (citing Nixon v. Warner Commc'ns, 435 U.S. 589, 597—98 (1978)). Not every document filed with a court is a judicial document, but instead the document "must be relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")).

A document is "relevant to the performance of the judicial function" if it would "reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." Brown, 929 F.3d at 49. Put differently, the Court is to "evaluate the relevance of the document's specific contents to the nature of the proceeding and the degree to which access to

6

the document would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceeding." Bernstein, 814 F.3d at 140 (internal quotations omitted).

If the court determines that a document is indeed a judicial document, the presumption of access attaches to the document. See Lugosch, 435 F.3d at 119. The attachment of the presumption does not automatically mean the document should be unsealed. Rather, the court must determine how much weight to afford the presumption — a question "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Brown, 929 F.3d at 49 (quoting United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II")). The document will generally "fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Amodeo II, 71 F.3d at 1049. The presumption is given "strong weight" where the documents at issue play a large role "in determining litigants' substantive rights -- conduct at the heart of Article III -- and from the need for public monitoring of that conduct." Id.

After the court has determined how heavily to weigh the presumption of public access, it must conduct a balancing test in which it weighs that presumption, along with the public interest in disclosure, against other "countervailing factors," including "(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure." Bernstein, 814 F.3d at 143 (quoting Amodeo II, 71 F.3d at 1050). If the scales tip towards public access, then the documents should be unsealed.

### III. DISCUSSION

Because courts often rely on the common law right of access to determine whether history supports a finding that the First Amendment protects access in a particular case, the Court begins by assessing the common-law question, asking first whether the Exhibits to the Complaint are judicial documents entitled to the presumption of access. The Court then turns to an assessment of how much weight to give the presumption and whether any countervailing factors favor against unsealing. After the common-law analysis, the Court will address the First Amendment question.[2]

---

[2] Defendants do not argue that the exhibits are not judicial documents or that the presumption of public access does not apply. Rather, they *solely* argue that Section 90(10) prohibits the public disclosure of the Exhibits, an argument addressed below in both the common-law and First Amendment frameworks.

8

A.  THE COMMON LAW RIGHT OF ACCESS

　　1.  The Exhibits Are Judicial Documents

The Second Circuit has stated that pleadings "are judicial records subject to a presumption of access." Bernstein, 814 F.3d at 140. However, exhibits to a complaint are judicial documents only "if they are *currently* relevant to the judicial function," regardless of whether they could later become relevant. Accent Delight Int'l Ltd. v. Sotheby's, 394 F. Supp. 3d 399, 417 (S.D.N.Y. 2019).

Here, the Court finds that the Exhibits are judicial documents because they are central to the legal claims raised in the Complaint. Cf. Refco Grp. Ltd. v. Cantor Fitzgerald L.P., No. 13 Civ. 1654, 2015 WL 4298572, at *5 (S.D.N.Y. July 15, 2015) (allowing redactions to a complaint's exhibits where the exhibits were "minimally relevant" to the parties' claims). Though not addressed in this decision, currently pending before the Court are Defendants' three motions to dismiss. The Exhibits are crucial to the Court's adjudication of those motions. It is impossible for the Court to determine whether the pleadings satisfy the standard of Federal Rule of Civil Procedure 12(b)(6) — or whether the Court has jurisdiction over the claims or whether any abstention doctrines counsel the Court to decline to exercise its jurisdiction — without review of the Exhibits.

9

The Court can thus conclude that the Exhibits "relate directly" to Plaintiffs' allegations of retaliation, harassment, and disparate treatment, and those allegations "constitute a roadmap to [their] claim[s] for relief; for this reason, the presumption in favor of public access is strong as applied to the Complaint." Doscher v. Sobel & Co., No. 14 Civ. 646, 2014 WL 846773, at *3 (S.D.N.Y. Mar. 3, 2014) (internal quotations omitted). The Court thus concludes that the Exhibits are judicial documents to which the presumption in favor of public access applies.

2. The Presumption of Access Carries Heavy Weight

Because the presumption applies to resolution of the matter before it, the Court must determine how much weight to give it. And, in part for the reasons discussed above, the Court finds that the presumption of public access must be given "strong weight" here, as the Exhibits at issue play a crucial role in "determining litigants' substantive rights." Amodeo II, 71 F.3d at 1049.

The Amodeo II Court also noted that the presumption weighs heavy where there is "the need for public monitoring of [the Court's] conduct" in adjudicating the dispute. Id. This case is one presenting such necessity. As the *New York Times* points out in its letter in support of unsealing, "[a]t the core of this lawsuit is the allegation that government

10

officials weaponized a secrecy law in order to silence the plaintiffs on a matter of serious public concern." (Times Letter at 2.) Without evaluating the merits of Plaintiffs' claims, the Court agrees with the *New York Times'* characterization of the effect of Defendants' reading of Section 90(10) at this stage of the litigation. For this reason, the Court is persuaded that it is in the public interest to allow open access to the Exhibits.

Tying together these two interests is another consideration: that, due to the close connection between the legal claims at issue and the content of the Exhibits, sealing the Exhibits would "leave the Court unable to explain its reasoning in [the] adjudication of this matter without extensive reference to materials under seal," which in turn denies the public access to "matters that directly affect this adjudication." Sylvania v. Ledvance LLC, No. 20 Civ. 9858, 2021 WL 412241, at *2 (S.D.N.Y. Feb. 5, 2021) (internal quotations omitted). As such, the presumption of public access carries great weight here.

3. No Countervailing Factors Weigh Against Unsealing

It is well-established that the "burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." DeRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 826 (2d Cir. 1997). See also

11

P&L Dev., LLC v. Gerber Prods. Co., No. 21 Civ. 5382, 2022 WL 94380, at *3 (E.D.N.Y. Jan. 10, 2022) ("The party seeking sealing bears the burden of showing that the confidential . . . interests of its client outweigh the public's right to understand the allegations in this lawsuit, as well as the reason why the Court takes any action herein."). Defendants' attempt to meet this burden was weak, as they do not point to any concrete harm that will be caused or interests that will affected if the Exhibits are unsealed.

Like Bernstein, "[t]his is not a case in which disclosure would reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets." 814 F.3d at 143. Nor does it call into question attorney-client privilege or any other need to protect confidential information regarding the subject of the documents — taking into account that the subjects of the documents in dispute are the Law Professors, who seek unsealing.

The only interest that Defendants purport outweighs the presumption of access is their assertion that Section 90(10) mandates "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential." N.Y. Jud.

12

Law § 90(10). Plaintiffs contend that the Exhibits fall within the scope of this provision's protections. In response, Defendants Pestana, Katz, and Kearse[3] argue that "the exhibits explicitly reference and convey information regarding the complaints filed by Plaintiffs with the Grievance Committee so they fall squarely within the plain language of the statute's confidentiality provision." (Pestana and Katz Letter at 1.)

The Court finds that Section 90(10) does not require the exhibits to remain sealed. The Court expresses no opinion regarding whether letters of the same sort as the Exhibits fall within the scope of Section 90(10), as the Court need not decide that issue of state law. Rather, New York's appellate courts have stated that the confidentiality provisions of Section 90(10) serve two purposes (1) protecting complainants, and (2) safeguarding a professional's reputation. See Matter of Aretakis, 791 N.Y.S.2d 687, 688 (3d Dep't 2005). Because the Law Professors are the complainants, the first interest does not support confidentiality. As for the second interest, both the information contained in the Grievance Complaints and the actual Grievance Complaints are already public information,

---

[3] Defendant Kearse adopted the arguments of all other defendants. (See Kearse Opposition.)

which obviates the need for Section 90(10)'s protections. See id.; cf. Matter of Rodeman, 883 N.Y.S.2d 835, 837 (4th Dep't 2009) (finding a petition alleging violations of Section 90(10) could not be sustained when neither purpose is implicated).

If the only basis for applying Section 90(10)'s confidentiality provisions to the Exhibits is that the Exhibits reference the Grievance Complaints, then Section 90(10) does not apply here. When the Law Professors published the Grievance Complaints online, those documents became public information, a fact that cannot be reconciled with an argument now that the Exhibits must remain sealed at risk of references to the mere existence of the Grievance Complaints being revealed. The Grievance Complaints cannot serve as the anchor tying the Exhibits to Section 90(10)'s protections.

Because Section 90(10) is inapplicable to the Exhibits, any interest in deferring to its provisions is minimal and easily outweighed by the interest in public access. The Court finds that the common law right to access demands unsealing the Exhibits.

B. THE CONSTITUTIONAL RIGHT OF ACCESS

Despite finding the common law presumption exists and outweighs any countervailing factors, the Court must still

determine whether the First Amendment presumption of access exists. See Lugosch, 435 F.3d at 124.

In determining whether the First Amendment right applies, the Second Circuit's decision in Bernstein v. Bernstein Litowitz Berger & Grossman, where the Court faced a question of whether to unseal a complaint, is instructive. The Bernstein Court explained that "experience and logic both support[ed] access," because "[c]omplaints have historically been publicly accessible by default, even when they contain arguably sensitive information." 814 F.3d at 141. "Public access to complaints allows the public to understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern." Id. As discussed with regard to the common law right, supra, the Exhibits are so integral to this case that they should be put on equal footing with the Complaint. Public access to the Exhibits will support the same interests stressed by the Bernstein court. Experience and logic both dictate that the Exhibits are crucial documents for public understanding of both the allegations in the Complaint and any decisions by this Court on the pending substantive motions.

Of course, the First Amendment right of access is not absolute. It can be overcome with a showing, by the party in

15

favor of sealing, that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 144.

Defendants do not explicitly address this required showing. The only "higher value" that the Court can infer from their opposition papers is that Section 90(10), a state law, dictates that the Exhibits should remain confidential. Even if the Court had found Section 90(10) applicable, Defendants have not attempted to show that the statute is narrowly tailored to serve state law interests. The First Amendment right has not been overcome and the Exhibits should be unsealed under the First Amendment right to public access.

Further, the Court notes that because the First Amendment calls for public access here, if Section 90(10) applied and mandated the exhibits stay sealed, there would be a conflict between the United States Constitution and state law.[4] And where state and federal law conflict, "state law must give way." PLIVA, Inc. v. Mensing, 564 U.S. 604, 617 (2011); see also U.S. Const. art. VI ("This Constitution . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or laws of any State to the Contrary

---

[4] The Court is not addressing the overall constitutionality of Section 90(10), but rather only as it relates to the Section 90(10) argument in this particular context, where a finding that the First Amendment protects a right to public access has been made but state law aims to suppress that public access.

16

notwithstanding."). Other courts have similarly concluded that a statute cannot, on its own and without a showing of a higher value and narrow tailoring, defeat the First Amendment right to public access to judicial documents. See, e.g., In re New York Times Co., 828 F.3d 110, 115 (2d Cir. 1987) ("[W]here a qualified First Amendment right of access exists, it is not enough simply to cite Title III. Obviously, a statute cannot override a constitutional right.").

The First Amendment right of public access to court documents applies to Plaintiffs' Exhibits. In order to protect that right, the Exhibits must be unsealed.

### IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that Plaintiffs' motion to unseal all seven exhibits to the Complaint (Dkt. No. 9) is **GRANTED**.

Plaintiffs are directed to re-file the Complaint with all exhibits attached for public viewing.

**SO ORDERED.**

Dated: New York, New York
       25 January 2022

_____
Victor Marrero
U.S.D.J.