**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CIVIL RIGHTS CORPS, CYNTHIA GODSOE,
NICOLE SMITH FUTRELL, DANIEL S.
MEDWED, JUSTIN MURRAY, ABBE SMITH,
AND STEVEN ZEIDMAN,

Plaintiffs,

v.

GEORGIA PESTANA, Corporation Counsel of the
City of New York, in her official and personal
capacity; MELINDA KATZ, the District Attorney
for Queens County, in her official and personal
capacity; ANDREA E. BONINA, Chair of the State
of New York Grievance Committee for the Second,
Eleventh, and Thirteenth Judicial Districts, in her
official and personal capacity; DIANA MAXFIELD
KEARSE, Chief Counsel of the State of New York
Grievance Committee for the Second, Eleventh, and
Thirteenth Judicial Districts, in her official and
personal capacity; and HECTOR D. LASALLE,
Presiding Justice of the Second Judicial Department
of the Appellate Division of the Supreme Court of
the State of New York, in his official capacity,

Defendants.

Case No. 21 Civ. 9128 (VM)

Hon. Victor Marrero

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

    A.    The Law Professors File Grievance Complaints and Publish Them ...................... 3

    B.    Defendants' Response to the Law Professors' Grievance Complaints ................. 5

    C.    Judiciary Law § 90(10) ........................................................................................ 7

    D.    Grievance Proceedings Are Secret ....................................................................... 9

LEGAL STANDARD .................................................................................................. 11

ARGUMENT ............................................................................................................... 12

I.     JUDICIARY LAW § 90(10) VIOLATES THE FIRST AMENDMENT ........................ 13

    A.    Judiciary Law § 90(10) Is a Content-based Law .................................................. 14

    B.    Judiciary Law § 90(10) Cannot Survive Strict Scrutiny ..................................... 15

        1.    No Compelling State Interest Supports Judiciary Law § 90(10) ................. 16

        2.    Judiciary Law § 90(10) Is Not Narrowly Tailored ..................................... 18

    C.    *Kamasinski* Cannot Save Judiciary Law § 90(10) ............................................. 22

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................. 12

*In re Aretakis*,
16 A.D.3d 899 (N.Y. App. Div. 2005) ............................................................... 8, 18

*Bigelow v. Virginia*,
421 U.S. 809 (1975) ................................................................................................. 13

*Brown v. Entm't. Merchs. Ass'n*,
564 U.S. 786 (2011) ................................................................................................. 16

*Burson v. Freeman*,
504 U.S. 191 (1992) ..................................................................................... 14, 16, 18

*Butterworth v. Smith*,
494 U.S. 624 (1990) ........................................................................................... 13, 17

*In re Capoccia*,
59 N.Y.2d 549 (1983) .......................................................................................... 8, 16

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of New York*,
447 U.S. 530 (1980) ........................................................................................... 14, 16

*Cox v. McLean*,
49 F. Supp. 3d 765 (D. Mont. 2014) ...................................................................... 24

*Doe v. Ashcroft*,
334 F. Supp. 2d 471 (S.D.N.Y. 2004) ...................................................... 14, 19, 24, 25

*Doe v. Doe*,
127 S.W.3d 728 (Tenn. 2004) ................................................................................ 13

*Doe v. Supreme Ct. of Fla.*,
734 F. Supp. 981 (S.D. Fla. 1990) ................................................... 13, 17, 20, 21

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
489 U.S. 214 (1989) ................................................................................................. 18

*FEC v. Mass. Citizens for Life, Inc.*,
479 U.S. 238 (1986) ................................................................................................. 15

*In re: The Innocence Project,*
No. 2019-05674 (N.Y. App. Div. July 12, 2019) .................................................9

*John Doe, Inc. v. Mukasey,*
549 F.3d 861 (2d Cir. 2008) ............................................................................24

*Kamasinski v. Jud. Rev. Council,*
44 F.3d 106 (2d Cir. 1994) .....................................................................*passim*

*In re Kurtzrock,*
192 A.D.3d 197 (N.Y. App. Div. 2020) ..............................................................9

*Landmark Commc'ns, Inc. v. Virginia,*
435 U.S. 829 (1978) .................................................................................. 16, 17

*Madison Sch. Dist. v. Wisconsin Emp. Rel. Comm'n,*
429 U.S. 167 (1976) .........................................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) .........................................................................................11

*In re New York News, Inc.,*
113 A.D.2d 92 (N.Y. App. Div. 1985) ................................................................8

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964) .........................................................................................13

*Org. for a Better Austin v. Keefe,*
402 U.S. 415 (1971) .........................................................................................13

*In re Petition of Brooks,*
678 A.2d 140 (N.H. 1996) ........................................................................ 13, 14

*Philadelphia Indem. Ins. Co. v. Employers Ins. Co. of Wausau,*
318 F. Supp. 2d 170 (S.D.N.Y. 2004) ..............................................................11

*R.M. v. Supreme Court,*
883 A.2d 369 (N.J. 2005) .......................................................................... 13, 19

*Republic of Kazakhstan v. Does 1-100,*
2015 WL 6473016 (S.D.N.Y. Oct. 27, 2015) ...................................................13

*Republican Party of Minn. v. White,*
536 U.S. 765 (2002) .........................................................................................19

*In re Rodeman,*
883 N.Y.S.2d 835 (N.Y. App. Div. 2009) ................................................. 16, 18

iii

*Simon & Schuster, Inc. v. Members of N.Y.S. Crime Victims Bd.*,
    502 U.S. 105 (1991) ...................................................................................... 19

*Smith v. Daily Mail Publ'g Co.*,
    443 U.S. 97 (1979) ........................................................................................ 13

*Stilip v. Contino*,
    613 F.3d 405 (3d Cir. 2010) .......................................................................... 24

*In re The Innocence Project, Inc.*,
    No. 2019-05674 (N.Y. App. Div. July 12, 2019) ............................................ 8

*Tschida v. Motl*,
    924 F.3d 1297 (9th Cir. 2019) ....................................................................... 17

*Turner Broadcasting Sys., Inc. v. FCC*,
    512 U.S. 622 (1994) ...................................................................................... 14

*U.S. v. Playboy Entm't. Grp.*,
    529 U.S. 803 (2000) ................................................................................ 15, 16

*In re Warner*,
    21 So. 3d 218 (La. 2009) .................................................................. 13, 17, 18


**Statutes**

New York Judiciary Law § 90(10) ................................................................... *passim*


**Other Authorities**

22 N.Y.C.R.R. § 691.6 (2015) ......................................................................... 10

22 N.Y.C.R.R. § 1240.7 ................................................................................... 10

Fed. R. Civ. P. 56 ....................................................................................... 1, 11

Local Civil Rule 56.1 ......................................................................................... 4

U.S. Const. amend. I ................................................................................. *passim*

Plaintiffs Civil Rights Corps ("CRC") and Professors Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Abbe Smith, and Steven Zeidman (collectively, the "Professors" or "Law Professors"), and Justin Murray submit this memorandum of law in support of their motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

Plaintiffs bring this motion for partial summary judgment to demonstrate that New York Judiciary Law § 90(10) is an unconstitutional prior restraint in violation of the First Amendment.[1] Judiciary Law § 90(10) provides that "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential." The law forbids the publication of both truthful information and materials of public importance. The rule of secrecy applies forever, even to lawyers who are sanctioned. The only exception is the handful of cases—about 2% in the Second Department—where the Appellate Division determines that public discipline is warranted. Judiciary Law § 90(10) even literally forbids those *exonerated* of misconduct from disclosing that fact. On its face, Judiciary Law § 90(10) presumptively violates the First Amendment and cannot survive strict scrutiny. And, as applied in this case, the law was weaponized by some Defendants—various public officials employed by the State and City of New York—to attempt to suppress the publication of materials alleging misconduct by present and former prosecutors, and even to suppress public disclosure of the Defendants' harassment of the Plaintiffs. Judiciary Law § 90(10) is unconstitutional both on its face and as applied.

---

[1] In correspondence with the Court, Plaintiffs identified a second summary judgment motion that they proposed to file, one directed at public access to disciplinary proceedings. ECF No. 29. In correspondence with the Defendants and the Court, Plaintiffs agreed to limit this motion to the prior restraint flaws in Judiciary Law § 90(10). ECF No. 53. Plaintiffs will file their motion directed to access at a later time.

In May 2021, as part of a campaign to reform the attorney grievance process in New York, the Law Professors filed 21 complaints with various grievance committees against present and former assistant district attorneys who worked in the Queens District Attorney's Office. The complaints were all based on the public record and all charged the respondents with prosecutorial misconduct. After filing the complaints, the Law Professors published the complaints on a website created by CRC that highlighted the ubiquity and severe consequences of prosecutorial misconduct in New York State, as well as the failure of courts, district attorneys, grievance committees, and bar associations to hold prosecutors accountable for their misconduct.

A month later, the Law Professors were copied on an extraordinary letter sent by then-Corporation Counsel for the City of New York, James E. Johnson, to the various Grievance Committees where Plaintiffs had filed their complaints. Writing on behalf of the City of New York and the Queens District Attorney, and in inflammatory language, the Corporation Counsel accused the Law Professors of violating Judiciary Law § 90(10) by publishing their complaints, and implied that because of their public campaign to reform the attorney grievance process, their complaints should be disregarded and that they should face sanctions from the grievance committees. The Corporation Counsel also asserted that his own letter was itself confidential under Judiciary Law § 90(10) and could not be disclosed by the recipients. Soon after, the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial District (the "Grievance Committee") wrote the Law Professors, informing them that since the complaints were based on information derived from public sources, the Committee would treat any resulting investigation as one undertaken *sua sponte*. The effect of this decision, which was seemingly taken in response to the Corporation Counsel's letter, was that the Law Professors would not be informed about any

investigations unless they resulted in public discipline. The Grievance Committee likewise claimed that its letter was confidential.

On its face and as interpreted and applied by Defendants, Judiciary Law § 90(10), restrains speech by providing that "all" materials related to an attorney grievance investigation or proceeding must be sealed and deemed private and confidential. The law excludes no one and therefore applies not only to members and staff of the grievance committees and the courts, but to everyone who becomes aware of such materials, including complainants, witnesses, and the attorneys under investigation. The law mandates confidentiality not only of investigative materials, but even of letters written by public officials to parties not involved in the investigation and that reveal no information about particular investigations or grievances, so long as they "relat[e]" to the grievances. The secrecy provisions of the law last forever, except for those few grievances that result in public discipline.

The nondisclosure provisions of Judiciary Law § 90(10) when applied to complainants, witnesses, and respondents is unconstitutional on its face. And it is unconstitutional when applied to the Plaintiffs, who have a First Amendment right to publish well-founded criticisms of public officials and to lobby for reform of the grievance process at the same time. Any law that prevents the dissemination of truthful information or protected speech will be deemed constitutional only if Defendants can meet their burden of showing that it is narrowly tailored to serve a compelling state interest. They will be unable to do so. No compelling state interest supports § 90(10), and in any event, the law is overbroad and not narrowly tailored to serve any asserted state interest.

## STATEMENT OF FACTS

### A. The Law Professors File Grievance Complaints and Publish Them

To bring attention to New York's pervasive failure to discipline prosecutors for misconduct, and with the support from the CRC, on May 3, 2021, the Law Professors filed 21

discrete complaints pursuant to New York Judiciary Law § 90(10) against individual attorneys currently or formerly employed by the Queens District Attorney's Office for misconduct committed while working as an assistant district attorney. 56.1 ¶ 1.[2] At the same time, Plaintiffs created a website, AccountabilityNY.org, and posted the full text of their complaints to bring public attention to the issue. 56.1 ¶ 2. Each complaint carefully relied on judicial findings that the subject attorney had committed professional misconduct during the course of a criminal prosecution. 56.1 ¶ 3. The Law Professors requested that the grievance committees investigate and discipline each attorney and that they do so publicly. 56.1 ¶ 4. According to public records maintained by the New York State Unified Court System, at the time the grievance complaints were filed none of the accused prosecutors had ever been publicly disciplined. 56.1 ¶ 5.

The Law Professors' complaint against Jesse Sligh is representative of the complaints. 56.1 ¶ 6. In 1988, Sligh prosecuted and obtained a conviction against Clinton Turner for first degree robbery. 56.1 ¶ 7. Turner maintained his innocence, but he was convicted and spent ten years in prison. 56.1 ¶ 8. After obtaining parole, Turner discovered that his conviction was the result of pervasive misconduct by Sligh and sought habeas relief. 56.1 ¶ 9. A federal court set aside the conviction, finding that Sligh's extensive *Brady* violations and the State's reliance on perjured testimony had deprived Turner of a fair trial. 56.1 ¶ 10. The Queens District Attorney declined to retry Turner. 56.1 ¶ 11. When Turner later sued New York State, the state court "conclud[ed] that by clear and convincing evidence Clinton Turner [was] innocent of the crimes charged." 56.1 ¶ 12. So far as the public record reflects, Sligh has not been sanctioned for his misconduct. 56.1 ¶ 13. He continues to practice law in New York State. *Id.*

---

[2] Citations to "56.1" are to the Statement of Undisputed Material Facts under Local Civil Rule 56.1 in Support of Plaintiffs' Motion for Partial Summary Judgment, filed herewith.

**B.     Defendants' Response to the Law Professors' Grievance Complaints**

On June 2, 2021, James E. Johnson, then the Corporation Counsel for the City of New York, sent a letter to each grievance committee before which the Professors had filed their complaints.  56.1 ¶ 14.  The letters accused the Law Professors of violating "the law and the principles on which the grievance process is based"—in particular, Judiciary Law § 90(10)—because the Professors' complaints are part of a "public campaign."  56.1 ¶ 15.  Mr. Johnson wrote that "New York State Judiciary Law § 90(10) designates attorney disciplinary records—including the complaint—private and confidential."  56.1 ¶ 16.  Mr. Johnson never claimed to represent any party in the grievance process and specified that his office was not taking a position on whether the prosecutors had engaged in misconduct.  56.1 ¶ 17.  He insisted nonetheless that this letter was itself "private and confidential under Judiciary Law 90(10)."  56.1 ¶ 18.

On June 11, 2021, Defendant Diana Maxfield Kearse, Chief Counsel of the Grievance Committee, wrote a letter to the Law Professors, seemingly in response to Mr. Johnson's letter. 56.1 ¶ 19.  The letter explained that each of the 21 complaints had been transferred to her office and noted that the Law Professors' complaints were "based on information derived from public sources, specifically, court decisions and court records."  56.1 ¶ 20.  As such, Ms. Kearse said any investigation would be conducted *sua sponte*, thus denying the Law Professors their statutory right to participate in the review process as "complainants."  56.1 ¶ 21.  This means that they will not receive the information—such as a decision to dismiss the complaint—to which complainants are entitled under the law.  56.1 ¶ 22.  Ms. Kearse did not cite any authority that justified depriving the Law Professors of their "complainant" status and rights.  56.1 ¶ 23.  Because the Professors have a well-grounded concern that the Grievance Committee will ignore their complaints, and that the Grievance Committee's failure to take action will vividly dramatize the pervasive flaws in the New York system of attorney discipline, Ms. Kearse's letter was a promise that the Law Professors

could never learn if (or when) their complaints were dismissed or why. Ms. Kearse said as much, writing that the committee's work would "remain confidential pursuant to New York State Judiciary Law § 90 unless [it] resulted in public discipline imposed by the Appellate Division." 56.1 ¶ 24. She too labelled her letter as "Confidential." 56.1 ¶ 25.

Two more letters followed. On July 8, 2021, Georgia M. Pestana, then the Acting Corporation Counsel, and today the Corporation Counsel, wrote to the Grievance Committee. 56.1 ¶ 29. Again relying on Judiciary Law § 90(10), the letter claimed the Law Professors were improperly "using the confidential grievance process to wage a public campaign for prosecutorial reform." 56.1 ¶ 30. Ms. Pestana also asserted that the confidentiality provisions of the law applied to "subsequent records filed with the Committee by the Law Department and others regarding these grievance letters are confidential under the Judiciary Law." 56.1 ¶ 31. That included her July 8 letter, which she said was itself confidential and could not be disclosed by the Professors. 56.1 ¶ 32. Finally, on July 26, 2021, Ms. Kearse reaffirmed that the Grievance Committee would treat any investigation related to the Professors' complaints as *sua sponte*, rather than one in which the Professors were complainants. She also said that this letter was itself "Confidential." 56.1 ¶¶ 33, 34.

Because of the Defendants' claims that all correspondence relating to this dispute must be treated as confidential under the Judiciary Law, when Plaintiffs filed the Complaint in this case, they filed under seal not only the four letters described above, but also three letters sent by Plaintiffs' counsel to the Defendants. 56.1 ¶¶ 26-28. Those letters did not disclose anything confidential about the Professors' complaints against the Queens prosecutors—the subject was barely discussed—but rather objected to the Corporation Counsel's threats and the Grievance Committee's retaliation. In this litigation, the Defendants insisted that all of these pre-litigation

letters were confidential under Judiciary Law § 90(10) and objected to their public disclosure. ECF Nos. 48-50. The Court unsealed all of the letters on January 25, 2022. ECF No. 58.

### C.    Judiciary Law § 90(10)

New York Judiciary Law § 90(10) sweepingly provides that "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential." The statute allows for public disclosure of such documents only "in the event that charges are sustained by the justices of the appellate division" or "upon good cause being shown." *Id.*

The law now known as Judiciary Law § 90(10) was first amended to include a confidentiality provision in 1945. 56.1 ¶ 35. The legislative history reveals that the law was not intended to seal attorney disciplinary records involving public officials. Rather, the focus was on protecting the secrecy of the attorney-client relationship, even when the result is a grievance complaint by an unhappy client. In a March 2, 1945 letter to the Counsel to the Governor, the Presiding Justice of the Second Department wrote that "[t]he purpose of the bill is to seal from indiscriminate public view the confidential records in this court relating to attorneys and counselors at law." 56.1 ¶ 36. Another proponent observed that it would protect the "intimate details of professional conduct in an essentially private relationship" between attorney and client. 56.1 ¶ 37. This was because disciplinary records "usually involve the personal and the private professional conduct of a lawyer" and "are most frequently instituted by a client, whose personal feeling toward the lawyer is extremely bitter." 56.1 ¶ 38. Nowhere in the legislative history do the drafters of the confidentiality provision address protecting public officials, let alone protecting prosecutors from complaints of misconduct based on public information. 56.1 ¶ 39.

The text of § 90(10) broadly defines the scope of the confidentiality provision: "all papers . . . upon any complaint . . . relating to the conduct . . . of an attorney . . . shall be sealed and be

deemed private and confidential." The law excludes no one from its requirement of secrecy and, to the limited extent that the New York courts have interpreted § 90(10), they have found that it applies to all persons who have access to such papers, including third-parties not connected to the grievance process who are lawfully in possession of such papers. For example, in *In re Aretakis*, 16 A.D.3d 899 (N.Y. App. Div. 2005), the respondent disclosed grievance complaints against him without first obtaining judicial authorization. *Id.* at 900-01. After being accused of violating the law, the respondent requested an order *nunc pro tunc* permitting the release of the complaint. *Id.* The Court granted the request, relying on the provision of the law allowing records to be disclosed for "good cause." *Id.* at 901. By relying on the "good cause" exception and treating the request as one that required a court order, even if retroactively, the opinion's premise was necessarily that, without more, § 90(10) prohibited disclosure of complaints by the accused. In addition to encompassing complaints, Judiciary Law § 90(10) also plainly covers the various papers generated during an investigation "upon" the filing of a complaint. Both the Corporation Counsel and the Grievance Committee have endorsed that position here, objecting even to disclosure of their embarrassing (but not confidential) correspondence with Plaintiffs and their counsel.

New York case law is thin on the "good cause" exception that permits the Appellate Division to release a party from their confidentiality obligation. To our knowledge, *Aretakis, In re Capoccia,* 59 N.Y.2d 549 (1983) (accused attorney has right to open to the public the proceedings against him), and *In re New York News, Inc.*, 113 A.D.2d 92 (N.Y. App. Div. 1985) (accused attorney who publicly attacks proceedings waives his right to secrecy) are the only cases in the 77 years since § 90(10) was enacted in which a New York court has permitted the release of any records relating to a disciplinary proceeding for "good cause." What little law there is demonstrates the hostility of the New York courts to public disclosure. Consider *In re The*

*Innocence Project, Inc.*, No. 2019-05674 (N.Y. App. Div. July 12, 2019).  Despite considerable public attention, the Second Department refused to unseal records of disciplinary proceedings against disgraced former Suffolk County prosecutor, Glenn Kurtzrock, even though two years had passed without any action after a referral by the Suffolk County District attorney, who had fired Kurtzrock for misconduct.  (Eventually, three years after the referral, Kurtzrock was suspended from practice for two years.  *In re Kurtzrock*, 192 A.D.3d 197, 220 (N.Y. App. Div. 2020).)

D.     **Grievance Proceedings Are Secret**

As required by Judiciary Law § 90(10), attorney disciplinary proceedings take place in secret.  All preliminary investigations are secret.  All findings of probable cause are secret.  All hearings after a finding of probable cause are secret.  The public is therefore generally unaware of the existence and outcome of disciplinary proceedings.  Only when public discipline is imposed by the Appellate Division—in about 2% of cases in the Second Department—does the public even know an investigation occurred.  This may only happen many years after the violations that led to the discipline.  Where the grievance committee finds the attorney's behavior wrongful in some way, but the issue does not go to the Court, the result is private discipline that is never made public.  Exonerations by a grievance committee are likewise not public.

In 2021, there were 185,076 active lawyers residing in New York.  56.1 ¶ 40.  During 2016-2020, the attorney grievance committees across New York State disposed of 53,194 cases.  56.1 ¶ 41.  (The records do not reflect how many individual lawyers were the subjects of these different complaints).  *Id.*  In the Second Department, the grievance committees disposed of 22,343 cases in that five-year period.  56.1 ¶ 42.  Every disposition by a grievance committee is confidential; a disposition only becomes public if discipline is imposed by the Appellate Division itself.  Of the cases disposed of by the grievance committees, 169 cases ended with a letter of caution, which is

9

not public;[3] 1,816 cases ended with a letter of advisement, which is also not public;[4] and 528 cases

ended with a written admonition, which is also not public.[5] 56.1 ¶ 43. In total, 11.2% of the cases

disposed of by the Second Department's grievance committees ended with a private letter of

caution, advisement, or admonition, all of which were secret. 56.1 ¶ 44. The grievance committee

can dispose of a case by referring it to the Appellate Division. During that same five-year period,

the courts in the Second Department closed 1,303 cases referred by grievance committees, with

159 public disbarments, 35 public disciplinary resignations, 235 public suspensions, and 46 public

censures. 56.1 ¶ 45. These public sanctions total 475 cases—2.1% of the 22,343 cases resolved

in that period, and far fewer than the 11.2% that resulted in a private letter.[6] 56.1 ¶ 46. In total, in

the Second Department, *98%* of the complaints resolved by the grievance committees and the court

are resolved in private and are secret forever. 56.1 ¶ 47. Even an exoneration is confidential under

the literal words of the law and cannot be disclosed. And for attorneys who have been disciplined

---

[3] Prior to an amendment in 2016, the state regulations covering attorney disciplinary matters allowed for an attorney grievance committee to issue a "letter of caution" "when it [was] believed that the attorney acted in a manner which, while not constituting clear professional misconduct, involved behavior requiring comment." 22 N.Y.C.R.R. § 691.6(a) (2015). The record of the proceeding resulting in a letter of caution was to be kept confidential. *Id.* § 691.6(c) (2015).

[4] Under the state regulations covering attorney disciplinary matters, an attorney grievance committee may issue a "letter of advisement" to the respondent if it "finds that the respondent has engaged in conduct requiring comment that, under the facts of the case, does not warrant imposition of discipline." 22 N.Y.C.R.R. § 1240.7(d)(2)(iv). A letter of advisement is "confidential and [does] not constitute discipline." *Id.* § 1240.2(i).

[5] An attorney grievance committee may issue a "written admonition" to the respondent if it "finds, by a fair preponderance of the evidence, that the respondent has engaged in professional misconduct, but that public discipline is not required to protect the public, maintain the integrity and honor of the profession, or deter the commission of similar misconduct." 22 N.Y.C.R.R. § 1240.7(d)(2)(v). A written admonition "constitute[s] private discipline." *Id.* § 1240.2(b).

[6] Because a case need not be closed in the year in which it was referred, it is possible that the total number of individual cases closed by the committee and the court together in the five-year period may be somewhat greater or lesser than 22,343, but the difference should not be material.

in private, there is not even an exception in the law allowing that lawyer to disclose that fact to a court when seeking admission to practice before it. Rather, the law forbids such a disclosure.

As these data suggest and as the Professors argue in their campaign to reform the grievance process for prosecutors, New York's grievance system is a failure. In 2014, Stephen Gillers, one of the nation's leading experts on legal ethics, studied the system carefully by reviewing every published decision, and concluded that New York has a "broken system" that is "deficient in design and operation. It fails the professed purpose of protecting the public and the administration of justice." He complained in particular about the large number of grievance committee decisions that "state law makes secret and which, therefore, outside researchers like me cannot evaluate." Stephen Gillers, *Lowering the Bar: How Lawyer Discipline in New York Fails to Protect the Public*, 17 N.Y.U. J. Legis. & Pub. Pol'y 485, 490 (2014). Based on Professor Gillers' research, the New York Times editorialized that his "most troubling" finding was "the overall lack of transparency that pervades the system. Unlike 40 other states, New York does not inform the public of pending charges against lawyers." *Better Rules for Bad Laws*, N.Y. Times, April 15, 2014, https://www.nytimes.com/2014/04/16/opinion/better-rules-for-bad-lawyers.html.

## <u>LEGAL STANDARD</u>

A court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is particularly appropriate where the facts are not in dispute and the motion presents a pure question of law. *See Philadelphia Indem. Ins. Co. v. Employers Ins. Co. of Wausau*, 318 F. Supp. 2d 170, 171–72 (S.D.N.Y. 2004). There is no genuine dispute "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "By its very

terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There are no genuine issues of material fact to prevent this Court from declaring that Judiciary Law § 90(10) is an unconstitutional prior restraint on speech.

## ARGUMENT

The confidentiality provisions of Judiciary Law § 90(10) are unconstitutional—both facially and as applied here—because they unduly limit the free speech rights of third-party participants in grievance proceedings, i.e., complainants, respondents, witnesses, and any third-party who is not an agent or employee of the Grievance Committee or the courts. The Law Professors have been accused of violating Judiciary Law § 90(10) by publishing the complaints they filed even though their allegations of prosecutorial misconduct are all based on judicial findings. They have also been told that the law prohibits them from publishing correspondence with State and City officials on matters of public importance that have nothing to do with the merits of the complaints. And they have been told that this rule of secrecy will apply forever unless the complaints result in public discipline—which only happens in 2% of cases in the Second Department. These extreme arguments prove that Section 90(10) is unconstitutional.

Judiciary Law § 90(10) is a content-based prior restraint on Plaintiffs' political speech. As a content-based restriction, the statute is constitutional only if it can withstand strict scrutiny. It cannot. Neither of the two aims of the law constitute compelling state interests, and, even if they did, the law is not narrowly tailored to serve them. When faced with similar content-based restrictions related to the attorney grievance process, four state supreme courts and one federal district court have determined, without a single dissenting vote, that these restrictions on speech

are presumptively unconstitutional and not narrowly tailored to accomplish a compelling state interest sufficient to warrant a blanket gag order on parties not associated with the court or grievance committees. *See In re Warner*, 21 So. 3d 218, 262 (La. 2009); *R.M. v. Supreme Court*, 883 A.2d 369, 377-82 (N.J. 2005); *Doe v. Doe*, 127 S.W.3d 728, 734-36 (Tenn. 2004); *In re Petition of Brooks*, 678 A.2d 140, 143-46 (N.H. 1996); *Doe v. Supreme Ct. of Fla.*, 734 F. Supp. 981, 988 (S.D. Fla. 1990). Here too, Judiciary Law § 90(10) is unconstitutional.

## I.  JUDICIARY LAW § 90(10) VIOLATES THE FIRST AMENDMENT

The First Amendment, which is applicable to the States, renders unconstitutional any "law . . . abridging the freedom of speech." U.S. Const. amend. I. *Bigelow v. Virginia*, 421 U.S. 809, 811 (1975). The constitutional protections of free speech and press were "fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). As such, speech "relating to alleged governmental misconduct . . . has traditionally been recognized as lying at the core of the First Amendment." *Butterworth v. Smith*, 494 U.S. 624, 632 (1990). As this Court has held, "[t]he First Amendment grants persons a near absolute right to publish truthful information about matters of public interest that they lawfully acquire." *Republic of Kazakhstan v. Does 1-100*, 2015 WL 6473016, at *2 (S.D.N.Y. Oct. 27, 2015) (citing *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979)). Prior restraints—laws that prohibit speech before it occurs—are "accorded the most exacting scrutiny" and there is a "heavy presumption against [their] constitutional validity." *Smith v. Daily Mail Pub. Co.*, 443 U.S. at 101-02; *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). Because Judiciary Law § 90(10) is a prior restraint that has been employed to prevent Plaintiffs from publishing truthful information critical of public officials, there is a nearly-insurmountable presumption against its validity.

## A.    Judiciary Law § 90(10) Is a Content-based Law

Judiciary Law § 90(10) is a "content-based" law intended to restrain an entire category of speech: "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys." *See Doe v. Ashcroft*, 334 F. Supp. 2d 471, 512-13 (S.D.N.Y. 2004) (Marrero, J.) (law was content-based because it "pertain[ed] to an entire category of speech").    Whether a law is a content-based restriction an individual's ability to speak "depends entirely on whether their speech is related to" a particular subject matter. *Burson v. Freeman*, 504 U.S. 191, 197 (1992).    "[E]ven a *viewpoint*-neutral restriction can be *content*-based, if the restriction pertains to an entire category of speech." *Doe v. Ashcroft*, 334 F. Supp. 2d at 513.    Put another way, "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 530 (1980).

As a law that prohibits "public discussion of an entire topic," *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994)—here, anything related to the attorney grievance process—Judiciary Law § 90(10) is undeniably a content-based restriction.    It suppresses speech based solely on its content. *See Brooks*, 140 A.2d at 143 (citing *Madison Sch. Dist. v. Wisconsin Emp. Rel. Comm'n*, 429 U.S. 167, 175-76 (1976)).    The aforementioned five cases that have considered other attorney grievance confidentiality laws unanimously found the challenged laws to be content-based, *see, e.g., Id.* (finding it "obvious" that law was content-based), as did the Second Circuit in a case about a Connecticut law that banned speech related to grievance complaints against judges. *See Kamasinski v. Jud. Rev. Council*, 44 F.3d 106, 109 (2d Cir. 1994).

**B.      Judiciary Law § 90(10) Cannot Survive Strict Scrutiny**

Judiciary Law § 90(10) is obviously unconstitutional, so obviously so that it is frequently ignored—including by leaders of the bar—even while it operates to deter others from exercising their right to free speech.  For example, on January 20, 2021, a group of lawyers filed a grievance complaint against Rudolph W. Giuliani, alleging ethical violations arising from Mr. Giuliani's representation of former President Donald Trump.  56.1 ¶ 48.  The group published its complaint online.  56.1 ¶ 49.  Over 3,000 attorneys co-signed the complaint, including "dozens of retired federal and state judges, two former Associate Deputy Attorneys General, seven past presidents of the American Bar Association, nearly 100 former federal prosecutors, and over 100 current and retired law professors from nearly every prominent law school in the country."  56.1 ¶ 50.

Even while some members of the bar may feel free to ignore Judiciary Law § 90(10), its broad scope has an undeniable *in terrorem* effect on others, operating as an illegal prior restraint on speech.  That certainly would have been the effect of the Corporation Counsel's intemperate blast against the Law Professors had they not been legal scholars themselves and represented by competent counsel.  Even so, as the Complaint alleges, the Defendants' threats will necessarily deter others from joining the Professors' reform effort.  Compl. ¶ 79.  And the sweeping language of Judiciary Law § 90(10) will, as a practical effect, necessarily deter ordinary citizens from exercising rights guaranteed to them by the Constitution.  That suffices to establish a constitutional violation.  "The fact that the statute's practical effect may be to discourage protected speech is sufficient to characterize [it] as an infringement on First Amendment activities."  *FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 255 (1986).

A content-based regulation such as Judiciary Law § 90(10) is subject to strict scrutiny and is presumptively invalid.  "[T]he Government bears the burden to rebut that presumption."  *U.S. v. Playboy Entm't. Grp.*, 529 U.S. 803, 817 (2000).  The government must prove the

constitutionality of the regulation by showing (1) that the regulation serves a compelling governmental interest; and (2) that the regulation is narrowly tailored to serve that compelling interest. *Id.* at 813. The Supreme Court has made it clear that "it is the rare case in which . . . a law survives strict scrutiny." *Burson*, 504 U.S. at 211.

## 1. No Compelling State Interest Supports Judiciary Law § 90(10)

Defendants will be unable to show that a compelling state interest supports Judiciary Law § 90(10)'s repression of speech. "Mere speculation of harm does not constitute a compelling state interest." *Consol. Edison*, 447 U.S. at 543. A compelling state interest is one that is "justified by [a] high degree of necessity." *Brown v. Entm't. Merchs. Ass'n*, 564 U.S. 786, 804 (2011). New York cites two interests to support Judiciary Law § 90(10).

First, the New York Court of Appeals has explained that Judiciary Law § 90(10)'s confidentiality provisions "were enacted primarily, if not only, for the benefit of the attorney under investigation." *Capoccia*, 59 N.Y.2d at 554; Ex. 2 at 2.[7] The law allegedly "protects an attorney's reputation from potentially unfounded accusations." *In re Rodeman*, 883 N.Y.S.2d 835, 837 (N.Y. App. Div. 2009). This is arguably a legitimate state interest, but not a compelling one. As the United States Supreme Court has stated in no uncertain terms, "[o]ur prior cases have firmly established [] that injury to official reputation is an insufficient reason for repressing speech that would otherwise be free." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841–42 (1978) (statute that sanctioned persons for divulging information regarding judicial misconduct proceedings violated the First Amendment). Importantly, *Landmark* concerned the reputational interests of judges and the institutional integrity of the state's courts, which are undoubtedly greater state interests than protecting the reputations of the 185,076 lawyers the state has licensed to

---

[7] Citations to "Ex." are to the exhibits attached to the Declaration of Gregory L. Diskant, filed herewith.

practice. Indeed, in a case after *Landmark*, when considering the reputations of not just judges, but of all members of the public, the Supreme Court again affirmed that "our decisions establish that absent exceptional circumstances, reputational interests alone cannot justify the proscription of truthful speech." *Butterworth*, 494 U.S. at 634.

Here, it is notable that all five courts "that have completed an in-depth First Amendment analysis of confidentiality rules in the context of an attorney discipline system have found that the state's interest in protecting the reputation of attorneys did not qualify as a compelling interest sufficient to justify the suppression of speech." *In re Warner*, 21 So.3d 218, 256 (La. 2009). Citing *Landmark*, the Florida federal court found that "protecting the reputation of an individual, or indeed the profession as a whole, [is an] insufficient justification for absolutely barring the dissemination of truthful information." *Doe v. Supreme Ct. of Fla.*, 734 F. Supp. at 986.

Meanwhile, because the law forbids disclosure of the complaint itself and subsequent documents, but not any of the underlying information available to the complainant or witnesses that forms the basis of the complaint, the provision is so ineffectual that it hardly serves any state interest at all. A recent observation by the Ninth Circuit about the confidentiality provisions of a Montana ethics law applies with equal force to § 90(10):

> Prior to lodging the complaint, the complainant is free to share the draft complaint, meaning that any private information contained in the complaint would be available to the public. Furthermore, while the complaint itself may not be revealed, the confidentiality provision allows a complainant to discuss the facts (or alleged facts) contained in the ethics complaint at any time. This includes discussion of any private information in the complaint. *The confidentiality provision is so weak that we have difficulty seeing that it serves any state interest at all.*

*Tschida v. Motl*, 924 F.3d 1297, 1305 (9th Cir. 2019) (emphasis added).

Second, New York courts have stated that in addition to protecting attorneys' reputations, Judiciary Law § 90(10) also "safeguards information that a complainant may deem private, thereby

removing a potential disincentive to the filing of complaints alleging professional misconduct." *In re Rodeman*, 883 N.Y.S.2d 835, 837 (N.Y. App. Div. 2009) (citing *Aretakis*). Like protecting the reputation of lawyers, this may be a legitimate state interest with respect to some complainants, but it is far short of compelling when applied to the entire class of persons who may wish to pursue grievances against a lawyer. There is no reason to think that all, or even many, such persons have an interest in confidentiality. An unhappy client who wishes to file a malpractice suit against a lawyer must do so in public, and there is no shortage of such litigation. While there are likely specific instances in which confidentiality may be appropriate, this interest is not served by the blanket ban on speech imposed by § 90(10), particularly when that ban serves to muzzle even complainants who wish to publicize their complaints. That is certainly true here, where the complaining Professors want to publicize their efforts to improve the system and hold public prosecutors accountable for their alleged misconduct. This alleged state interest was also considered by all five courts that have considered confidentiality provisions related to attorney grievance proceedings and was rejected by all five. *See In re Warner*, 21 So.3d at 257. Because no compelling state interest supports Judiciary Law § 90(10), it is unconstitutional.

### 2. Judiciary Law § 90(10) Is Not Narrowly Tailored

Even if it were supported by a compelling state interest, which it is not, Judiciary Law § 90(10) would still be unconstitutional because it is not narrowly tailored to serve any purported state interest. The Supreme Court commands courts to examine several closely-related questions to determine if a law is narrowly tailored. Does the rule actually advance the interest asserted? *See Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 228 (1989). Is the rule reasonably necessary to serve the state interest? *Burston*, 504 U.S. at 199. Is the rule underinclusive in that it leaves appreciable damage to the supposedly vital state interest unprohibited? *Republican Party of Minn. v. White*, 536 U.S. 765, 779-80 (2002). Is the rule

overinclusive in that in suppresses more speech than necessary to accomplish the purportedly compelling goal? *Simon & Schuster, Inc. v. Members of N.Y.S. Crime Victims Bd.*, 502 U.S. 105, 121 (1991). Are there less-restrictive alternatives to the law? *Ashcroft*, 542 U.S. at 665-666. If the rule fails any of these tests, it is not narrowly tailored.

The first state interest pointed to by Defendants—protecting the reputations of attorneys who are the subjects of complaints—cannot clear these hurdles. It is difficult to see how the confidentiality provisions actually protect attorneys' reputations or are reasonably necessary to serve that interest. Because the law is underinclusive, individuals looking to publicly attack an attorney's reputation have innumerable options besides publicizing grievance proceedings. Most obviously, they could sue the attorney for malpractice. They could also seek to publicize their allegations by telling their friends, writing a letter to the editor, creating a website, etc. Meanwhile, because the law is overinclusive, a wrongly-accused attorney who wishes to publicly complain about his or her treatment at the hands of the grievance committee is barred from doing so. On the face of the law, the wrongly-accused attorney would even be unable to publicize his exoneration. At the same time, the law keeps secret sanctions imposed by the grievance committee, allowing— indeed, *forcing*—attorneys who violated the rules to continue practicing without disclosing to their clients or the court that they have been sanctioned. In all cases, the secrecy rules prevent the public from judging both the accusations and the performance of the grievance committee. And these secrecy restrictions apply forever to 98 percent of the cases resolved by the grievance process. As several courts have noted about laws that purport to protect attorneys' interests by barring the publication of even truthful complaints, such "restrictions breed resentment rather than respect." *R.M.*, 883 A.2d at 381. "[C]ontinuing the prohibitory effect of the Rule after a grievance against

an attorney is found to be meritorious is far more likely to engender suspicion than foster confidence."[8] *Doe v. Supreme Ct. of Fla*, 734 F. Supp. at 988.

The undisputed facts here amply demonstrate the law's faults. The Professors are engaged in public advocacy about a matter of great public importance—the need for the State to police and sanction government prosecutors who engage in misconduct. This matter should be a subject of public dialogue, not kept in the dark. The Law Professors' complaints were based entirely on public records and contain no private details about any of the subject attorneys, whose alleged misconduct occurred while on the public payroll. *See* 56.1 ¶ 20. They therefore implicate no new reputational interests of the accused prosecutors. The correspondence between the Law Professors and Defendants does not discuss any confidential details of the allegations against the prosecutors; the majority of the letters do not even identify the subject attorneys in any way and thus do not implicate their reputational interests. *See* Exs. 2-8. Meanwhile, the letters provide a vivid insight into the hurdles imposed by overzealous government officials on those who wish to reform a system ostensibly run for the benefit of the public. There is no state interest in attorney reputations advanced by keeping this information confidential, let alone a compelling one. On these facts, the law is vastly overbroad.

Judiciary Law § 90(10) is even less tailored to serve the second purported state interest, protecting the private information of complainants so as to encourage complainants to come forward. First, and most obviously, the rule is overbroad since not all complaints are from former

---

[8] It hardly bears noting that the presence of Judiciary Law § 90(10) has done little to protect the reputation of lawyers, which is, perhaps justifiably, low. In the 16th century, Shakespeare's character Dick the Butcher observed, "The first thing we do, let's kill all the lawyers." William Shakespeare, *King Henry VI*, Part II, act 4, sc. 2 (1591). Today, lawyers routinely rank among the least trusted professions in America. *See, e.g.*, America's Most & Least Trusted Profession, Forbes (Jan. 11, 2019), https://www.forbes.com/sites/niallmccarthy/2019/01/11/americas-most-least-trusted-professions-infographic/?sh=f9e9ddb7e94e; Gallup Poll Honesty/Ethics in Professions (Dec. 1-16, 2021), https://news.gallup.com/poll/1654/honesty-ethics-professions.aspx.

clients and not all involve private information, the actual reasons for this law. At best, the premise that complainants universally desire confidentiality is pure speculation and is disproved by the facts of this case. It is also unclear how the rule actually advances the interest in confidentiality since the accused lawyer always knows who has accused him or her. As one court put it:

> Defendants' claim that confidentiality and immunity encourage the filing of complaints and the cooperation of witnesses is founded on mere assertion and conjecture. The lawyer who may be the target of the complaint surely will learn about the grievance and the identity of the complainant, whether the procedures are deemed confidential or not.

*Doe v. Supreme Ct. of Fla.*, 734 F. Supp. at 985.

Once again, the facts of this case provide an excellent example of why Judiciary Law § 90(10) is not narrowly tailored to encourage complainants to come forward. Plaintiffs filed complaints that revealed no private information about them (or the respondents, for that matter) and they sought publicity, not confidentiality, for the public purpose of calling for accountability and allowing the public to judge the efficacy of the grievance system. Judiciary Law § 90(10) and the Defendants' threatened enforcement of the law against the Plaintiffs prohibit the very publicity that the Law Professors seek. And if, as Plaintiffs' fear, the Grievance Committee disposes of their well-documented allegations without imposing any discipline, that too should be something the Plaintiffs should be permitted to publicize and not required to keep secret forever.

Plaintiffs acknowledge there may be situations in which some prospective complainants would prefer their complaints to be confidential, but this interest does not warrant the over-inclusive remedy of making all complaints, and the resulting proceedings, secret (typically in perpetuity). Indeed, as this Court has noted, Defendants have not even attempted to explain why the complaints and correspondence at issue here should be kept confidential beyond the fact that a

literal reading of Judiciary Law § 90(10) compels it. ECF No. 58 at 16. Defendants' silence speaks volumes. Judiciary Law § 90(10) is vastly over-inclusive and is not narrowly tailored.

### C. *Kamasinski* **Cannot Save Judiciary Law § 90(10)**

Some Defendants have suggested that Judiciary Law § 90(10) is constitutional based on *Kamasinski v. Jud. Rev. Council*, 44 F.3d 106 (2d Cir. 1994). *See* ECF No. 35 at 2-3. *Kamasinski* has been repeatedly distinguished by courts in this Circuit and elsewhere and its holding has never been followed outside of its own specific context—upholding limited confidentiality for judicial disciplinary proceedings. *Kamasinski* does not support upholding Judiciary Law § 90(10).

In *Kamasinski*, the plaintiff-appellant brought a facial constitutional challenge against a Connecticut law that made "the proceedings of . . . the JRC [Judicial Review Council], the body charged with investigating complaints against judges, . . . confidential until the JRC determines that there is probable cause to believe that judicial misconduct has occurred." 44 F.3d at 108. The statute prohibited "a complainant or witness before the JRC" from "disclos[ing] the fact that the JRC investigation is under way" or "any information he or she may have gleaned through interaction with the JRC." *Id.* Crucially, once the JRC established probable cause, the "confidential preliminary investigation" phase of the JRC proceedings was over; thereafter, the JRC was required to "conduct an open hearing" to consider the charges. *Id.*

Recognizing that the restrictions were content-based so that "strict scrutiny is the correct standard," *id.* at 109, *Kamasinski* described Connecticut's interest in "the quality of its judiciary" as a state "interest of the highest order." *Id.* at 110. The Court found that confidentiality during the investigative process furthered that state interest by, *inter alia*, (1) protecting judges from unwarranted complaints, thereby helping to attract qualified judges; (2) enabling the commission to encourage voluntary retirement or resignation of problematic judges; and (3) insuring the independence of the state's judiciary by preventing harassing complaints. *Id.* at 110.

Even with this paramount state interest, the Court found that the state could not "prohibit the disclosure of the substance of an individual's complaint" because "[p]enalizing an individual for publicly disclosing complaints about the conduct of a government official strikes at the heart of the First Amendment." *Id.* Based on its "full account" of the state interest "in preserving the integrity of its judiciary," it upheld, however, a narrower ban on disclosing the *fact* that a complaint was filed and the *fact* that testimony was given. *Id.* at 111. But the Court limited its holding: "It bears repeating . . . that the ban on disclosure is constitutional only so long as the JRC acts in its investigatory capacity. Once the JRC has determined whether or not there is probable cause that judicial misconduct has occurred, even Connecticut's most compelling interests cannot justify a ban on the public disclosure of allegations of judicial misconduct." *Id.* at 112.

There are important differences between the statute at issue in *Kamasinski* and Judiciary Law § 90(10). First, Connecticut's interest was "the integrity" and "quality" of [its] judiciary, which is a state interest "of the highest order." *Id.* at 110, 112. The interests allegedly promoted by Judiciary Law § 90(10)—protecting the reputations of lawyers and the privacy of complainants—are far less important, as every court that has considered this issue has found. Meanwhile, the Plaintiffs here have an interest in drawing public attention to the flaws in the attorney grievance process, flaws that are best identified by publicizing the fact that their complaints have been filed—and ignored. This was not an interest considered in *Kamasinski*.

Second, the confidentiality requirement in *Kamasinski* ended once probable cause was established. This temporal limitation was crucial to finding the statute constitutional. After a finding of probable cause, "even Connecticut's most compelling interests cannot justify a ban on the public disclosure of allegations of judicial misconduct." *Id.* at 112. Judiciary Law § 90(10), by contrast, has no temporal limitation unless there is a (rare) public judicial finding of misconduct.

It is a permanent ban on speech applying to 98% of complaints filed. Nothing in *Kamasinski* supports this.

In the years since *Kamasinski*, courts in this Circuit and otherwise, including this Court, have cited these two propositions in distinguishing that case, and striking down restrictions that limit speech related to other kinds of disciplinary proceedings. First, as the Second Circuit observed in *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 877 (2d Cir. 2008), an appeal from a decision of this Court, the "considerations" in *Kamasinski* "inhere[d] in the nature of judicial misconduct proceedings" and not necessarily elsewhere. *Id.*; *see also Stilip v. Contino*, 613 F.3d 405, 412 n.6 (3d Cir. 2010) (holding that a statute prohibiting disclosure of an ethics complaint was unconstitutional and rejecting an argument that "the interests identified [in *Kamasinski*] justify [the statute at issue's] analogous prohibition under the circumstances presented here"). Of course, the interests identified in *Kamasinski*, such as encouraging the retirement of incompetent judges and protecting the integrity of the judiciary, have little application to the routine investigation of grievances against lawyers.

Second, as this Court put it, "in *Kamasinski* [the] secrecy rules are only consistent with the First Amendment during the investigatory phase of a judicial ethics proceeding." *Doe v. Ashcroft*, 334 F. Supp. 2d 471, 519 (S.D.N.Y. 2004) (Marrero, J.), *vacated on other grounds*, 449 F.3d 415 (2d Cir. 2006). In affirming *Doe* in relevant part (after a remand), the Second Circuit endorsed this distinction. "We noted [in *Kamasinski*] that these prohibitions were justified in part by their cessation once the commission had determined whether or not there was probable cause that judicial misconduct had occurred. That temporal limitation, important in the balance of governmental versus free speech interests, is absent from the nondisclosure requirement [at issue]." *John Doe, Inc.*, 549 F.3d at 877 (internal citation omitted). *See also Cox v. McLean*, 49

F. Supp. 3d 765, 771 (D. Mont. 2014) ("[N]one of the cases cited . . . support[s the] position that a perpetual ban on Cox from publishing his dismissed complaint and the dismissal letter, is consistent with First Amendment rights. . . . [*Kamasinski*], makes absolutely clear that []a perpetual ban violates the First Amendment.").

This Court's analysis in the *Doe* cases should govern here. A law that is "a blunt agent of secrecy" is invalid under the First Amendment when confidentiality can be justified only "in a *particular* situation involving *particular* persons at a *particular* time." *Ashcroft*, 334 F. Supp. 2d. at 516, 524. Because Judiciary Law § 90(10) instead "impose[s] perpetual secrecy upon an entire category of future cases whose details are unknown and whose particular twists and turns may not justify, for all time and all places, demanding unremitting concealment and imposing a disproportionate burden on free speech" (*id.*), it is unconstitutional.

## CONCLUSION

Judiciary Law § 90(10) is unconstitutional insofar as it limits the speech of third parties, such as complainants, witnesses, and respondents, who are outside New York's established grievance committee and judicial disciplinary system. For the reasons set forth above, the Court should grant Plaintiffs' Motion for Partial Summary Judgment.

Dated: February 22, 2022
      New York, New York

Respectfully submitted,

/s/ Gregory L. Diskant
Gregory L. Diskant
Jeffrey F. Kinkle
Jeffrey C. Skinner
Jake Walter-Warner
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: 212-336-2000
Fax: 212-335-2222
gldiskant@pbwt.com
jkinkle@pbwt.com
jskinner@pbwt.com
jwalterwarner@pbwt.com

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2022, I caused the foregoing document to be served upon counsel of record via ECF.

/s/ Gregory L. Diskant
Gregory L. Diskant
