**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CIVIL RIGHTS CORPS, CYNTHIA GODSOE,
NICOLE SMITH FUTRELL, DANIEL S.
MEDWED, JUSTIN MURRAY, ABBE SMITH,
AND STEVEN ZEIDMAN,

                              Plaintiffs,

v.

GEORGIA PESTANA, Corporation Counsel of the
City of New York, in her official and personal
capacity; MELINDA KATZ, the District Attorney
for Queens County, in her official and personal
capacity; ANDREA E. BONINA, Chair of the State
of New York Grievance Committee for the Second,
Eleventh, and Thirteenth Judicial Districts, in her
official and personal capacity; DIANA MAXFIELD
KEARSE, Chief Counsel of the State of New York
Grievance Committee for the Second, Eleventh, and
Thirteenth Judicial Districts, in her official and
personal capacity; and HECTOR D. LASALLE,
Presiding Justice of the Second Judicial Department
of the Appellate Division of the Supreme Court of
the State of New York, in his official capacity,

                              Defendants.

Case No. 21 Civ. 9128 (VM)

Hon. Victor Marrero

---

**BRIEF OF *AMICI CURIAE* THE NEW YORK TIMES COMPANY,**
**THE ASSOCIATED PRESS, PRO PUBLICA, INC., AND NEWSDAY LLC**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICI CURIAE ................................................................................1

ARGUMENT ...........................................................................................................2

      I.      JUDICIARY LAW § 90(10) UNDULY RESTRICTS SPEECH THAT
           GOES TO THE HEART OF THE FIRST AMENDMENT ...................................4

           A.      Section 90(10) Improperly Restricts Speech About Prosecutorial
                  Misconduct ................................................................................ 5

           B.      Section 90(10) Improperly Restricts Speech About Attorney
                  Misconduct ................................................................................ 7

           C.      Section 90(10) Improperly Restricts Speech About the Functioning of
                  New York's Attorney Grievance Process ........................................ ......11

CONCLUSION...……………………..…………………………………………..…...16

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*ACLU of Ill. v. Alvarez,*
   679 F.3d 583 (7th Cir. 2012) ...................................................................................3

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
   457 U.S. 853 (1982) ..............................................................................................3

*Butterworth v. Smith*,
   494 U.S. 624 (1990)...............................................................................................5

*Branzburg v. Hayes*, 408 U.S. 665 (1972))........................................................................3

*CBS Inc. v. Young*,
   522 F.2d 234 (6th Cir. 1975) .................................................................................3

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
   194 F.3d 505 (4th Cir. 1999) .................................................................................3

*Houchins v. KQED, Inc.*,
   438 U.S. 1 (1978)..................................................................................................11

*In re Kahn*,
   38 A.D.2d 115 (1st Dep't 1972) ...........................................................................11

*Kahn  v. Ass'n of Bar of City of New York*,
   31 NY.2d 752 (1972) ..............................................................................................3

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972)................................................................................................3

*Neb. Press Ass'n v. Stuart*,
   427 U.S. 539 (1976)................................................................................................5

*People v. Bell*,
   71 Misc. 3d 646, N.Y. Slip Op. 21048 (Sup. Ct. Queens Cnty. 2021) ...................6

*Richmond Newspapers, Inc. v. Virginia*,
   448 U.S. 555 (1980)................................................................................................3

*In re Special Proceedings*,
   842 F. Supp. 2d 232 (D.D.C. 2012) .......................................................................7

*Stanley v. Georgia*,
   394 U.S. 557 (1969)................................................................................................7

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
   425 U.S. 748 (1976) .................................................................................................... 7

*Walker v. Tex. Div., Sons of Confederate Veterans*,
   576 U.S. 200 (2015) .................................................................................................... 3

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
   481 U.S. 787 (1987) .................................................................................................... 5

**Statutes**

Judiciary Law § 90(10) .......................................................................................... *passim*

**Other Authorities**

Attorney grievance complaint against Rudolph W. Giuliani (Jan. 20, 2021), https://ldad.org/wp-content/uploads/2021/05/LDAD-Attorney-Grievance-Committee-Complaint.pdf ...................... 8

Radley Balko, *Why Prosecutors Get Away With Misconduct*, Washington Post (Nov. 18, 2021), https://www.washingtonpost.com/opinions/2021/11/18/why-prosecutors-get-away-with-misconduct/ ................................................................................................................. 14

David Brand, *Top Prosecutor Quits After Queens Judge Accuses Him of Lying in Death Penalty Case*, Queens Daily Eagle (Mar. 11, 2021), https://queenseagle.com/all/charles-testagrossa-quits-nassau-county-queens-da .............................................................................................. 6

Jonah E. Bromwich, *They Publicized Prosecutors' Misconduct. The Blowback Was Swift*, N.Y. Times (Nov. 10, 2021), https://www.nytimes.com/2021/11/10/nyregion/queens-prosecutors-misconduct.html ................................................................................................................ 14

Russ Buettner, *Script Read to Suspects Is Leading to New Trials*, N.Y. Times (Jan. 30, 2013), https://www.nytimes.com/2013/01/31/nyregion/appellate-panel-overturns-3-queens-convictions-based-on-rights-preamble.html ................................................................................... 5, 6

Troy Closson, *They Spent 24 Years Behind Bars. Then the Case Fell Apart*, N.Y. Times (Mar. 5, 2021), https://www.nytimes.com/2021/03/05/nyregion/queens-wrongful-convictions.html ........ 6

Alison Durkee, *Ethics Complaint Against Rudy Giuliani Seeks To Disbar Him In New York*, Forbes (Jan. 21, 2021), https://www.forbes.com/sites/alisondurkee/2021/01/21/ethics-complaint-against-rudy-giuliani-seeks-to-disbar-him-in-new-york/?sh=261e34ce3317 .............................................. 8

Editorial, *Better Rules for Bad Lawyers*, N.Y. Times (Apr. 15, 2014), https://www.nytimes.com/2014/04/16/opinion/better-rules-for-bad-lawyers.html ..................... 12

Editorial, *How Can You Destroy a Person's Life and Only get a Slap on the Wrist?*, N.Y. Times (Dec. 4, 2021), https://www.nytimes.com/2021/12/04/opinion/prosecutor-misconduct-new-york-doj.html ................................................................................................................................14

Editorial, *Prosecutors Need a Watchdog*, N.Y. Times, (Aug. 14, 2018), https://www.nytimes.com/2018/08/14/opinion/new-york-prosecutors-cuomo-district-attorneys-watchdog.html ................................................................................................................ 12

Stephen Gillers, *Lowering the Bar: How Lawyer Discipline in New York Fails to Protect the Public*, 17 N.Y.U. J. Legis. & Pub. Pol'y 485 (2014) ............................................................. 12

Nicole Hong, William K. Rashbaum and Ben Protess, *Court Suspends Giuliani's Law License, Citing Trump Election Lies*, N.Y. Times (Jun. 24, 2021), https://www.nytimes.com/2021/06/24/nyregion/giuliani-law-license-suspended-trump.html ......9

Robert H. Jackson, The Federal Prosecutor, 24 J. Am. Judicature Soc'y 18 (1940) ....................5

Cassidy Jensen, *Federal Prosecutor Facing New Accusations of Misconduct*, Concord Monitor (Feb. 5, 2022), https://www.concordmonitor.com/craigue-prosecutorial-misconduct-davis-44772983.................................................................................................................................6

George Joseph, *He Spent 24 Years Behind Bars Because Queens Prosecutors Broke the Rules. Was This Their Only Wrongful Conviction?* Gothamist (Apr. 5, 2021), https://gothamist.com/news/he-spent-24-years-behind-bars-because-queens-prosecutors-broke-rules-was-their-only-wrongful-conviction .......................................................................6

George Joseph, *Prosecutors Wrongfully Convicted Three Men Who Spent 24 Years Behind Bars. Will They Be Disbarred?*, Gothamist (May 6, 2021), https://gothamist.com/news/prosecutors-wrongfully-convicted-three-men-who-spent-24-years-behind-bars-will-they-be-disbarred ........ 14

George Joseph, *Top Queens Prosecutors Broke The Rules, Then Got Promoted. Will The New DA Keep Them In Charge?*, Gothamist (Jan 9. 2020), https://gothamist.com/news/top-queens-prosecutors-broke-rules-got-promoted .......................................................................14

Jacob Kaye, Law Professors Sue City, DA Katz, Queens Daily Eagle (Nov. 10 2021), https://queenseagle.com/all/law-professors-sue-city-da-katz ....................................................14

*Lawyers want Giuliani investigated, license suspended*, Associated Press (Jan. 22, 2021), https://apnews.com/article/donald-trump-new-york-us-news-courts-604a7c3a7349f320227697c807e61793 .................................................................................8

Sarah Maslin Nir, *Murder Conviction Tossed Out in Queens*, N.Y. Times (Mar. 18, 2013), https://www.nytimes.com/2013/03/19/nyregion/murder-conviction-reversed-over-withheld-information.html ...........................................................................................................6

iv

Nina Morrison, *"What Happens When Prosecutors Break the Law?"* N.Y. Times (June 18, 2018), https://www.nytimes.com/2018/06/18/opinion/kurtzrock-suffolk-county-prosecutor.html .......................................................................................................................6

Benjamin Mueller, *New York State Standardizes Its Oversight of Lawyers*, N.Y. Times (Dec. 29, 2015), https://www.nytimes.com/2015/12/30/nyregion/new-york-state-standardizes-its-oversight-of-lawyers.html ................................................................................................. 11

Jim Mustian, *New York court suspends Rudy Giuliani's law license*, Associated Press (Jun. 24, 2021), https://apnews.com/article/rudy-giuliani-new-york-law-license-suspended-c67f4504a22f8642d6096f29e3a5c51e ...............................................................................9

New York State Bar Association Committee on Professional Discipline, Guide to Attorney Discipline, https://nysba.org/public-resources/guide-to-attorney-discipline/..........................11

Aimee Ortiz, *Police or Prosecutor Misconduct Is at Root of Half of Exoneration Cases, Study Finds*, N.Y. Times (Sept. 16, 2020), https://www.nytimes.com/2020/09/16/us/exonerations-report-misconduct.html ..................................................................................................6

Graham Rayman, *NYC Pays $17M in Three Queens Wrongful Conviction Cases Amid Fears About Prosecutor Misconduct – 'Some People Get Framed'*, Daily News (Dec. 11, 2021), https://www.nydailynews.com/new-york/nyc-crime/ny-prosecutor-misconduct-queens-20211212-4iocggscuvav3kd4euxpmv5bai-story.html ...............................................................14

Harriet Ryan and Matt Hamilton, *State Bar probes whether insiders helped 'Real Housewives' star Tom Girardi avoid scrutiny,* L.A. Times (Jan. 24, 2022), https://www.latimes.com/california/story/2022-01-24/state-bar-california-another-investigation-tom-girardi ..................................................................................................... 10

Harriet Ryan and Matt Hamilton, *Vegas Parties, celebrities and boozy lunches: How legal titan Tom Girardi seduced the State Bar*, L.A. Times (Mar. 6, 2021), https://www.latimes.com/california/story/2021-03-06/how-california-state-bar-enabled-tom-girardi.................................................................................................... 10

Joaquin Sapien, *Trial and Error: Report Says Prosecutors Rarely Pay Price for Mistakes and Misconduct*, ProPublica (Mar. 29, 2016), https://www.propublica.org/article/report-says-prosecutors-rarely-pay-price-for-mistakes-and-misconduct ........................................................5

Joaquin Sapien & Sergio Hernandez, *Who Polices Prosecutors Who Abuse Their Authority? Usually Nobody*, ProPublica (Apr. 3, 2013), https://www.propublica.org/article/who-polices-prosecutors-who-abuse-their-authority-usually-nobody.......................................................11, 13

Rich Schapiro, *Ex-Brooklyn District Attorney Charles Hynes evades charges in federal corruption probe*, The Daily News (Dec. 16, 2016), https://www.nydailynews.com/new-york/brooklyn/ex-brooklyn-da-charles-hynes-evades-charges-corruption-probe-article-1.2913508 ........................ 12

Madeline Singas, *Bill to Oversee DAs Misses the Point*, Newsday (Aug. 16, 2018), https://www.newsday.com/opinion/commentary/bill-to-oversee-das-misses-the-point-1.20486142 ................................................................................................................... 11

Daniel E. Slotnik, *Prominent Lawyers Want Giuliani's Law License Suspended Over Trump Work,* N.Y. Times (Jan. 21, 2021), https://www.nytimes.com/2021/01/21/nyregion/giuliani-trump-law-license.html ................................................................................................................... 8

David Thomas, *Calif. bar investigates itself over 'Real Housewives' husband Girardi*, Reuters (Jan. 25, 2022), https://www.reuters.com/legal/litigation/calif-bar-hires-law-firm-probe-handling-tom-girardi-complaints-2022-01-24/ .............................................................................. 10

## INTEREST OF AMICI CURIAE

*Amici* are news organizations.  The New York Times Company publishes *The New York Times* and www.nytimes.com.  The Associated Press ("AP") is a global news agency, organized as a mutual news cooperative under the New York Not-for-Profit Corporation Law, which has its headquarters and main news operations in New York City.  Pro Publica, Inc. is a Pulitzer Prize-winning non-profit news organization that produces investigative journalism in the public interest.  And Newsday LLC is the publisher of *Newsday*, one of the nation's largest daily newspapers, and serves New York and Long Island through a portfolio of print and digital products.

*Amici* support Plaintiffs' challenge to the constitutionality of Judiciary Law § 90(10) because that provision, by throwing a blanket of confidentiality over the attorney disciplinary process, is vastly overbroad and restricts the public's ability to receive news about matters of significant public interest.  On its face, and as applied to Plaintiffs here, the secrecy imposed by Section 90(10) on third parties to attorney disciplinary proceedings – such as complainants, witnesses, and respondents – suppresses newsworthy information about alleged attorney misconduct and limits the ability of the public (including news organizations like *amici*) to consider, disseminate, and act upon such information.

There are at least three distinct areas of public interest on which Section 90(10) impinges, all of which have been regularly reflected in reporting by *amici* and other news organizations.  First, there is a substantial public interest in disclosing the misconduct of prosecutors, which has resulted in numerous wrongful convictions.  Truthful information about the conduct of these public servants lies at the heart of the First Amendment's protection for speech.  Second, wholly apart from the conduct of prosecutors, there is often a substantial public interest in knowing the alleged misconduct of private attorneys.  Recent examples abound, ranging from the high-profile national political context to the more banal misconduct of attorneys like Michael Avenatti or Tom Girardi

in misappropriating funds from their clients.  And third, there is also an enormous public interest in examining and evaluating the effectiveness of New York's attorney disciplinary process, not least because there are serious questions as to whether the state's grievance committees have been adequately policing the legal profession.

Section 90(10) disserves all of these interests.  The law prevents complainants, respondents, and witnesses from revealing that any attorney disciplinary complaint has been filed, and from disclosing the complaint itself.  Section 90(10) thus restricts the public from knowing about these allegations and understanding how they intersect with New York's attorney disciplinary system.  That subject is newsworthy, and there is no valid justification for Section 90(10)'s suppression of constitutionally protected speech.

For all these reasons, *amici* have a substantial interest in supporting Plaintiffs' challenge to the constitutionality of Section 90(10).  *Amici* write separately to highlight several additional ways in which Section 90(10) contravenes the public interest and well-settled First Amendment principles.

## ARGUMENT

Judiciary Law § 90(10) provides that "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential."  Plaintiffs' summary judgment papers persuasively explain why this provision is unconstitutional, both facially and as applied:  namely, because Section 90(10) is a content-based restriction of speech subject to strict scrutiny, and the law cannot possibly pass muster under well-established precedent.  *See* Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J., ECF No. 64, at 1, 12-25.  *Amici* write separately

to highlight the constitutional infirmities in Section 90(10) from the perspective of news organizations and the public.

The First Amendment's reach protects not just individuals' ability to speak, but also the newsgathering activities necessary to prepare information for dissemination to the public. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) ("'[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated.'") (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 520 (4th Cir. 1999) (recognizing "First Amendment interests in newsgathering"); *CBS Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) (finding that newsgathering "qualifies for First Amendment protections").

And the First Amendment protects not just the right to *speak*, but the public's interest in *receiving* information on matters of public interest. *See, e.g.*, *Walker v. Tex. Div., Sons of Confederate Veterans*, 576 U.S. 200, 207 (2015) ("[T]he Free Speech Clause helps produce informed opinions among members of the public, who are then able to influence the choices of a government that, through words and deeds, will reflect its electoral mandate").[1]  As the Supreme Court has long held, "[f]ree speech carries with it some freedom to listen" and receive information about the workings of government. *Richmond Newspapers*, 448 U.S. at 576; *see also Kleindienst v. Mandel*, 408 U.S. 753, 762-63 (1972) ("It is now well established that the Constitution protects

---

[1] *See also Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (plurality opinion) ("[T]he right to receive ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom."); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 592 (7th Cir. 2012) ("[I]t is well established that 'when one person has a right to speak,' others hold a 'reciprocal right to receive' the speech.") (citations omitted).

3

the right to receive information and ideas.   'This freedom (of speech and press) . . . necessarily protects the right to receive.'") (citations omitted).

Section 90(10)'s constitutional vice from this perspective is that it unduly prevents press outlets like *amici* from reporting on, and the public from receiving, speech touching on several matters of widespread public interest and importance – namely, prosecutorial and attorney misconduct, and the functioning of New York's attorney discipline system.   Under Section 90(10), complainants, witnesses, and respondents are barred forever from speaking about the attorney discipline process (absent the unlikely event of public discipline or the release of records under the statute's "good cause" exception, both of which is are very rare and inevitably years down the road).   Among other things: Section 90(10) facially prevents complainants from disclosing their formal complaints of attorney misconduct, or the fact of their filing; prevents witnesses from speaking about their testimony to a grievance committee; and prevents a respondent from rebutting (or confirming) the substance of misconduct allegations.   As every one of the state and federal courts that have previously considered similar laws have held, there is simply no valid justification for such a widespread and undifferentiated restriction on speech.   *See* Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J., at 17.

*Amici* explain below in more detail the public interests and First Amendment values implicated by Section 90(10).   Because Section 90(10) impinges on First Amendment rights without any legitimate justification, *amici* urge the Court to grant Plaintiffs' motion for partial summary judgment.

## I.     JUDICIARY LAW § 90(10) UNDULY RESTRICTS SPEECH THAT GOES TO THE HEART OF THE FIRST AMENDMENT.

As noted above, Section 90(10) suppresses valuable speech in at least three areas – prosecutorial misconduct, attorney misconduct, and the conduct of the state's attorney grievance process.  Two of those areas lie at the core of the First Amendment – criticism of public officials. And *amici* have devoted substantial efforts to reporting on and informing the public about all three issues – efforts that Section 90(10) unconstitutionally restricts.

### A.  Section 90(10) Improperly Restricts Speech About Prosecutorial Misconduct.

There can be no dispute that *amici* have a substantial interest in reporting on allegations of prosecutorial misconduct.  Prosecutors wield the "power to employ the full machinery of the state," and the public "must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice."  *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987).  As former Attorney General and Supreme Court Justice Robert Jackson once famously remarked, "[t]he prosecutor has more control over life, liberty and reputation than any other person in America."  Robert H. Jackson, *The Federal Prosecutor*, 24 J. Am. Judicature Soc'y 18 (1940).[2]  The public thus has a paramount interest in assessing how prosecutors use – and sometimes abuse – their power.

Indeed, this interest sits at the First Amendment's heart.  "[P]ublication of information relating to alleged governmental misconduct . . . has traditionally been recognized as lying at the core of the First Amendment."  *Butterworth v. Smith*, 494 U.S. 624, 632 (1990) (invalidating state confidentiality law which proscribed witnesses from describing their own grand jury testimony).

---

[2] https://www.roberthjackson.org/wp-content/uploads/2015/01/The_Federal_Prosecutor.pdf

And the "discussion of public affairs in a free society cannot depend on the preliminary grace of judicial censors." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 573 (1976) (Brennan J., concurring).

Unsurprisingly, then, news organizations like *amici* frequently report on stories of alleged prosecutorial misconduct.[3]  For example:  in September 2020, *The New York Times* reported on a study conducted by the National Registry of Exonerations, which found that of the 2,400 exonerations recorded in the registry from 1989 until early 2019, nearly one-third involved instances of prosecutorial misconduct.[4]  *Amici* and other news organizations have in particular widely reported on the misconduct described in the grievance complaints filed by Plaintiffs in this case.  A representative example is Plaintiffs' complaint against Charles Testagrossa, who obtained the conviction of three innocent men in the robbery/homicide of an off-duty police officer by suppressing exculpatory evidence and deliberately misleading the trial court and defendants.  *See People v. Bell*, 71 Misc. 3d 646, N.Y. Slip Op. 21048 (Sup. Ct., Queens Cnty. 2021).  The result was that the guilty parties went unpunished, and the innocent defendants spent twenty-four years

---

[3] *See*, *e.g.*, Joaquin Sapien, *Trial and Error: Report Says Prosecutors Rarely Pay Price for Mistakes and Misconduct*, ProPublica (Mar. 29, 2016), https://www.propublica.org/article/report-says-prosecutors-rarely-pay-price-for-mistakes-and-misconduct; Russ Buettner, *Script Read to Suspects Is Leading to New Trials*, N.Y. Times (Jan. 30, 2013), https://www.nytimes.com/2013/01/31/nyregion/appellate-panel-overturns-3-queens-convictions-based-on-rights-preamble.html; Sarah Maslin Nir, *Murder Conviction Tossed Out in Queens*, N.Y. Times (Mar. 18, 2013), https://www.nytimes.com/2013/03/19/nyregion/murder-conviction-reversed-over-withheld-information.html; Cassidy Jensen, *Federal Prosecutor Facing New Accusations of Misconduct*, Concord Monitor (Feb. 5, 2022), https://www.concordmonitor.com/craigue-prosecutorial-misconduct-davis-44772983; Nina Morrison, *"What Happens When Prosecutors Break the Law?"* N.Y. Times (June 18, 2018), https://www.nytimes.com/2018/06/18/opinion/kurtzrock-suffolk-county-prosecutor.html.

[4] Aimee Ortiz, *Police or Prosecutor Misconduct Is at Root of Half of Exoneration Cases, Study Finds*, N.Y. Times (Sept. 16, 2020), https://www.nytimes.com/2020/09/16/us/exonerations-report-misconduct.html.

in prison.[5]  Mr. Testagrossa would eventually become Chief of Investigations for Nassau County, but he was forced to resign shortly after widespread media coverage of the overturned convictions.[6]

Section 90(10) restricts the victims of, or witnesses to, prosecutorial misconduct from publicly revealing or describing their disciplinary complaints against prosecutors, even if they are otherwise willing to do so.  That is obviously constitutionally suspect, because "[i]t is now well established that the Constitution protects the right to receive information and ideas" from a willing speaker.  *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *see also Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976) (explaining that, where a willing speaker exists, "the protection afforded [by the First Amendment] is to the communication, to its source and to its recipients both").  And as a result, Section 90(10)'s effect is to limit the media's ability to fully gather news about and cover such misconduct by prosecutors, and that misconduct's interaction with New York's attorney disciplinary process.

It is true that, in many instances, evidence of prosecutorial misconduct might become public through means other than attorney disciplinary complaints, including through open-court proceedings.  *See, e.g.*, *In re Special Proceedings*, 842 F. Supp. 2d 232, 243-45 (D.D.C. 2012) (involving prosecutorial misconduct in the failed prosecution of former Alaska Senator Ted Stevens).  But some instances of prosecutorial misconduct may *not* become public other than

---

[5]  Troy Closson, *They Spent 24 Years Behind Bars. Then the Case Fell Apart*, N.Y. Times (Mar. 5, 2021), https://www.nytimes.com/2021/03/05/nyregion/queens-wrongful-convictions.html.

[6]  *See e.g., id.*; George Joseph, *He Spent 24 Years Behind Bars Because Queens Prosecutors Broke the Rules. Was This Their Only Wrongful Conviction?* Gothamist (Apr. 5, 2021), https://gothamist.com/news/he-spent-24-years-behind-bars-because-queens-prosecutors-broke-rules-was-their-only-wrongful-conviction; David Brand, *Top Prosecutor Quits After Queens Judge Accuses Him of Lying in Death Penalty Case*, Queens Daily Eagle (Mar. 11, 2021), https://queenseagle.com/all/charles-testagrossa-quits-nassau-county-queens-da.

through a disciplinary complaint, and a complaint might serve as a spur to further investigation (and public scrutiny).  In other instances – like here – a grievance complaint may cogently and thoroughly document alleged misconduct by a prosecutor that may already be public in piecemeal form, in a way that permits the public to obtain the benefit of this clarity.  There are many possibilities; the point is that the media's right to gather and the public's right to receive such speech from willing speakers is plain, and there is no valid reason to limit such speech as Section 90(10) does.

**B.  Section 90(10) Improperly Restricts Speech About Attorney Misconduct.**

Prosecutors aside, accusations of misconduct by attorneys more broadly can be and often are newsworthy in their own right.  Again, Section 90(10) limits such speech without justification.

Consider, for example, the case of former New York City Mayor Rudolph Giuliani.  In the wake of the January 6, 2021 attack on the U.S. Capitol, a group of prominent attorneys filed a formal complaint with the Grievance Committee for the First Department seeking disbarment of Mr. Giuliani for his role in assisting then-President Trump's pursuit of election fraud claims, including repeating those claims at a rally just before the insurrection.[7]  As Plaintiffs point out, those attorneys – in a facial violation of Section 90(10) – published and described the complaint. *See* Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J., at 15.

Plaintiffs cite the Giuliani disciplinary complaint as an example of how Section 90(10) has been ignored, not least by prominent members of the bar, as a result of its facial unconstitutionality. *Id.*  That it is.  But the Giuliani disciplinary complaint is also notable for another reason: it was

---

[7]  Attorney grievance complaint against Rudolph W. Giuliani (Jan. 20, 2021), https://ldad.org/wp-content/uploads/2021/05/LDAD-Attorney-Grievance-Committee-Complaint.pdf.

patently *newsworthy*.  The news media, including *amici*, widely reported on the grievance complaint not only because its target was a well-known public figure accused of inciting an attack on the U.S. Capitol, but also because the authors of the complaint included dozens of luminaries of the bar, including a former acting U.S. Attorney General and several former federal district judges.[8]  The fact that such a complaint had been filed, in and of itself, was, at the very least, notable and worthy of public consideration and discussion.

The Giuliani complaint also eventually resulted in (a rare example of) public discipline; following an investigation prompted by the grievance complaint, and the recommendation by the Grievance Committee for the First Department, a New York State appellate court temporarily suspended Mr. Giuliani's law license.[9]  That eventual decision to impose public discipline meant that the Giuliani grievance complaint could be made public consistent with Section 90(10) (though the earlier public disclosure still violated Section 90(10) on its face).  But by the same token, if the grievance committee had *declined* to impose public discipline against Mr. Giuliani, Section 90(10)

---

[8]  *See, e.g.,* Daniel E. Slotnik, *Prominent Lawyers Want Giuliani's Law License Suspended Over Trump Work,* N.Y. Times (Jan. 21, 2021), https://www.nytimes.com/2021/01/21/nyregion/giuliani-trump-law-license.html; *Lawyers want Giuliani investigated, license suspended*, Associated Press (Jan. 22, 2021), https://apnews.com/article/donald-trump-new-york-us-news-courts-604a7c3a7349f320227697c807e61793; Alison Durkee, *Ethics Complaint Against Rudy Giuliani Seeks To Disbar Him In New York*, Forbes (Jan. 21, 2021), https://www.forbes.com/sites/alisondurkee/2021/01/21/ethics-complaint-against-rudy-giuliani-seeks-to-disbar-him-in-new-york/?sh=261e34ce3317.

[9]  Nicole Hong, William K. Rashbaum and Ben Protess, *Court Suspends Giuliani's Law License, Citing Trump Election Lies,* N.Y. Times (Jun. 24, 2021), https://www.nytimes.com/2021/06/24/nyregion/giuliani-law-license-suspended-trump.html; Jim Mustian, *New York court suspends Rudy Giuliani's law license*, Associated Press (Jun. 24, 2021), https://apnews.com/article/rudy-giuliani-new-york-law-license-suspended-c67f4504a22f8642d6096f29e3a5c51e.

would have commanded that the entire proceeding (including the complaint) remain under lock and key forever.

The Giuliani case was exceptionally high-profile, but attorney disciplinary complaints in many other contexts are also newsworthy.  Take renowned plaintiffs' attorney and *Real Housewives* star Tom Girardi.  Girardi was accused, and a court found, that he had siphoned $2 million from a settlement fund belonging to the families of victims of an Indonesian air crash. Following up on that judicial finding, in March 2021, the *Los Angeles Times* investigated further and found that Girardi and his firm had been sued over a hundred times over the course of several decades, with at least half of those suits asserting attorney misconduct.  According to the *L.A. Times*, Girardi had avoided bar discipline for his repeated misconduct by currying favor with bar investigators and other officials by providing them with rides on his private jet, expensive lunches and free legal representation.[10]  Several months after the news of Girardi's misconduct broke, the State Bar of California conducted an audit of complaints previously filed against Girardi that "revealed mistakes made in some investigations over the many decades of Girardi's career."[11]  The California State Bar has since hired a private law firm to conduct an investigation over the prior treatment of complaints against Girardi in an effort to prevent mistakes like this from recurring.[12]

---

[10]  Harriet Ryan and Matt Hamilton, *Vegas Parties, celebrities and boozy lunches:  How legal titan Tom Girardi seduced the State Bar*, L.A. Times (Mar. 6, 2021), https://www.latimes.com/california/story/2021-03-06/how-california-state-bar-enabled-tom-girardi.

[11]  Harriet Ryan and Matt Hamilton, *State Bar probes whether insiders helped 'Real Housewives' star Tom Girardi avoid scrutiny,* L.A. Times (Jan. 24, 2022), https://www.latimes.com/california/story/2022-01-24/state-bar-california-another-investigation-tom-girardi.

[12]  David Thomas, *Calif. bar investigates itself over 'Real Housewives' husband Girardi*, Reuters (Jan. 25, 2022), https://www.reuters.com/legal/litigation/calif-bar-hires-law-firm-probe-handling-tom-girardi-complaints-2022-01-24/.

The episode illustrates, among other things, how the news media can serve as a catalyst to government reform and increased accountability in the arena of attorney discipline – and how disciplinary complaints *themselves* could contribute to such efforts.

While the Giuliani and Girardi episodes relate to prominent, well-known attorneys, attorney grievance complaints in *less* high-profile cases may themselves be *more* worthy of scrutiny and reporting than those in high-profile cases.  In high-profile matters, the parties involved may be able to attract attention to alleged attorney misconduct through means other than official attorney disciplinary channels.  But complaints of attorney misconduct in less prominent cases – even if meritorious – may fall between the cracks.  Such allegations are deserving of more scrutiny by the media, not less.  But Section 90(10) bars grievance complaints from being published and publicized and deprives the media of a source of raw information that could be used to assess claims of attorney misconduct.  This, too, works First Amendment harm.

### C.  Section 90(10) Improperly Restricts Speech About the Functioning of New York's Attorney Grievance Process.

The public also has a substantial interest in ensuring that the attorney disciplinary system is functioning properly; *amici*, in turn, have a substantial interest in reporting on this issue.

The attorney disciplinary system's purpose is to "protect the public in its reliance upon the presumed integrity and responsibility of lawyers."  *In re Kahn*, 38 A.D.2d 115, 124 (1st Dep't), *aff'd sub nom.*, *Kahn v. Ass'n of Bar of City of New York*, 31 N.Y.2d 752 (1972); *see also* New York State Bar Association Committee on Professional Discipline, Guide to Attorney Discipline, https://nysba.org/public-resources/guide-to-attorney-discipline/ ("[T]he grievance process exists to protect the public . . . .  By bringing a complaint to a committee's attention, the public helps the legal profession achieve its goal.").  So, separate and apart from the *substance* of any alleged

11

prosecutorial or attorney misconduct, the failure by governmental disciplinary bodies to adequately police attorney misconduct is independently newsworthy.  Indeed, speech about the functioning (or failure) of that public process falls squarely within the First Amendment's heartland.  *See, e.g.*, *Houchins v. KQED, Inc.*, 438 U.S. 1, 10 (1978) (press scrutiny serves "as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve").

For those reasons, *amici* and other media outlets frequently report on attorney disciplinary matters with public implications.[13]  And serious questions have been raised about whether New York's attorney disciplinary process is operating in a way that adequately serves and protects the public interest.  For example, in 2014, the *New York Times* published an editorial discussing an article by New York University Law Professor Stephen Gillers, who wrote that the attorney disciplinary system in New York is "deficient in design and operation."[14]  Professor Gillers found

---

[13]  *See, e.g.,* Madeline Singas, *Bill to Oversee DAs Misses the Point*, Newsday (Aug. 16, 2018), https://www.newsday.com/opinion/commentary/bill-to-oversee-das-misses-the-point-1.20486142; Benjamin Mueller, *New York State Standardizes Its Oversight of Lawyers*, N.Y. Times (Dec. 29, 2015), https://www.nytimes.com/2015/12/30/nyregion/new-york-state-standardizes-its-oversight-of-lawyers.html; Joaquin Sapien & Sergio Hernandez, *Who Polices Prosecutors Who Abuse Their Authority? Usually Nobody*, ProPublica (Apr. 3, 2013), https://www.propublica.org/article/who-polices-prosecutors-who-abuse-their-authority-usually-nobody; Rich Schapiro, *Ex-Brooklyn District Attorney Charles Hynes evades charges in federal corruption probe*, The Daily News (Dec. 16, 2016), https://www.nydailynews.com/new-york/brooklyn/ex-brooklyn-da-charles-hynes-evades-charges-corruption-probe-article-1.2913508; Editorial, *Prosecutors Need a Watchdog*, N.Y. Times (Aug. 14, 2018), https://www.nytimes.com/2018/08/14/opinion/new-york-prosecutors-cuomo-district-attorneys-watchdog.html.

[14]  Editorial, *Better Rules for Bad Lawyers*, N.Y. Times (Apr. 15, 2014), https://www.nytimes.com/2014/04/16/opinion/better-rules-for-bad-lawyers.html  (discussing Stephen Gillers, *Lowering the Bar: How Lawyer Discipline in New York Fails to Protect the Public*, 17 N.Y.U. J. Legis. & Pub. Pol'y 485, 490 (2014)) ("*Lowering the Bar*").

that the sanctions imposed in the different departments were wildly uneven, and that the system was too hidden from public view; indeed, due to the secrecy imposed by Section 90(10), he was unable to determine how many instances of reported attorney misconduct went completely unpunished.[15]  Professor Gillers concluded that the single best first step in repairing this "broken system" would be to launch a comprehensive study of the state's disciplinary process and performance.[16]

Section 90(10), though, stands in the way of such oversight.  By cloaking all attorney disciplinary matters in a cloud of secrecy, Section 90(10) strips the public of its ability to evaluate the performance of New York's disciplinary bodies and effectively insulates these public officials from public scrutiny.  Indeed, because of the confidentiality restrictions in Section 90(10), the public only has access to the small handful of complaints that ultimately result in public discipline and can be left completely in the dark as to the vast majority of the other complaints that are either dismissed or result in private discipline.  This greatly limits the public's ability to assess how the process is working.

To take another example: *ProPublica* published an article in 2013 discussing how prosecutorial misconduct in New York City is almost never punished.[17]  *ProPublica* found that of the approximately 91,000 complaints received by the First and Second Department committees between 2001 and 2009, only about one percent resulted in public sanctions, and only five percent

---

[15] *Lowering the Bar* at 490.

[16] *Id.*

[17]   Joaquin Sapien & Sergio Hernandez, *Who Polices Prosecutors Who Abuse Their Authority? Usually Nobody*, ProPublica (Apr. 3, 2013), https://www.propublica.org/article/who-polices-prosecutors-who-abuse-their-authority-usually-nobody.

resulted in a private reprimand.[18]   Because of Section 90(10), however, it was not possible to independently compare the complaints that resulted in public sanctions to those that did not – or to those that resulted in no discipline at all.  This comprehensive secrecy undermines the ability of the public to criticize its own government – a fundamental protection guaranteed by the First Amendment.

Plaintiffs' own experience aptly illustrates why such matters are newsworthy.  The 21 complaints filed and publicized by Plaintiffs against current and former Queens county prosecutors highlight widespread prosecutorial misconduct, as well as that misconduct's impact on the citizens prosecutors are meant to serve.  But the complaints also show that the State's disciplinary system had not taken any action, at least publicly, against a single one of those prosecutors.  *See* Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J. at 4.

Defendants' effort to suppress this information in response to the filing of these complaints was, as the Editorial Board of the *New York Times* put it, one that involved not "just shooting the messenger; [but] tossing the gun into the East River and threatening anyone who tries to fish it out."[19]   Indeed, the entire exchange was newsworthy; *amici* and other news organizations immediately picked up on this story and reported on it extensively.[20]  The story was newsworthy

---

[18] *Id.*

[19] Editorial, *How Can You Destroy a Person's Life and Only Get a Slap on the Wrist?*, N.Y. Times (Dec. 4, 2021), https://www.nytimes.com/2021/12/04/opinion/prosecutor-misconduct-new-york-doj.html.

[20]  *See e.g.,* Jonah E. Bromwich, *They Publicized Prosecutors' Misconduct. The Blowback Was Swift*, N.Y. Times (Nov. 10, 2021), https://www.nytimes.com/2021/11/10/nyregion/queens-prosecutors-misconduct.html; George Joseph, *Prosecutors Wrongfully Convicted Three Men Who Spent 24 Years Behind Bars. Will They Be Disbarred?*, Gothamist (May 6, 2021), https://gothamist.com/news/prosecutors-wrongfully-convicted-three-men-who-spent-24-years-behind-bars-will-they-be-disbarred; George Joseph, *Top Queens Prosecutors Broke The Rules, Then Got Promoted. Will The New DA Keep Them In Charge?*,  Gothamist (Jan 9. 2020),

not just because it concerned prosecutorial misconduct, but also because it raised questions about whether a lack of oversight allows such misconduct to persist.[21]

Defendants' position is that Section 90(10) bars all of this – Plaintiffs' publication of their attorney disciplinary complaints, the public's ability to track the progress (or not) of those complaints, and the public's ability to consider certain Defendants' attempts to discourage Plaintiffs from engaging in those efforts. *Amici* agree – on its face, Section 90(10) *does* bar much of this speech. But that just highlights how overly broad, and constitutionally problematic, Section 90(10) is.

---

https://gothamist.com/news/top-queens-prosecutors-broke-rules-got-promoted; Radley Balko, *Why Prosecutors Get Away With Misconduct*, Washington Post (Nov. 18, 2021), https://www.washingtonpost.com/opinions/2021/11/18/why-prosecutors-get-away-with-misconduct/; Jacob Kaye, *Law Professors Sue City, DA Katz*, Queens Daily Eagle (Nov. 10 2021), https://queenseagle.com/all/law-professors-sue-city-da-katz; Graham Rayman, *NYC Pays $17M in Three Queens Wrongful Conviction Cases Amid Fears About Prosecutor Misconduct – 'Some People Get Framed'*, Daily News (Dec. 11, 2021), https://www.nydailynews.com/new-york/nyc-crime/ny-prosecutor-misconduct-queens-20211212-4iocggscuvav3kd4euxpmv5bai-story.html.

[21] Editorial, *How Can You Destroy a Person's Life and Only Get a Slap on the Wrist?*, N.Y. Times (Dec. 4, 2021), https://www.nytimes.com/2021/12/04/opinion/prosecutor-misconduct-new-york-doj.html.

## CONCLUSION

For the foregoing reasons, *amici* respectfully submit that Plaintiffs' motion for partial summary judgment should be granted.

Dated:  March 9, 2022
        New York, New York

Respectfully submitted,

By:  /s/Ira M. Feinberg

HOGAN LOVELLS US LLP
Ira M. Feinberg
Benjamin A. Fleming
Matthew Ducharme
Jack Shaked
390 Madison Avenue
New York, New York 10017
Telephone: (212) 918-3000
Fax: (212) 918-3100
ira.feinberg@hoganlovells.com
benjamin.fleming@hoganlovells.com
matthew.ducharme@hoganlovells.com
jack.shaked@hoganlovells.com

*Counsel for Amici Curiae*

16