```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/5/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
CIVIL RIGHTS CORPS, ET AL.,          :
                                     :
                  Plaintiffs,        :
                                     :      21 Civ. 9128 (VM)
        - against -                  :
                                     :      **DECISION & ORDER**
GEORGIA PESTANA, ET AL.,             :
                                     :
                  Defendants.        :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

On November 4, 2021, Plaintiffs Cynthia Godsoe, Nicole
Smith Futrell, Daniel Medwed, Justin Murray, Abbe Smith, and
Steven Zeidman, (together the "Law Professors"), and Civil
Rights Corps ("CRC," and with the Law Professors,
"Plaintiffs") filed suit against Georgia Pestana ("Pestana"),
Corporation Counsel of the City of New York; Melinda Katz
("Katz"), Queens County District Attorney; Andrea Bonina
("Bonina"), Chair of the State of New York Grievance Committee
for the Second, Eleventh, and Thirteenth Judicial Districts
(the "Grievance Committee"); Justice Hector D. LaSalle
("LaSalle"), Presiding Justice of the Second Judicial
Department of the Appellate Division of the Supreme Court of
New York; and Diana Maxfield Kearse ("Kearse"), Chief Counsel
of the Grievance Committee (together, "Defendants"). (See
"Complaint," Dkt. No. 59). Now before the Court are three
letters explaining Defendants' intent to file a motion to

1

dismiss the Complaint. The first was filed by Pestana and Katz (the "City Defendants"). (See "City Defendants Motion," Dkt. No. 36.) The second letter motion was filed by Bonina and LaSalle (the "State Defendants"). (See "State Defendants Motion," Dkt. No. 41.) The third letter motion seeking dismissal was filed by Kearse. (See "Kearse Motion," Dkt. No. 47.) Also before the Court are Plaintiffs' three letters in opposition to the letter motions. (See "Opposition to City Defendants," Dkt. No. 39; "Opposition to State Defendants," Dkt. No. 44; and "Opposition to Kearse," Dkt. No. 55.)

The Court now construes these letters as motions to dismiss the Complaint. See Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming district court ruling deeming exchange of letters as motion to dismiss). For the reasons stated below, the letter motions are DENIED IN PART. The Court reserves judgment on certain arguments pending the outcome of Plaintiffs' motion for partial summary judgment, which is currently pending before the Court.

## I.   BACKGROUND[1]

The Court assumes familiarity with the factual background as recited in the Court's prior order directing

---

[1] All factual and procedural background is drawn from the Complaint. Except where directly quoted, no citations will be made to the relevant docket entries.

2

the unsealing of the exhibits to the Complaint. (See "Unsealing Order," Dkt. No. 58, at 2-5.) To briefly summarize, CRC is a non-profit organization that seeks to challenge systemic injustice across the country, an interest shared with the Law Professors. In May 2021, the Law Professors filed twenty-one grievance complaints (the "Grievance Complaints") against current and former assistant district attorneys working in the Queens District Attorney's Office, claiming prosecutorial misconduct they allegedly committed while so employed. The Grievance Complaints requested that the respective grievance committees publicly investigate and, if appropriate, discipline each attorney specified. Plaintiffs then created a website where they published the Grievance Complaints for public viewing, urging visitors to email the Grievance Committee about the allegations in the complaints.

Section 90(10) of the New York Judiciary Law, however, states that "all papers, records, and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of attorneys, shall be sealed and deemed private and confidential." N.Y. Jud. Law. § 90(10) ("Section 90(10)"). Because of this provision, James Johnson ("Johnson"), then-Corporation Counsel to the City of New York, sent letters to each grievance committee expressing his concerns about the online publication of the Grievance

3

Complaints (the "Johnson Letter"). Shortly thereafter, the Law Professors received a letter from defendant Kearse notifying them that any investigation into the Grievance Complaints would be initiated *sua sponte* by the Grievance Committee and kept confidential (the "Kearse Letter"), essentially dismissing the Law Professors as complainants and denying them access to information about the proceedings. The Johnson and Kearse Letters provide the primary basis for the allegations of wrongdoing asserted in the Complaint.

Following their receipt of the Johnson and Kearse letters and the subsequent events, Plaintiffs brought suit in this Court. They allege (1) Defendants retaliated against the Law Professors in violation of their First Amendment rights; (2) violations of the Fourteenth Amendment's Equal Protection Clause; (3) that Section 90(10) violates the First Amendment and Article I, Section 8 of the New York Constitution both facially and as-applied; (4) Defendants violated the United States and New York Constitutions by denying Plaintiffs their right to access government proceedings and records; and (5) if the Court finds that the statute is constitutional, Defendants must allow access to the records at issue under Section 90(10)'s good-cause exception. Plaintiffs sue under 42 U.S.C. Section 1983 ("Section 1983").

Shortly after filing the Complaint, Plaintiffs submitted a motion to this Court requesting the Court order the unsealing of the exhibits to the Complaint, and the Court granted that motion on January 25, 2022. (See Unsealing Order.) Plaintiffs then filed an unsealed version of the Complaint. (See Dkt. No. 59.)

## II.   **LEGAL STANDARD**

The City Defendants move for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), while the State Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), and Kearse moves to dismiss the Complaint under both Rule 12(b)(1) and Rule 12(b)(6).

### 1.   Rule 12(b)(1) Standard

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. See Fed. R. Civ. Pro. 12(b)(1). When faced with a motion to dismiss for lack of subject-matter jurisdiction, a plaintiff must establish the court's jurisdiction by a preponderance of the evidence. See Davis v. Kosinsky, 217 F. Supp. 3d 706, 707 (S.D.N.Y. 2016). In reviewing a Rule 12(b)(1) motion, a district court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."

Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (quoting Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014)). However, where there is a factual dispute, the court may look to evidence outside the complaint to resolve any disputed issues of jurisdictional facts. See id. In reviewing information outside the pleadings, courts may not consider conclusory statements or hearsay, and the body of law applicable to Federal Rule of Civil Procedure 56 applies. See Davis, 217 F. Supp. 33 at 708.

2.   Rule 12(b)(6) Standard

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual

allegations sufficiently "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

The requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. <u>See Iqbal</u>, 556 U.S. at 678. In adjudicating a Rule 12(b)(6) motion, a court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." <u>Leonard F. v. Israel Disc. Bank of N.Y.</u>, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

### III. <u>DISCUSSION</u>

Because jurisdiction is a threshold issue, the Court will first assess the arguments for dismissal under Rule 12(b)(1) before turning to the arguments that Plaintiffs failed to state a claim for relief.

A.   <u>LACK OF SUBJECT MATTER JURISDICTION</u>

There is no question that this Court would ordinarily have subject-matter jurisdiction over this action. <u>See</u> 28 U.S.C. § 1331 (conferring federal question jurisdiction), § 1343(a) (providing original jurisdiction over civil rights actions), § 1367 (allowing federal courts to exercise supplemental jurisdiction). However, the State Defendants argue that this Court should decline to exercise its

jurisdiction over this case and dismiss it pursuant to Rule 12(b)(1), due to the principles articulated in any of three abstention doctrines: <u>Younger</u> abstention, <u>O'Shea</u> abstention, or <u>Pullman</u> abstention. (<u>See</u> State Defendants Motion at 1–3.) Kearse joins in these arguments for dismissal. (<u>See</u> Kearse Motion at 1–2.) For the reasons explained below, the Court finds each of these abstention doctrines inapplicable to the case at hand.

   1.   <u>Younger Abstention</u>

State Defendants and Kearse first argue that the doctrine of <u>Younger</u> abstention counsels the Court to decline jurisdiction over this case. The Supreme Court has long held that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." <u>New Orleans Pub. Serv., Inc. v. Council of New Orleans</u>, 491 U.S. 350, 368 (1989). The doctrine of <u>Younger</u> abstention, however, provides that "federal courts must decline to exercise jurisdiction in three such exceptional categories of cases." <u>Trump v. Vance</u>, 941 F.3d 631, 637 (2d Cir. 2019). Those three categories say federal courts should not intrude into (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial

functions." Id. (quoting Sprint Commc'ns v. Jacobs, 571 U.S. 69, 78 (2013)).

The State Defendants claim this case falls into the second category. They cite the Supreme Court's decisions in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982), and Sprint as primary support for their contention that attorney disciplinary proceedings are civil enforcement proceedings entitled to Younger abstention. But both of those cases are notably, and significantly, different from the case at hand.

In Middlesex, an attorney was charged with disciplinary violations for engaging "in conduct that [was] prejudicial to the administration of justice," after criticizing a criminal court to the media in the middle of a high-profile trial, to which he was not counsel of record. Middlesex, 457 U.S. at 428. Instead of responding to the disciplinary committee, the attorney brought suit challenging the disciplinary rules in federal court. The Supreme Court ruled that federal courts should abstain because (1) state bar disciplinary proceedings "are of a character to warrant federal-court deference"; and (2) the state had very important interests in the pending judicial proceedings, so "as long as the constitutional claims of [Plaintiffs] can be determined in the state proceeding and so long as there is no showing of bad faith,

harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." Id. at 434–35.

Sprint more recently listed Middlesex as an example of a decision applying Younger to a state enforcement proceeding, which the Court described as "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." Sprint, 571 U.S. at 79. These two Supreme Court decisions show that the State Defendants are correct that attorney disciplinary proceedings are the type of state proceeding that warrants abstention to avoid federal intrusion into the state process.

However, the federal action in this case would not intrude into the attorney disciplinary process. Unlike the federal plaintiff in Middlesex, Plaintiffs here are not the subjects of state disciplinary proceedings. Per the uncontroverted facts alleged in the Complaint, Plaintiffs are not uninvolved in any state disciplinary proceeding that resulted from the Grievance Complaints. This contention is supported by the Kearse Letter, which told Plaintiffs that any investigation into their grievance complaints would be initiated *sua sponte* and remain confidential.

Because Plaintiffs are not parties to the grievance proceedings, two significant conclusions follow, both of

which distinguish this case from <u>Middlesex</u>. First, the grievance proceedings at issue here were not initiated to sanction Plaintiffs for any acts of misconduct related to state judicial functions. Second, it is unclear how Plaintiffs would be able to bring their constitutional challenges in those state disciplinary proceedings due to their lack of direct involvement in the underlying actions. Further, Defendants have provided no argument or evidence that this Court, in deciding this federal case, would in *any* way interfere with or intrude upon the possible state disciplinary hearings.

The justification underpinning <u>Younger</u> abstention is the "seriousness of federal judicial interference with state civil functions." <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 603 (1975). In this case, the federal judiciary is not being asked to interfere with state civil functions. Plaintiffs' challenge focuses on the alleged retaliation against them for publishing their grievance complaints, as well as on the potential constitutional issues implicated in the enforcement of Section 90(10). This interpretation constitutes a major distinction from prior cases that have applied <u>Younger</u>. In <u>Schorr v. DoPico</u>, for instance, the Second Circuit affirmed a <u>Younger</u> dismissal where the "focus of [the federal plaintiff's] claims is an ongoing state attorney disciplinary

11

proceeding, which falls squarely within <u>Younger</u> abstention."[2]
686 F. App'x 34, 36 (2d Cir. 2017).

The focus of Plaintiffs' suit here is not any ongoing
state disciplinary proceeding. Rather, it is the wrongful
retaliation Plaintiffs allege having been subjected to for
publishing the Grievance Complaints. For purposes of
resolving this dispute, it does not matter what the Grievance
Committee is doing to investigate the complaints in question.
What Plaintiffs seek is merely a federal court ruling that
the information about the grievance proceedings that
Plaintiffs requested Defendants provide constitute public
records, and that in connection with Plaintiffs' publication
of the material, their First Amendment rights are being
adequately protected.

The relief Plaintiffs ask for further supports a
determination that this suit will not interfere with any state
disciplinary proceedings. The Complaint requests the Court
to:

(1) declare that Defendants' harassment, threats, and
retaliation violate the First Amendment;

(2) enjoin Defendants from further harassment, threats,
and retaliation;

---

[2]  It is also worth noting that in <u>Schorr</u> the federal plaintiff was the
    subject of the attorney discipline proceedings, again a distinction
    from the case at hand.

(3) declare that Defendants unlawfully denied the Law Professors the status of "complainant" in violation of the Constitution, as the action was allegedly taken in retaliation for their publishing the Grievance Complaints;

(4) enjoin Defendants from treating Plaintiffs' complaints different from those of similarly situated complainants and in retaliation for their publishing the Grievance Complaints;

(5) declare that Section 90(10) violates the First Amendment and the New York Constitution;

(6) enjoin all Defendants from enforcing or attempting to enforce Section 90(10) to preclude Plaintiffs from publishing the Grievance Complaints;

(7) declare that Section 90(10), by denying public access to state disciplinary proceedings regarding alleged misconduct by assistant district attorneys, violates the federal and New York Constitutions;

(8) enjoin all Defendants from enforcing or attempting to enforce Section 90(10) to deny such public access;

(9) order Defendants to make public all records regarding the Law Professors' complaints; and

(10) declare there is good cause to unseal all disciplinary proceedings and records stemming from the Law Professors' complaints. (See Complaint at 38-40.)

Even if the Court were to take every one of those actions, nothing would necessarily affect the way in which the State can conduct its disciplinary investigations and disciplinary proceedings. The Court would not be stepping in or directly interfering with such proceedings. Increased public disclosure may generate increased attention and publicity for the state's actions, but as the Supreme Court has said, "even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" Sprint, 571 U.S. at 81–82 (quoting Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984)). The Sprint Court cautioned against allowing the exception to swallow the rule. In fact, federal court abstention here would unduly extend the limited Younger exception to include federal cases where a state proceeding would not be directly affected by the outcome of the federal case, but where the federal and state cases are tangentially related. The Court finds Younger and its progeny do not provide a compelling basis for the Court to take the exceptional and extraordinary measure of declining jurisdiction over this matter.

    2.   O'Shea Abstention

The State Defendants and Kearse next argue that the Court should decline to exercise its jurisdiction under the abstention principles set forth in O'Shea v. Littleton, 414

U.S. 488 (1974). They assert that O'Shea abstention is appropriate whenever the requested relief would "improperly interfere in the 'internal workings of state courts.'" (State Defendants' Motion at 3 (quoting Kaufman v. Kaye, 466 F.3d 83, 86 (2d Cir. 2006).) But that proposition represents an overstatement of the doctrine and misrepresents both O'Shea and Kaufman.

The plaintiffs in O'Shea sought an "injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials," which the Supreme Court characterized as "an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that Younger v. Harris and related cases sought to prevent." O'Shea, 414 U.S. at 500. O'Shea counseled federal courts to abstain from hearing cases where the requested relief would constitute "a major continuing intrusion of the equitable power of the federal courts into the *daily conduct* of state criminal proceedings." Id. at 502 (emphasis added).

The Second Circuit's caselaw applying O'Shea clarifies this guidance. Kaufman heard a challenge to the procedure for assigning appellate panels in New York's Second Department of the Appellate Division, and the Second Circuit affirmed O'Shea dismissal because the Court could not resolve the case

"without committing to resolving the same issues as to the remedy chosen by the state and as to the subsequent case-by-case implementation of the assignment procedures in the Second Department." Kaufman, 466 F.3d at 87. In simpler terms, federal courts cannot "legislate and engraft new procedures upon existing state criminal practices." Id. at 86 (quoting Wallace v. Kern, 520 F.2d 400, 404 (2d Cir. 1975)). O'Shea abstention "seeks to avoid" "[o]ngoing, case-by-case oversight of state courts." Disability Rights N.Y. v. New York, 916 F.3d 129, 136 (2d Cir. 2019).

That doctrine is very different from what Plaintiffs are seeking in the case now before the Court. Here, Plaintiffs are asking the Court to determine the constitutionality of a state statute, not to oversee internal judicial procedures or ongoing proceedings, and requesting appropriate relief in the event the Court finds the statute unconstitutional. Determining the constitutionality of a state statute is, to quote Marbury v. Madison, "emphatically the province and duty of the judicial department." 5 U.S. (1 Cranch) 137, 177 (1803); see also id. at 178 ("So if a law be in opposition to the constitution . . . the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.").

16

In the same vein, the injunctive relief Plaintiffs request does not ask the Court to change state procedure for handling misconduct proceedings or anything similar.[3] It is either focused on the rights Plaintiffs themselves claim, or asks this Court to prevent Defendants from enforcing an invalid law if it rules that Section 90(10) is unconstitutional. Thus, under the facts presented here, O'Shea abstention is inapplicable and does not provide compelling grounds for this Court to abstain from exercising its jurisdiction.

### 3.   Pullman Abstention

Defendants' final argument for Rule 12(b)(1) dismissal of the Complaint is that the Court should decline to exercise its jurisdiction under the doctrine of Pullman abstention. The Pullman abstention doctrine holds that federal courts should "abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." Alliance of

---

[3] In Disability Rights, the Second Circuit found O'Shea abstention applied because the plaintiff-appellants were requesting relief that would "have federal courts conduct a preemptive review of state court procedure in guardianship proceedings." 916 F.3d at 137. By contrast, Plaintiffs here are not seeking to have this Court examine state court procedure regarding attorney discipline proceedings. They are only asking the Court to invalidate the privacy provision governing those procedures *if* the Court concludes that that provision is unconstitutional, thus otherwise leaving the existing procedure intact.

Am. Insurers v. Cuomo, 854 F.2d 591, 601 (2d Cir. 1988) (quoting Midkiff, 467 U.S. at 236).

The Second Circuit has held that Pullman abstention "may be appropriate" when three conditions are met: "(1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible 'to an interpretation by a state court that would avoid or modify the federal constitutional issue.'" Vermont Right to Life Comm. v. Sorrell, 221 F.3d 376, 385 (2d Cir. 2000) (quoting Greater N.Y. Metro. Food Council v. McGuire, 6 F.3d 75, 77 (2d Cir. 1993) (per curiam)).

None of these three conditions are met here. First, Section 90(10) is not unclear. It is a very straightforward provision stating that "all papers, records, and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and deemed private and confidential." N.Y. Jud. Law § 90(10). Second, resolution of the constitutional issue does not depend on the interpretation of state law; it depends on interpretation of federal jurisprudence embodying the First Amendment. See Flores v. Stanford, No. 18 Civ. 2468, 2019 WL 4572703, at *6 (S.D.N.Y. Sept. 20, 2019) (finding the second criterion for

Pullman abstention was not met where "plaintiffs' federal constitutional claims do not depend on an interpretation of New York State law — rather, they depend on an interpretation and application of federal [constitutional] jurisprudence"). And third, a state court could not interpret Section 90(10)'s confidentiality provision in a way that would avoid the First Amendment question, as the First Amendment question is the entire question at issue.

Because none of the necessary prerequisites for Pullman abstention are met here, the Court's declining to exercise subject-matter jurisdiction under that doctrine is unwarranted. This determination holds with particular force because abstention "is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law" and where deciding whether to abstain, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." Vermont Right to Life Comm., 221 F.3d at 385 (internal quotations omitted). The scales tip towards exercise of jurisdiction here, and the Court declines to abstain.

Accordingly, Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction is denied.

B.    <u>FAILURE TO STATE A CLAIM</u>

Having established its jurisdiction over this dispute, the Court next turns to the arguments Defendants' raise asking the Court to dismiss the Complaint pursuant to Rule 12(b)(6). The City Defendants and Kearse each put forth separate grounds for dismissal, all of which are evaluated below in turn. While the Court can reach a decision on several of the purported grounds for dismissal, certain arguments -- that Plaintiffs failed to state a claim for First Amendment retaliation and that the Defendants are entitled to qualified immunity -- require the Court to first determine whether Section 90(10) violates the First Amendment, either facially or as applied. That question forms the basis of Plaintiffs' currently pending motion for partial summary judgment. (<u>See</u> Dkt. Nos. 63, 64.) The Court will reserve decision on those arguments pending resolution of the motion for partial summary judgment.

1.    <u>The City Defendants' Arguments</u>

The City Defendants present four arguments for dismissal: (1) the claims are barred by "absolute privilege" (City Defendants Motion at 1); (2) the City Defendants are improper defendants for a challenge to Section 90(10); (3) Plaintiffs failed to state a claim for First Amendment retaliation because they cannot establish they engaged in

protected speech; and (4) that the City Defendants are protected by qualified immunity because their conduct did not violate a clearly established constitutional right.

As discussed, the latter two arguments require the Court to determine whether Section 90(10) violates the First Amendment, so the Court declines to assess those arguments at this time. The Court can, however, determine whether dismissal of the Complaint is warranted on the ground of absolute privilege or that the City Defendants are improper defendants.

a.   <u>Absolute Privilege</u>

City Defendants' argue they should be dismissed from the suit because they are protected by absolute privilege. Plaintiffs counter that absolute privilege does not apply to Section 1983 cases.[4] "Absolute privilege" refers to the concept that "public policy demands that certain communications . . . cannot serve as the basis for the imposition of liability in a [legal] action." <u>Nevin v. Citibank, N.A.</u>, 107 F. Supp. 2d 333, 343 (S.D.N.Y. 2000) (quoting <u>Toker v. Pollak</u>, 376 N.E.2d 163, 166 (N.Y. 1978)).

---

[4]  The parties' respective arguments are a bit clouded by some interchangeable use of "privilege" and "immunity" on both sides. To be clear, the City Defendants do not appear to be arguing that they are absolutely immune from suit, but rather that their letters to the Grievance Committee cannot serve as the basis for any legal claims because those letters are protected by absolute privilege.

Such communications include those made by individuals "participating in a public function, such as judicial, legislative, or executive proceedings." Toker, 376 N.E.2d at 166 (citations omitted). It is undisputed that attorney disciplinary proceedings are considered judicial proceedings. See Anonymous v. Ass'n of the Bar, 515 F.2d 427, 433 (2d Cir. 1975).

While they do not specify that their claim of privilege is grounded in state law, the City Defendants cite New York law principles and definitions for their assertation that absolute privilege doctrine bars the claims at issue here. (See City Defendants Motion at 1 ("It is well-established New York law that statements made in the context of judicial or quasi-judicial proceedings are absolutely privileged.").) However, Plaintiffs' claims assert a mix of federal law and state law claims. In the Second Circuit, when a plaintiff brings both federal and state law claims and the evidence at issue is relevant to all claims, "courts consistently have held that the asserted privileges are governed by the principles of federal law." von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987). Thus, the relevant inquiry is whether federal law, not New York law, recognizes an absolute judicial proceedings privilege applicable here, and, if it does not,

whether this Court should nonetheless defer to the state-law privilege.

Federal courts have not recognized an absolute judicial-proceedings privilege under federal law. Where a privilege has not yet been recognized under federal law, the Second Circuit has advised that "as a matter of comity, federal courts accord deference to state-created privileges, [but] such privileges are construed narrowly and must yield when outweighed by a federal interest in presenting relevant information to the trier of fact." United States v. 31-33 York St., 930 F.2d 139, 141 (2d Cir. 1991) (citations omitted). Courts in this District have applied a "balancing test" to these privilege questions, weighing the deference to be accorded the state-law privilege with the need for the information sought, including the public interest in either protecting or disclosing the information. See Howard v. City of New York, No. 12 Civ. 933, 2013 WL 174210, at *2 (S.D.N.Y. Jan. 16, 2013).

Here, the scales tilt in favor of construing the judicial-proceedings privilege narrowly and finding the privilege inapplicable to the facts at hand. The Johnson and Kearse Letters would both be barred from judicial consideration if the privilege applied. The Johnson Letter is at the heart of this dispute -- it forms the basis for all

Plaintiffs' claims, including the claims under the federal Constitution. There is a strong interest and need for the information contained in that letter to be considered in the Court's adjudication of the controversy at hand. The New York judicial-proceedings privilege is a prudent protective measure against common law tort claims like defamation and libel, but there is also an overwhelming interest in ensuring public officials do not violate an individual's constitutional rights. The balance of these interests weighs against applying a state-law privilege that has not been recognized under federal law to shield a particular set of public officials from litigating civil rights claims. After balancing these considerations, the Court concludes that the City Defendants' letters are not barred by the judicial-proceedings privilege from this Court's consideration in the resolution of the parties' underlying dispute.

b.   <u>Improper Defendants</u>

First, the Court notes that the City Defendants assert that all claims against Katz should be dismissed because the Complaint does not identify any actions taken by her. That point is accurate. Mentions of Katz in the Complaint are limited to the Corporation Counsel sending the Johnson Letter in his capacity as Katz's attorney. But while sparse, those allegations are sufficient to withstand a motion to dismiss.

It is well-settled that "[t]he lawyer-client relation [is] one of agent-principal," United States v. Int'l Bhd. of Teamsters, 986 F.2d 15, 20 (2d Cir. 1993), meaning the Complaint alleges Katz's agent acted on her behalf as her attorney.

At the pleading stage, a plaintiff need only allege "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quotations omitted). The Complaint satisfies this requirement in its allegations of Katz's wrongdoing through her agent-attorney. Perhaps discovery will show otherwise, but at this time, Katz should not be dismissed from the suit.

Second, and more broadly, the City Defendants argue they should be dismissed from the suit because they are not proper defendants for a challenge to Section 90(10) because they do not enforce that law. They do not cite any authority for this argument. (See City Defendants Motion.) Plaintiffs counter that the City Defendants' wrote to the Grievance Committee complaining that the Law Professors violated Section 90(10), and that such action is enough to open the City Defendants up

to a lawsuit challenging the statute. (See City Defendants Opposition at 3.)

Plaintiffs' argument finds indirect support in the Supreme Court decision in <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149 (2014). In that case, a non-profit organization brought a pre-enforcement challenge to an Ohio law that prohibited people from making false statements about the voting record of a candidate during a political campaign. One of the defendants was then-Congressman Steve Driehaus, the subject of the alleged false statements. Driehaus had filed a complaint with the Ohio Elections Commission alleging that Susan B. Anthony List violated the Ohio law by falsely representing his voting history on abortion. His complaint led to a Commission hearing, which found probable cause that a violation had occurred. The Supreme Court determined that Susan B. Anthony List had demonstrated an injury-in-fact sufficient for Article III standing in its suit against Driehaus. <u>Id.</u> at 168.

Plaintiffs argue that the City Defendants are analogous to Driehaus, and thus their action can go forward. But the Supreme Court did not address or assess whether Driehaus was a proper defendant -- and, on remand, Susan B. Anthony List voluntarily dismissed all claims against Driehaus and proceeded only against the Elections Commission and its

members in their official capacities. See Susan B. Anthony List v. Ohio Elections Comm'n, 45 F. Supp. 3d 765, 770 n.4 (S.D. Ohio 2014). So Susan B. Anthony List does not end this Court's inquiry in the instant case, as Plaintiffs believe it should.

Instead, the Court finds persuasive guidance in a recent decision from another court in this Circuit. In Carpenter v. James, No. 21 Civ. 6303, -- F. Supp. 3d --, 2021 WL 5879090 (W.D.N.Y. Dec. 13, 2021), the Western District of New York considered several constitutional challenges to New York's public accommodations laws. New York State Attorney General Letitia James sought to be dismissed from the lawsuit, claiming she was an improper defendant because her enforcement power consisted of the ability to file administrative complaints, a task almost anybody could complete. See id. at *8. The court held that James was a proper defendant because "to show that her injury will be 'redressed by a favorable decision,' Plaintiff need not prove that 'a favorable decision will relieve [her] every injury.'" Id. (quoting Susan B. Anthony List., 573 U.S. at 157, and Larson v. Valente, 456 U.S. 228, 243 n.15 (1982)). The plaintiff in Carpenter would obtain partial relief through an injunction against Attorney General James, and that was sufficient to establish jurisdiction over her as a defendant.

27

The same principles apply here. An injunction against the City Defendants would provide Plaintiffs with, at minimum, partial relief. They allege that the City Defendants will continue to send letters to the Grievance Committee, or as they say, that, absent an injunction, the "threats and retaliation will continue," (Complaint ¶ 77). According to the Complaint, the Kearse and Johnson letters accuse the Law Professors of violating New York state law, and the Law Professors are concerned the letters could hurt their reputation or position as attorneys in good standing in New York. Plaintiffs would obtain relief from that potential injury if the Court enjoins the City Defendants from telling the Grievance Committee that the Law Professors are violating Section 90(10). That relief would be enough to allow the action against the City Defendants to continue. Accordingly, the Court finds that the City Defendants are proper defendants in this lawsuit.

2.   Kearse's Arguments

Kearse argues the suit against her should be dismissed because (1) the Eleventh Amendment bars a suit against her in her official capacity as Chief Counsel to the Grievance Committee; (2) she is entitled to absolute immunity as an official acting in a quasi-judicial capacity; and (3) the doctrine of qualified immunity prohibits a suit against her

in her personal capacity. (<u>See</u> Kearse Motion at 2-3.) For the reasons explained above, the Court will not assess the qualified immunity argument at this time.

    a.   <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment to the United States Constitution bars "federal suits against state governments by a state's own citizens" or by citizens of another state. <u>Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.</u>, 466 F.3d 232, 236 (2d Cir. 2006) (citing <u>Hans v. Louisiana</u>, 134 U.S. 1, 15 (1890)). It is well-established that "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of the state." <u>Id.</u> (quoting <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997)); <u>see also</u> <u>Mancuso v. N.Y. State Thruway Auth.</u>, 86 F.3d 289, 292 (2d Cir. 1996) (explaining that a government body is entitled to Eleventh Amendment "immunity if it can demonstrate that it is more like an 'arm of the State,' such as a state agency, than like 'a municipal corporation or other political subdivision.'" (citations omitted)).

Plaintiffs do not dispute that the Grievance Committee is an arm of the State of New York and is entitled to Eleventh Amendment immunity. Indeed, the Second Circuit has already

acknowledged as much to be true. See Napolitano v. Saltzman, 315 F. App'x 351, 351 (2d Cir. 2009) ("We affirm the district court's holding that the Eleventh Amendment bars [Plaintiff's] claims for damages against . . . the Grievance Committee[] and [Counsel to the Grievance Committee] in his official capacity.").

Nevertheless, Eleventh Amendment immunity does not insulate the Grievance Committee and Kearse from every lawsuit. First, Kearse may still be sued in her individual capacity rather than her official capacity. See Ford v. Reynolds, 316 F.3d 351, 356 (2d Cir. 2003). Second, Kearse may still be sued in her official capacity for prospective, injunctive relief under the doctrine set forth in Ex parte Young, 209 U.S. 123 (1908). See Henrietta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003) ("The Eleventh Amendment, however, does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law."). The Ex parte Young exception to Eleventh Amendment immunity applies when "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." D.K. v. Teams, 260 F. Supp. 3d 334, 352 (S.D.N.Y. 2017) (quoting Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)).

Plaintiffs' Complaint meets that standard. They seek injunctive relief to stop an alleged violation of federal law. They allege Section 90(10) violates the First Amendment and that they will face future, continued harassment, retaliation, or punishment for exercising their First Amendment rights. In terms of the injury alleged and the requested relief, this case presents the quintessential lawsuit that falls under the <u>Ex parte Young</u> doctrine.

While Plaintiffs may not properly seek monetary damages from Kearse, to the extent they seek relief from her in Kearse's official capacity as counsel to the Grievance Committee, they may seek injunctive (or declaratory) relief to prohibit future constitutional violations. To that extent, the Eleventh Amendment does not bar this action and dismissal on Eleventh Amendment grounds is unwarranted. Defendants' motion to dismiss the Complaint on the ground of state sovereign immunity is denied.

b.   <u>Quasi-Judicial Immunity</u>

Finally, Kearse claims she is entitled to absolute immunity because in taking the action at issue she was functioning in a quasi-judicial capacity. The Second Circuit has indeed held that counsel to the Grievance Committee "enjoys absolute immunity for his actions as counsel . . ., which are 'quasi-public adjudicatory [or] prosecutorial' in

nature." <u>Napolitano</u>, 315 F. App'x at 351–52 (quoting <u>Barbara v. N.Y. Stock Exch., Inc.,</u> 99 F.3d 49, 58 (2d Cir. 1996)). Plaintiffs contend this immunity is inapplicable for the same reason as Eleventh Amendment immunity: the immunity does not apply to claims for injunctive relief (<u>see</u> Opposition to Kearse at 2), but the inquiry is not as simple as either party would like the Court to believe.

    <u>Ex parte Young</u> provided an exception to Eleventh Amendment immunity for suits seeking prospective injunctive relief, but in 1996, Congress amended Section 1983 to state that in "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. While the statute does not speak to so-called "quasi-judicial officers," the category into which Kearse falls, the Court need not determine the extent to which the protection for quasi-judicial officers differs, if at all, from that for judicial officers for two reasons.

    First, the amended text of Section 1983 explicitly allows for suits seeking declaratory relief. <u>See</u> <u>id.</u>; <u>see also</u> <u>Brown v. City of New York</u>, 210 F. Supp. 2d 235, 239 n.6 (S.D.N.Y. 1999) ("The doctrine of individual immunity does not protect against claims for declaratory relief." (citing

the Senate Report to the 1996 amendment to Section 1983)).
This exception means that a judicial officer can still be
sued for declaratory relief. Because quasi-judicial immunity
has the same reach as judicial immunity, see, e.g., Thaler v.
Casella, 960 F. Supp. 691, 700 (S.D.N.Y. 1997), a quasi-
judicial officer like Kearse may still be sued for declaratory
relief. The doctrine of absolute immunity does not require
the dismissal of Plaintiffs' entire suit insofar as they
request declaratory relief on several issues.

Second, judicial immunity does not apply -- and, thus,
does not bar a suit for injunctive relief -- when "the action
in question is not judicial in nature, as when the judge
performs an administrative, legislative, or executive act."
Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005). The two
necessary factors to determine whether an action was judicial
in nature "relate to the nature of the act itself, i.e.,
whether it is a function normally performed by a judge, and
to the expectations of the parties, i.e., whether they dealt
with the judge in his judicial capacity." Id. (quoting Stump
v. Sparkman, 435 U.S. 349, 362 (1978)). In Napolitano, the
Second Circuit concluded that counsel to the Grievance
Committee was acting within the scope of the position that
entitled him to quasi-judicial immunity when he "receiv[ed
grievance] complaints . . . , investigat[ed] them, and ma[de]

recommendations to the Appellate Division." <u>Napolitano</u>, 315
F. App'x at 352.

Here, based on the facts alleged in the Complaint, Kearse
did not merely receive, investigate, and provide a
recommendation to the Grievance Committee. Plaintiffs allege
she acted without any authority and "refuse[d] to treat a
complainant as a complainant," departing from both the
procedure followed in other grievance cases and New York law
governing attorney grievance proceedings. (Complaint ¶¶ 72-
75.) At this stage in the proceedings, the Court must "accept
the allegations in the . . . complaint as true." <u>Hill v. City
of New York</u>, 45 F.3d 653, 657 (2d Cir. 1995) (reviewing an
order denying dismissal due to absolute immunity). The
allegations in the Complaint are sufficient to plausibly
suggest Kearse acted outside the scope of her authority. Under
that determination, Kearse's actions would not be protected
by judicial immunity.

While discovery may reveal Kearse did not act improperly
towards Plaintiffs, the Court cannot conclude, at this time,
that Kearse is entitled to absolute quasi-judicial immunity.
Without quasi-judicial immunity, Plaintiffs' action for
declaratory and injunctive relief may go forward. Because the
law allows Plaintiffs to seek both declaratory and injunctive

34

relief from Kearse, Kearse's motion to dismiss the Complaint is denied.

**IV.   ORDER**

It is hereby **ORDERED** that the motion so-deemed by the Court (Dkt. No. 35) filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to dismiss the unredacted complaint ("Complaint," Dkt. No. 59) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murphy, Abbe Smith, and Steven Zeidman ("Plaintiffs") is **DENIED IN PART**; and it is further

**ORDERED** that the motion so-deemed by the Court (Dkt. No. 41) filed by Defendants Andrea E. Bonina and Hector LaSalle to dismiss Plaintiffs' Complaint is **DENIED**; and it is further

**ORDERED** that the motion so-deemed by the Court (Dkt. No. 47) filed by Defendant Diana Maxfield Kearse ("Kearse") to dismiss Plaintiffs' Complaint is **DENIED IN PART**. The Court will reserve judgment on the remaining arguments made in the motions filed by the City Defendants and Kearse pending resolution of Plaintiffs' motion for partial summary judgment.

**SO ORDERED.**

Dated: New York, New York
     5 May 2022

_____
Victor Marrero
U.S.D.J.