```
                                        ┌─────────────────────────────┐
                                        │ USDC SDNY                   │
                                        │ DOCUMENT                    │
                                        │ ELECTRONICALLY FILED        │
                                        │ DOC #:_____ │
                                        │ DATE FILED: 6/13/2022       │
                                        └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CIVIL RIGHTS CORPS, ET AL.,          :
                                     :
                  Plaintiffs,        :
                                     :    21 Civ. 9128 (VM)
      - against -                    :
                                     :    **DECISION AND ORDER**
GEORGIA PESTANA, ET AL.,             :
                                     :
                  Defendants.        :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

On November 4, 2021, Plaintiffs Cynthia Godsoe, Nicole
Smith Futrell, Daniel Medwed, Justin Murray, Abbe Smith, and
Steven Zeidman, (together the "Law Professors"), and non-
profit organization Civil Rights Corps ("CRC," and with the
Law Professors, "Plaintiffs") filed suit against Georgia
Pestana ("Pestana"), Corporation Counsel of the City of New
York ("Corporation Counsel"); Melinda Katz ("Katz"), Queens
County District Attorney; Andrea Bonina ("Bonina"), Chair of
the State of New York Grievance Committee for the Second,
Eleventh, and Thirteenth Judicial Districts (the "Grievance
Committee"); Justice Hector D. LaSalle ("LaSalle"), Presiding
Justice of the Second Judicial Department of the Appellate
Division of the Supreme Court of New York; and Diana Maxfield
Kearse ("Kearse"), Chief Counsel of the Grievance Committee
(together, "Defendants"). (See "Complaint," Dkt. No. 59).
Between December 20, 2021 and January 14, 2022, the Court

received three letters, so-deemed by the Court as motions to dismiss, from different Defendants seeking dismissal of the Complaint: one by Pestana and Katz (the "City Defendants") (see "City Defendants' Motion to Dismiss," Dkt. No. 35), the second by Bonina and LaSalle (the "State Defendants") (see "State Defendants' Motion to Dismiss," Dkt. No. 41), and the third filed by Kearse. (See "Kearse's Motion to Dismiss," Dkt. No. 47.) On May 5, 2022, the Court denied the State Defendants' motion in full and denied the City Defendants' and Kearse's motions in part and reserved judgment in part. (See Civil Rights Corps v. Pestana, No. 21 Civ. 9128, 2022 WL 1422852 (S.D.N.Y. May 5, 2022) ("CRC II")).

Now before the Court is Plaintiffs' motion for partial summary judgment ("Motion," Dkt. No. 63) and accompanying memorandum of law ("Plaintiffs' Brief," Dkt. No. 64). For the reasons explained below, the Motion is **GRANTED** in part. Also before the Court are the undecided issues from City Defendants' and Kearse's Motions to Dismiss. For the reasons below, both motions are **DENIED**.

## I.   BACKGROUND

A.   Factual Background

The Court assumes familiarity with the factual background as recited in the Court's two prior orders in this matter. (See Civil Rights Corps v. Pestana, No. 21 Civ. 9128,

2022 WL 220020, at *1–2 (S.D.N.Y. Jan. 25, 2022) ("CRC I"); CRC II, 2022 WL 1422852, at *1–2.) However, because a motion for summary judgment is now before the Court, the Court is no longer bound to accept the facts alleged in the Complaint as true, nor must it draw all reasonable inferences in favor of Plaintiffs. Instead, the Court draws the factual background below from the undisputed facts set forth in the parties' statements filed pursuant to Local Rule 56.1.[1]

CRC is a non-profit organization that seeks to challenge systemic injustice across the country, an interest shared with the Law Professors. On May 3, 2021, the Law Professors filed twenty-one grievance complaints (the "Grievance Complaints") against current and former assistant district attorneys working in the Queens County District Attorney's Office, claiming prosecutorial misconduct those attorneys allegedly committed while so employed. Each Grievance Complaint requested that the respective grievance committees publicly investigate and, if appropriate, discipline the attorney involved. Plaintiffs then created a website, AccountabilityNY.org, and publicly published the Grievance Complaints.

---

[1] See "Plaintiffs' 56.1 Statement," Dkt. No. 66; "City Defendants' 56.1 Statement," Dkt. No. 76; "State Defendants' 56.1 Statement," Dkt. No. 79; "Kearse's 56.1 Statement," Dkt. No. 84. Except where directly quoted, no further citations to the record will be made in this factual recitation.

On June 2, 2021, James Johnson ("Johnson"), then-Corporation Counsel of the City of New York, sent identical letters to each grievance committee expressing his concerns about the online publication of the Grievance Complaints (the "Johnson Letter.") Plaintiffs appended a copy of this letter as Exhibit 1 to the Complaint. (See Ex. 1, Dkt. No. 59.) Johnson wrote "[a]s Chief Legal Officer of the City of New York and as legal counsel to the Office of the District Attorney for Queens County" to "express [his] deep concern" about the Grievance Complaints. (Johnson Letter at 1.) Johnson explained the basis of his concern as that New York State Judiciary Law Section 90(10) ("Section 90(10)") "designates attorney disciplinary records -- including the complaint -- private and confidential." (Id. at 2.) He continued that "in direct contravention of this legal directive and long-established public policy, the complainant law professors not only posted the complaints online, but designed a special website to host these and future grievance complaints," an act that Johnson stated was "an orchestrated campaign to upend the attorney grievance process to advance their stated goal of holding prosecutors accountable." (Id. at 2.) Johnson concluded by stating that he was writing "to make sure that the Committee is aware" that Plaintiffs are conducting a "very public campaign . . . which, [he]

submit[s], runs afoul of the confidentiality provisions of the law and the purpose of the grievance process." (Id. at 3.)

Section 90(10), the statutory provision upon which Johnson relies, states that "all papers, records, and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of attorneys, shall be sealed and deemed private and confidential." N.Y. Jud. Law. § 90(10). Less than two weeks after they received the Johnson Letter, the Law Professors received a letter from defendant Kearse, a full copy of which is appended as Exhibit 2 to the Complaint, notifying them that any investigation into the Grievance Complaints would be initiated *sua sponte* by the Grievance Committee and "remain confidential pursuant to New York State Judiciary Law § 90." ("Kearse Letter," Ex. 2, Dkt. No. 59.) Plaintiffs interpreted the Kearse Letter as essentially dismissing the Law Professors as complainants and denying them access to information about the proceedings and any other benefits that come with "complainant" status. The Johnson and Kearse Letters provide the primary basis for the First Amendment violations alleged in Plaintiffs' Complaint.

Following their receipt of both letters, Plaintiffs, through counsel, wrote to the Grievance Committee, Pestana,

and Kearse, expressing their displeasure with the course of events. Defendant Pestana, who had succeeded Johnson as Corporation Counsel, responded and reasserted her Office's belief that Plaintiffs were running afoul of Section 90(10). Similarly, Kearse replied and reiterated that any possible investigation would be conducted by the Grievance Committee *sua sponte*.

B.   Procedural History

After the unsuccessful effort to resolve the parties' dispute by letter exchange, Plaintiffs filed this action. They allege (1) Defendants retaliated against the Law Professors in violation of their First Amendment rights; (2) violations of the Fourteenth Amendment's Equal Protection Clause; (3) that Section 90(10) violates the First Amendment and Article I, Section 8 of the New York Constitution, both facially and as-applied; (4) Defendants violated the Constitutions of the United States and of New York State by denying Plaintiffs their right to access government proceedings and records; and (5) if the Court finds that Section 90(10) is constitutional, Defendants must allow access to the records at issue under the statute's good-cause exception. Plaintiffs sue under 42 U.S.C. Section 1983 ("Section 1983").

Shortly after filing the Complaint, Plaintiffs submitted a motion to this Court requesting the Court order the unsealing of the exhibits to the Complaint, and the Court granted that motion on January 25, 2022. See CRC I, 2022 WL 220020. Plaintiffs then filed an unsealed version of the Complaint. (See Dkt. No. 59.) While that motion was pending, Plaintiffs filed a letter expressing their intent to file a motion for partial summary judgment (Dkt. No. 29), and City Defendants, State Defendants, and Kearse filed letters seeking leave to file motions to dismiss the Complaint. The Court ordered full briefing on Plaintiffs' motion for partial summary judgment but noted that it would resolve the anticipated motions to dismiss on the basis of the parties' pre-motion letters. (See Dkt. No. 56, (citing Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.)). On May 5, 2022, the Court issued an order on the motions to dismiss, denying State Defendants' motion to dismiss in full and denying the motions of Kearse and City Defendants in part, while reserving judgment on the issues that required a determination regarding Section 90(10)'s constitutionality. See generally CRC II, 2022 WL 1422852.

Now before the Court is Plaintiffs' Motion and accompanying memorandum of law, which seeks summary judgment

on Plaintiffs' third claim for relief: that Section 90(10) violates the First Amendment of the United States Constitution and Article I, Section 8 of the New York State Constitution, both as-applied and on its face. The Court has also received City Defendants', State Defendants', and Kearse's oppositions to the Motion (see "City Opposition," Dkt. No. 77; "State Opposition," Dkt. No. 78; "Kearse Opposition," Dkt. No. 82); Plaintiffs' reply to the opposition briefs, (see "Plaintiffs' Reply," Dkt. No. 85); as well as a brief in support of the Motion, filed by amicus curiae Newsday LLC, Pro Publica Inc., The Associated Press, and The New York Times Company. (See "Amicus Brief," Dkt. No. 73.)

## II.  LEGAL STANDARD

### A.   Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 ("Rule 56") states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where, upon motion of one party, the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court may consider all facts in the record before it. Id. at 323.

When a motion for summary judgment is properly supported by evidence, the party opposing a motion for summary judgment "may not rest upon mere allegations or denials -- rather, he must present sufficient probative evidence to establish a genuine issue of material fact." Horror Inc. v. Miller, 15 F.4th 232, 240 (2d Cir. 2021). Evidence that is "'merely colorable,' or is not 'significantly probative'" is insufficient to defeat a motion for summary judgment. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)). In short, the nonmoving party's evidence must be persuasive enough that a reasonable jury could return a judgment in the nonmovant's favor. Id. at 241.

B.   First Amendment Legal Standard

The Court begins by noting that while certain free-speech violations, such as retaliation, brought under Article I, Section 8 ("Article I, Section 8") of the New York State Constitution are judged under the same principles that apply to claims alleging violations of the First Amendment to the United States Constitution (the "First Amendment"), see Martinez v. Sanders, 307 F. App'x 467, 468 n.2 (2d Cir. 2008), Article I, Section 8 generally offers broader protection than

the First Amendment. See O'Neill v. Oakgrove Constr., Inc., 523 N.E.2d 277, 280 n.3 (N.Y. 1988) ("The protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment."). This proposition is evident from the text of both provisions. Compare U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press."), with N.Y. Const. art. I § 8 ("Every citizen may freely speak, write and publish his or her sentiments on all subjects . . . and no law shall be passed to restrain or abridge the liberty of speech or of the press."). That means that any statute that fails to pass muster under federal law will fail under the more protective New York State Constitution.

The First Amendment protects against governmental intrusion on the right to free speech, including statutory intrusions. Statutes "may unconstitutionally restrict speech in one of two primary ways," the first of which is relevant here: "a statute may restrict speech based on the content of that speech." Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006). Such content-based restrictions on speech go against the principle that lies "[a]t the heart of the First Amendment[:] . . . that each person should decide for him or herself the ideas and beliefs deserving of

expression, consideration, and adherence." <u>Turner Broad. Sys.
v. F.C.C.,</u> 512 U.S. 622, 641 (1994). For that reason, "the
most exacting scrutiny" is used to evaluate the
constitutionality of laws that "suppress, disadvantage, or
impose differential burdens upon speech because of its
content." <u>Id.</u> at 642. "Most exacting scrutiny," or "strict
scrutiny," means that the law must be narrowly tailored to
promote a compelling government interest.[2] <u>See</u> <u>John Doe, Inc.
v. Mukasey</u>, 549 F.3d 861, 871 (2d Cir. 2008) (quoting <u>United
States v. Playboy Ent. Grp., Inc.</u>, 529 U.S. 803, 813 (2000)).

Plaintiffs challenge Section 90(10) both facially and as
applied, so it is important to distinguish the two types of
challenges. A facial challenge looks to "only the text of the
statute itself, not its application to the particular

---

[2] Plaintiffs also emphasize that the law is a "prior restraint" on speech
because it "prohibit[s] speech before it occurs." (Plaintiffs' Brief
at 13.) The Court notes the statute at issue here differs from those
in classic prior-restraint cases. <u>See,</u> <u>e.g.,</u> <u>Near v. Minnesota</u>, 283
U.S. 697 (1931) (striking down a statute that allowed the state
attorney general or any citizen to seek an injunction prohibiting a
news publication from publishing certain information); <u>Lovell v. City
of Griffin</u>, 303 U.S. 444 (1938) (holding unconstitutional an ordinance
that prohibited the distribution of pamphlets without a permit); <u>CBS
v. Davis</u>, 510 U.S. 1315 (1994) (staying a circuit court injunction
that prohibited CBS from broadcasting certain footage). The fact
pattern here more closely resembles the challenged law in <u>Landmark
Communications v. Virginia</u>, which required strict confidentiality of
all papers and proceedings before Virginia's judicial review
commission and that the Supreme Court said "[did] not constitute a
prior restraint." 435 U.S. 829, 838 (1978). However, because prior
restraints on speech and content-based restrictions on speech are both
subject to strict scrutiny, it is unnecessary to establish whether
Section 90(10) is a prior restraint on speech, as there is no dispute
it is a content-based restriction.

circumstances of an individual." <u>Field Day</u>, 463 F.3d at 174
(citing <u>City of Lakewood v. Plain Dealer Pub. Co.</u>, 486 U.S.
750, 770 n.11 (1988)). On the other hand, an as-applied
challenge "requires an analysis of the facts of a particular
case to determine whether the application of a statute, even
one constitutional on its face, deprived the individual to
whom it was applied of a protected right." <u>Id.</u>

### III. <u>JURISDICTIONAL ISSUES</u>

Before addressing the substantive claims at issue in the
Motion, the Court must assess a few jurisdictional arguments
presented by Defendants, fulfilling a federal court's
obligation to establish its own jurisdiction before
proceeding to consider the merits of a case.

First, State Defendants and Kearse argue that the Court
should abstain from hearing this case. The Court has already
addressed these arguments in its prior order and explained
why each abstention doctrine is inapplicable to this matter.
<u>See</u> <u>CRC II</u>, 2022 WL 1422852, at *3–7. Similarly, the second
jurisdictional issue stems from City Defendants' claim that
they are not proper parties to this dispute. The Court already
denied this argument for dismissal in <u>CRC II</u>. <u>See</u> <u>id.</u> at *9–
10.

Kearse next argues that there is no justiciable
controversy   and   that   the   Court's   deciding   the

12

constitutionality of Section 90(10) would be equivalent to issuing an advisory opinion. (See Kearse's Opposition at 4.) She makes this argument because "[s]he never told Plaintiffs" they could not publicly disclose the Grievance Complaints. (Id.) Similarly, and together comprising the third jurisdictional issue, City Defendants argue that the case is not ripe for review. (See City Opposition at 6.)

Federal courts are empowered to hear only live, definite, and concrete disputes, the resolution of which would directly impact the interests of the parties before the Court. See In re Motors Liquidation Co., 829 F.3d 135, 167–68 (2d Cir. 2016) (detailing the constraints of federal courts' jurisdiction). The Court cannot render "an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937). Courts have recognized two ripeness doctrines: constitutional and prudential. An action is constitutionally unripe if "plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" National Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 688 (2d Cir. 2013) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 588 (1992)). Prudential ripeness asks whether the issues are fit for judicial decision and what hardship withholding

13

consideration would bring to the parties. <u>See</u> <u>National Org.</u> <u>for Marriage</u>, 714 F.3d at 691.

Reading the Complaint and all its claims for relief in full, the Court finds the case is both constitutionally and prudentially ripe for review. Plaintiffs' alleged injury is neither conjectural nor hypothetical, as it has already occurred. Plaintiffs allege their First Amendment rights were violated after the following sequence of events: (1) they filed the Grievance Complaints and published them online, (2) because of the publication of the Grievance Complaints, Johnson, then New York City Corporation Counsel, sent Plaintiffs, and the Grievance Committee, a letter stating that Plaintiffs had violated New York law, (3) Plaintiffs felt threatened and harassed by the Johnson Letter, (4) the Grievance Committee, through Kearse, dismissed Plaintiffs as complainants, and (5) the parties continued to exchange correspondence in which neither the Corporation Counsel nor the Grievance Committee would rescind their comments. Plaintiffs allege the second, third, and fourth actions in this sequence were done in retaliation for their exercise of First Amendment rights. Without prematurely evaluating the merits of Plaintiffs' allegations, the Court finds nothing abstract, conjectural, speculative, or hypothetical about the injury Plaintiffs allege.

And as for Kearse's argument that any opinion would be advisory because she never told Plaintiffs they could not publish the Grievance Complaints, that statement misrepresents the alleged injury. It does not matter that Kearse never told any of the Plaintiffs that they could not publish their complaints; it does matter that Kearse allegedly deprived them of complainant status in retaliation for publishing the complaints. While Plaintiffs may claim other Defendants directly attempted to block the publication of the Grievance Complaints, Plaintiffs acted well within the confines of the Federal Rules of Civil Procedure when they brought several related claims against multiple Defendants in one lawsuit. <u>See, e.g.,</u> Fed. R. Civ. P. 18 (joinder of claims); 20 (permissive joinder of parties).

Insofar as Plaintiffs claim they will be subject to future threats or harassment, the Second Circuit has advised that "pre-enforcement First Amendment claims" are reviewed under "somewhat relaxed standing and ripeness rules." <u>National Org. for Marriage</u>, 714 F.3d at 689. In these cases, "a real and imminent fear [that rights will be chilled] is enough." <u>Id.</u> (citing <u>Laird v. Tatum</u>, 408 U.S. 1, 13–14 (1972)). Given that Defendants repeatedly sent Plaintiffs allegedly threatening and harassing letters, several of which invoked Section 90(10), following Plaintiffs' publication of

the Grievance Complaints, the Court is persuaded that
Plaintiffs felt a real and imminent fear that their First
Amendment rights would continue to be chilled.

As for prudential standing, the Court finds nothing
about this action that suggests "the case will be *better*
decided later and that the parties will not have
constitutional rights undermined by the delay." Simmonds v.
INS, 326 F.3d 351, 357 (2d Cir. 2003). This case is similar
to the type of many cases federal courts adjudicate every day
that ask the Court to determine the constitutionality of a
state statute and whether certain factual circumstances
amount to a violation of law under Section 1983. The Court
sees no compelling reason why a decision on these issues
should be delayed. More importantly, though, parties could
have their constitutional rights undermined by a delay if
Section 90(10) is eventually deemed unconstitutional but the
state continued to enforce the law in the time lapse between
this suit and a subsequent one. Thus, the Court is unpersuaded
that Defendants have shown there is a valid ripeness challenge
in this litigation.

The fourth jurisdictional question raises similar
issues: the State Defendants contest that any claim for public
disclosure of investigative documents lacks ripeness because
Plaintiffs have not sought remedy in the proper

16

administrative channels. (See State Opposition at 23.) The Court does not interpret Plaintiffs' claim at issue in this motion for partial summary judgment to seek the release of any investigative documents, and, as such, the Court lacks the benefit of full argument and briefing on this issue. State Defendants may renew this argument at a later in stage of the litigation when the Court evaluates claims that may lead to the public disclosure of investigative documents.

Fifth, City Defendants argue that the case is not ripe for review because "plaintiffs seek to enjoin the enforcement of Judiciary Law § 90(10), but no one has sought or threatened to enforce the law against them." (City Opposition at 7.) This contention demonstrates a misunderstanding of applicable legal principles. Plaintiffs' First Amendment claim is that they were retaliated against after exercising their First Amendment rights. As detailed below, the alleged retaliatory acts consisted of (1) Johnson telling the Grievance Committee that Plaintiffs were acting in violation of state law, an action that may be viewed as harassing or threatening, and (2) Kearse rescinding Plaintiffs' complainant status. Plaintiffs allege Defendants, including City Defendants, hide behind the auspice of enforcing Section 90(10) in making these threats. They seek enjoinment of the law's enforcement to the

extent that the law is being applied as a weapon to stifle Plaintiffs' free speech rights.

Sixth, City Defendants claim Plaintiffs lack standing to bring suit. To satisfy the requirements of constitutional standing, a plaintiff must have suffered a concrete, particularized, actual, and imminent injury-in-fact which was caused by "the conduct complained of" and will likely be redressed by a favorable judicial decision. Lujan, 503 U.S. at 560—61. The Court already has, above, found that Plaintiffs suffered a concrete and particularized, non-hypothetical injury, and the Court now finds Plaintiffs easily satisfy the remaining standing factors as well.

City Defendants do not dispute causation, and the Court's discussion of that factor is not difficult. Plaintiffs' alleged injury is that their First Amendment rights were violated when Defendants allegedly retaliated against them for exercising their constitutional right to free speech. That alleged injury was directly caused by Defendants' actions -- Defendants sent the Johnson Letter, the Kearse Letter, and subsequent correspondence, plus they dismissed Plaintiffs from the suit as complainants, and those actions caused the injury Plaintiffs allege.

City Defendants' argument for lack of standing largely relies on the redressability requirement, as they state that

"Plaintiffs simply cannot demonstrate that the City [D]efendants caused them a redressable injury related to the alleged enforcement of a law that the City [D]efendants have no power to interpret or enforce." (City Opposition at 1.) This argument, while dressed in different terminology, duplicates City Defendants' earlier argument that they should be dismissed as improper defendants. The Court assessed this argument at length in CRC II, and it sees no reason to reevaluate its conclusion from that decision. See CRC II, 2022 WL 1422852, at *9-10. As the Court stated in its prior Order, a favorable decision would provide Plaintiffs with redress for their injuries, so Plaintiffs have satisfied their burden of establishing standing. See id. at *9. The Court finds it has jurisdiction to decide this lawsuit and that there are no jurisdictional reasons to dismiss the Complaint.

## IV.   **SUMMARY JUDGMENT DISCUSSION**

Section 90(10) is a content-based restriction on speech, as it prohibits disclosure of "all papers, records and documents" specifically related to attorney discipline proceedings. There is no dispute that the statute, on its face, "applies to particular speech because of the topic discussed or the idea or message expressed." Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015). That determination means

the law is "presumptively unconstitutional and may be justified only if the government proves that [the law is] narrowly tailored to serve compelling state interests." <u>Id.</u> This high burden is especially important in cases such as this one, where the speech at issue relates to the conduct of government prosecutors. The Supreme Court has repeatedly stated, "there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." <u>Landmark Commc'ns v. Virginia</u>, 435 U.S. 829, 838 (1978) (quoting <u>Mills v. Alabama</u>, 384 U.S. 214, 218 (1966)).

As the Second Circuit recently noted, "[f]acial challenges are disfavored," so "it is a proper exercise of judicial restraint for courts to adjudicate as-applied challenges before facial ones in an effort to decide constitutional attacks on the narrowest possible grounds and to avoid reaching unnecessary constitutional issues." <u>Kane v. De Blasio</u>, 19 F.4th 152, 174 (2d Cir. 2021) (modification in original) (quotations omitted). With that in mind, the Court begins by assessing the as-applied challenge and determining whether Section 90(10)'s publication prohibitions are narrowly tailored to serve a compelling government interest.

A.   <u>Section 90(10) Is Unconstitutional As Applied to Plaintiffs' Case</u>

In this case, an as-applied challenge means this Court is tasked with determining the constitutionality of Section 90(10)'s prohibition on (1) the publication of attorney grievance complaints by the private individuals who filed the complaints, and (2) the publication of correspondence related to grievance complaints or Grievance Committee business by the private recipients of that correspondence, as those are the two factual circumstances in which Section 90(10) applies here. Each prohibition must be narrowly tailored to support a compelling government interest.

1.   Grievance Complaints

When Johnson, as Corporation Counsel of the City of New York, wrote to the Grievance Committee to inform it of Plaintiffs' publication of the Grievance Complaints, he specifically wrote, "As you know, New York State Judiciary Law § 90(10) designates attorney disciplinary records -- *including the complaint* -- private and confidential." (Johnson Letter at 2 (emphasis added).) However, in their opposition to Plaintiffs' Motion, Defendants have seemingly conceded that Section 90(10) does not prohibit complainants' publication of their own grievance complaints. The State Defendants' Opposition and Kearse's Opposition both directly say that a party is free to publish its own grievance complaints under Section 90(10). (See Kearse's Opposition at

4; State Opposition at 2.)[3] This means, at minimum, that Johnson purported to enforce Section 90(10) while clearly acting outside the law's bounds.

State Defendants spill much ink examining the text of Section 90(10) to explain why the statute does not prohibit the publication of grievance complaints, all of which may be relevant when evaluating a facial challenge to the statute. In an as-applied challenge, however, the Court's inquiry concerns "the facts of [the] particular case" and "whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." Field Day, 463 F.3d at 174. Under this doctrine the Court is concerned with the *application* of the statute rather than its text.

A concession that the text of Section 90(10) does not prohibit the publishing of grievance complaints does not resolve the concern that the New York City Corporation Counsel sought to halt and punish the publication of the grievance complaints under the auspice of upholding Section 90(10). The Johnson Letter is quite clear that the Corporation Counsel

---

[3] Despite Plaintiffs' clear statements that they were moving only for partial summary judgment on the issue of Section 90(10)'s constitutionality, City Defendants' Opposition completely fails to respond to the challenges to Section 90(10)'s constitutionality, instead addressing jurisdictional issues (some of which the Court has previously decided in CRC II) and discussing claims that are not at issue in the instant motion.

believed -- or at least asserted – that the publication of Plaintiffs' grievance complaints contravened Section 90(10)'s confidentiality provisions and that the Grievance Committee should be aware of this alleged illegal act. And Plaintiffs' as-applied challenge focuses on that action -- they ask the Court to determine whether Section 90(10) was enforced against them in violation of their First Amendment rights.

The Court concludes that if Section 90(10) is being used to block Plaintiffs' publication of their own grievance complaints, the statute is being applied in an unconstitutional manner. The Second Circuit has already so suggested. In Kamasinski v. Judicial Review Council, the Second Circuit noted that Section 90(10) could apply to three different categories of information that individuals may want to disclose: (1) "the substance of an individual's complaint or testimony;" (2) "the complainant's disclosure of the *fact* that a complaint was filed, or a witness's disclose of the *fact* that testimony was given;" and (3) "information that an individual learns by interacting with the [Judicial Review Council]." 44 F.3d 106, 110 (2d Cir. 1994). While, unlike this case, the facts in Kamasinski did not involve the first category, the Court continued to note,

> Whether the state may prohibit the disclosure of the substance of an individual's complaint or testimony merits little discussion. Penalizing an individual for

23

> publicly disclosing complaints about the conduct of a
> government official strikes at the heart of the First
> Amendment, and we agree with the district court that
> such a prohibition would be unconstitutional.

Id. (citing Mills, 384 U.S. at 218–19).

The situation contemplated in Kamasinski is exactly what unfolded here. There is no genuine factual dispute that Johnson wrote to the Grievance Committee expressing concern that Plaintiffs published the Grievance Complaints in violation of Section 90(10). In other words, a government official used Section 90(10) in an effort to prohibit the publication of grievance complaints publicly filed by the complainants themselves, an action this Court finds contrary to the First Amendment.

Whether Johnson intended to penalize Plaintiffs with that action is a question for resolution at a later stage of this litigation, as all that matters in the motion for partial summary judgment now before the Court is whether Section 90(10) is unconstitutional as applied to the facts at issue in this case. Here, the uncontroverted facts and Second Circuit precedent show that Section 90(10) was applied in an unconstitutional manner. The First Amendment prohibits a state from banning complainants from publishing their own attorney grievance complaints.

2.   Correspondence Related to Complaints

Plaintiffs' as-applied challenge is not limited to the publication of the Grievance Complaints, as Defendants also invoked Section 90(10) in an effort to bar Plaintiffs from publicizing the Johnson Letter and subsequent correspondence.[4] Plaintiffs challenge that application of the statute, and also any future government attempts to prohibit the publication of information related to the Grievance Complaints. Thus, the question before the Court is whether a state prohibiting individuals from publishing correspondence and documents related to a grievance complaint would violate the First Amendment.

This challenge concerns the other two types of information that the Kamasinski court described, broadly categorized as (1) facts related to the mere existence of an investigation, complaint, or testimony and (2) information learned from correspondence with the body investigating the complaints (here, the Grievance Committee). To assess whether prohibition on disclosure of information in these categories

---

[4] The Johnson Letter includes a footnote stating, "[T]his letter is sent in response to specific grievances and, thus, is private and confidential under Judiciary Law 90(10). As such, any disclosure of this letter by complainants without proper court permission would be unlawful under the Judiciary Law." (Johnson Letter at 3 n.4.) The Kearse Letter is marked "personal and confidential." (Kearse Letter at 1.) The parties disagree about whether that label meant the letter was to be kept confidential pursuant to Section 90(10), which uses the term "private and confidential."

violates the First Amendment, the Court must "balance [Plaintiffs'] asserted First Amendment rights against [the Government's] interests in preserving the confidentiality" of its attorney grievance proceedings. Butterworth v. Smith, 494 U.S. 624, 630 (1990); see also Kamasinski, 44 F.3d 110–11; Landmark Commc'ns, 435 U.S. at 841.

Because this inquiry entails a content-based regulation of speech, in balancing those interests the Court uses strict scrutiny to weigh the scales. In content-based First Amendment cases, it is well settled that the Government bears the burden of showing a law is narrowly tailored to support a compelling government interest. See, e.g., Playboy Entm't Grp., 529 U.S. at 817. Yet, while Plaintiffs devote a considerable portion of the Motion explaining why Section 90(10) cannot survive strict scrutiny (see Plaintiffs' Brief at 15–22), Defendants do not make any attempt to rebut the presumption of unconstitutionality that attaches to a content-based restriction on speech. Again, they instead argue that the statute, on its face, does not proscribe the publication of these materials. But, once again, even "the application of a facially neutral law so as to discriminate against certain speakers or idea[s] violates the First Amendment." Field Day, 463 F.3d at 193.

The Court notes that Section 90(10) is not facially neutral.[5] On its face, it imposes content-based restrictions. Defendants argue, however, that the law is constitutional on its face because the actions underlying the dispute here fall outside the bounds of Section 90(10) and the statute does not prevent the disclosure of the materials at issue. The trouble with this argument is that the Corporation Counsel, on behalf of the City of New York, repeatedly invoked and attempted to enforce Section 90(10) in the exact situations in which State Defendants (the only defendant group to make any arguments regarding the constitutionality of Section 90(10)) say the law does not apply. So, much like the above discussion regarding the publication of grievance complaints, the textualist analysis is irrelevant in the as-applied challenge. Even if the law, on its face, would allow the publication of the Johnson Letter and subsequent correspondence, here Section 90(10) is being used by government officials to stifle that speech.

Because no defendant attempted to explain why this limitation on speech was narrowly tailored to meet a compelling government interest, Defendants did not carry their burden of satisfying strict scrutiny. The only

---

[5] Despite this difference, the Court cites <u>Field Day</u> to highlight the distinction between facial and as-applied challenges to statutes.

government interests the Court is able to identify from the opposition papers are "broad-based privacy interests" that "require that these documents remain confidential and sealed from public disclosure." (State Opposition at 26.) State Defendants do not elaborate on that interest -- a far cry from the detailed interests that justified upholding the confidentiality of judicial misconduct proceedings in Kamasinski. See Kamasinski, 44 F.3d at 109-10. The Court also notes that the Second Circuit has specified that the interests in Kamasinski "inhere in the nature of judicial misconduct proceedings," and are thus not immediately applicable to attorney grievance proceedings. John Doe v. Mukasey, 549 F.2d 861, 877 (2d Cir 2008).

The Court recognizes that there may be valid and important, and perhaps even compelling, government interests in maintaining confidentiality in some aspects of attorney grievance proceedings. But even if Defendants had clearly articulated those interests, they did not make any showing that the application of Section 90(10) to block the publication of the correspondence at issue from government officials was narrowly tailored to achieve those interests. "A law is not narrowly tailored if a less restrictive alternative would serve the same interests." Open Soc'y Justice Initiative v. Trump, 510 F. Supp. 3d 198, 211

28

(S.D.N.Y. 2021) (citing <u>Playboy Entm't Grp.</u>, 529 U.S. at 813).
The Court need not craft a less restrictive alternative to
Section 90(10) because State Defendants' Opposition presents
one: the law bars only Grievance Committee members, staff,
and their agents from disclosing information related to
proceedings. Thus, the statute does not apply to complainants
or members of the general public.[6] (<u>See</u> State Opposition at
6.)

Looking only at the facts of the case before the Court,
government officials of the State and City of New York applied
Section 90(10) to prohibit Plaintiffs from sharing at least
one letter they received regarding their Grievance
Complaints. That action infringed on Plaintiffs' First
Amendment right to freedom of speech in the name of upholding
a governmental interest in keeping attorney discipline
proceedings confidential. But because less-restrictive
alternatives exist and Section 90(10), as it was applied to

---

[6] In perhaps their closest effort to identifying a compelling government
interest furthered by the application of Section 90(10), State
Defendants argue that eliminating the entire confidentiality provision
of Section 90(10) would put confidential information, such as witness
statements, financial records, privileged documents, and medical
information, at risk of disclosure. (<u>See</u> State Opposition at 26.) The
Court does not question the importance of the State's interest in keeping
such information confidential, but no such information was contained in
the documents for which Section 90(10)'s confidentiality provision was
invoked against Plaintiffs, rendering the concern inapplicable in the
as-applied challenge. Further, in a facial challenge to the statute,
this asserted interest raises serious doubts about whether the statute
is narrowly tailored, as Section 90(10) prohibits the disclosure of "all
papers, records and documents," not just those containing legitimately
confidential or sensitive information.

the facts of this case, is not narrowly tailored to a government interest in maintaining the confidentiality of attorney grievance proceedings, Plaintiffs' First Amendment right to publish the letters they received and similar correspondence not containing indisputably confidential or sensitive information outweighs the government's interest in confidentiality. This Court is unconvinced that the First Amendment allows the government to broadly prevent complainants, such as the Law Professors, from publicly sharing any and all correspondence, communication, or documents related to their own grievance complaints.

To the extent that Section 90(10) is being used to prohibit complainants from publicly sharing "papers, records and documents" related to that complainant's own grievance complaint related to attorney discipline, the law's confidentiality provision violates the First Amendment of the United States Constitution. Because Article I, Section 8 of the New York Constitution is even more protective of free speech, such applications of Section 90(10) also violate the New York State Constitution.

B.   Section 90(10)'s Constitutionality on its Face

Because the Court has found that the challenged statute is unconstitutional as it was applied to Plaintiffs' case, the Court declines to determine the constitutionality of the

statute on its face. See Kane, 19 F.4th at 174 (describing such decisions as a proper exercise of judicial restraint); United States v. Grace, 461 U.S. 171, 175 (1983) (noting the Court would only address whether a statute was unconstitutional under the facts of the case at hand despite a facial challenge to the statute). Accordingly, Plaintiffs' Motion for partial summary judgment is GRANTED in part and DENIED in part. The Motion is granted as to Plaintiffs' as-applied challenge to Section 90(10) as a violation the First Amendment of the United States Constitution and Article I, Section 8 of the New York State Constitution as-applied. The Motion is denied as to Plaintiffs' facial challenge to Section 90(10), as the Court finds it imprudent and unnecessary to the disposition of this case to determine the constitutionality of Section 90(10) in circumstances factually different from those at issue here.

## IV.   **MOTION TO DISMISS LEGAL STANDARD**

Having decided that Section 90(10) is unconstitutional as applied to the facts of this case, the Court now turns to the remaining issues raised by Defendants' motions to dismiss, beginning with the applicable legal standard. Unlike the above discussion regarding the motion for summary judgment, the Court's review of the motions to dismiss is limited to "facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." <u>Leonard F. v. Israel Disc. Bank of N.Y.</u>, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. <u>See</u> <u>id.</u> However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. The requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

## V.   <u>MOTION TO DISMISS DISCUSSION</u>

In <u>CRC II</u>, the Court reserved decision on two issues from City Defendants' Motion to Dismiss because both relied on a determination of the constitutional question regarding Section 90(10). First, City Defendants moved for dismissal under Rule 12(b)(6), arguing that Plaintiffs failed to state a claim for First Amendment retaliation. (<u>See</u> City Defendants' Motion to Dismiss at 2.) Second, City Defendants argue that, even if Plaintiffs did state a claim for relief, the Complaint should be dismissed because City Defendants are entitled to qualified immunity. (<u>See</u> City Defendants' Motion to Dismiss at 3 n.2.) Kearse joined the qualified immunity argument, and separately moved for dismissal for failure to state a claim. (<u>See</u> Kearse's Motion to Dismiss at 3–4.)

### A.   <u>FAILURE TO STATE A CLAIM</u>

City Defendants argue Plaintiffs failed to adequately allege that (1) their publication of the Grievance Complaints was protected speech; and (2) that City Defendants took adverse action against them. (<u>See</u> City Defendants' Motion to Dismiss at 2–3.) Both of these circumstances, along with a showing of a causal connection between the protected speech and the adverse action, are necessary elements of a First Amendment retaliation claim. <u>See</u> <u>Matthews v. City of New York</u>, 779 F.3d 167, 172 (2d Cir. 2015).

33

Plaintiffs' Complaint easily satisfies the first element. As the Court has explained above, Plaintiffs had a constitutionally protected right to publish their own Grievance Complaints. They were private individuals exercising their First Amendment right to free speech, and no statute or law validly prohibited that exercise of speech. The Complaint alleges Plaintiffs published the Grievance Complaints, or, in other words, that they engaged in protected speech. That allegation is sufficient to satisfy Plaintiffs' burden on a motion to dismiss.

As for the second element, not every negative governmental disciplinary or retaliatory measure constitutes an adverse action, as the burden imposed by some retaliatory acts may be minimal. An "adverse action" in First Amendment retaliation cases is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." United States v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 365, 410 (S.D.N.Y. 2018) (quoting Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006)). The Second Circuit has highlighted that the question of whether retaliatory conduct amounts to an adverse action is a context-specific inquiry that "must be tailored to the different circumstances in which retaliation claims arise." Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001) (internal

quotations omitted), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). For example, certain groups, like public employees, "may be required to tolerate more than average citizens" in deciding whether a retaliatory act is adverse. Id.

The alleged retaliatory acts here entail (1) City Defendants sending letters to the Grievance Committee stating that Plaintiffs were violating Section 90(10) and, allegedly, threatening Plaintiffs; and (2) Kearse and the Grievance Committee removing Plaintiffs as grievance complainants and denying them the benefits accorded to individuals who file attorney grievance complaints. (See Complaint ¶¶ 55-75.) The Court finds that these alleged retaliatory acts constitute adverse actions sufficient to support a claim for First Amendment retaliation. The Court is persuaded that individuals of ordinary firmness would be deterred from exercising their constitutional right to publish their own grievance complaints if they knew that exercise could result in losing their status as complainants or being charged with violating the law and potentially being subjected to consequential legal proceedings. The Court is persuaded that attorneys of ordinary firmness would be deterred from publishing grievance complaints if they knew that publication would lead to a government official informing the Grievance

Committee that they were violating New York law, possibly risking their status as attorneys in good standing.

The Court finds that Plaintiffs have adequately alleged that they engaged in constitutionally protected speech and that they were subjected to adverse action as a result of engaging in that speech. Because Defendants do not challenge Plaintiffs' satisfaction of the third element of a prima facie case of First Amendment retaliation, the Court finds Plaintiffs have stated a claim for relief. City Defendants' motion to dismiss for failure to state a claim is denied.

Kearse moved the Court to dismiss the Complaint for failure to state a claim, arguing that Plaintiffs failed to show she violated their First Amendment rights because the Complaint states Defendants "engag[ed] in an ongoing effort to harass, threaten, and punish" Plaintiffs and "neither of Kearse's two letters to Plaintiffs did anything of the sort." (Kearse's Motion to Dismiss at 3-4.) Kearse's argument is premised entirely on a question of fact that the Court is unable to resolve at this stage in the proceeding. The Court has already determined, above, that Plaintiffs adequately alleged they were subjected to adverse actions in retaliation for their exercise of their First Amendment rights. A motion to dismiss pursuant to Rule 12(b)(6) is not the proper occasion for the Court to weigh differing interpretations of

an exhibit to the Complaint, as the Court, in evaluating Rule 12(b)(6) motions is bound to "accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." Ebomwonyi v. Sea Shipping Line, 473 F. Supp. 3d 338, 344 (S.D.N.Y. 2020). Kearse's motion to dismiss for failure to state a claim is also denied.

B.    QUALIFIED IMMUNITY

The last argument City Defendants, joined by Kearse, present is that the Complaint should be dismissed because, even if their actions constituted a constitutional violation, they are entitled to qualified immunity.[7] The Court finds this argument unpersuasive.

Government officers acting under the color of state law are entitled to qualified immunity for actions taken in the course of performing official duties if they did not violate a clearly established constitutional or statutory right, meaning that a reasonable public officer would not have known that, at the time of the offending action, such conduct constituted a violation of law by depriving an individual of a clearly established statutory or constitutional right. See White v. Pauly, 137 S. Ct. 548, 551 (2017). The Supreme Court

---

[7] The Court notes that Defendants assert a qualified immunity defense only over Plaintiffs' First Amendment retaliation claim.

"does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7–8 (2021) (quoting White, 137 S. Ct. at 551).

As the Court recounted above, the Second Circuit, in 1994, noted that "[w]hether the state may prohibit the disclosure of the substance of an individual's complaint or testimony merits little discussion. Penalizing an individual for publicly disclosing complaints about the conduct of a government official strikes at the heart of the First Amendment, and we agree . . . that such a prohibition would be unconstitutional." Kamasinski, 44 F.3d at 110. That statement constitutes an unequivocal declaration that there is little merit in the argument that a state may prevent individuals who file attorney grievance complaints from publicly disclosing such complaints.

In 2021, when the events giving rise to the Complaint occurred, a reasonable government officer should have been aware that punishing private individuals for publishing their own grievance complaints runs afoul of the First Amendment. It is especially true that three high-ranking legal officers of the State and City of New York -- the Corporation Counsel, the Queens County District Attorney, and the Chief Counsel to

38

the Grievance Committee -- would have known that, under the First Amendment, attorney grievance complainants are free to publicly publish their own complaints. The First Amendment and applicable doctrine under <u>Kamasinski</u> clearly established that right. Thus, Defendants are not entitled to qualified immunity for the adverse actions at issue here. City Defendants' and Kearse's Motions to Dismiss Plaintiffs' complaint on this basis are denied.

### VI.   <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion so-deemed by the Court (Dkt. No. 35) filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to dismiss the complaint ("Complaint," Dkt. No. 59) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murphy, Abbe Smith, and Steven Zeidman ("Plaintiffs") is **DENIED;** and it is further

**ORDERED** that the motion so-deemed by the Court (Dkt. No. 47) filed by Defendant Diana Maxfield Kearse ("Kearse") to dismiss Plaintiffs' Complaint is **DENIED;** and it is further

**ORDERED** that the motion filed by Plaintiffs for partial summary judgment (Dkt. No. 63) is **GRANTED IN PART.** The motion is granted insofar as it seeks summary judgment on Plaintiffs' as-applied constitutional challenge.

Defendants are hereby **ORDERED** to file their answer to the remaining claims brought in the Complaint within twenty-one days of the date of this Order.

**SO ORDERED.**

Dated: New York, New York
      13 June 2022

                                 Victor Marrero
                                  U.S.D.J.