UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL RIGHTS CORPS, et al.,

     Plaintiffs,

 v.

STEVEN STEIN CUSHMAN, Corporation
Counsel of the City of New York, et al.,

     Defendants.

No. 21-cv-9128 (VM) (VF)

**STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF
JUSTICE LASALLE'S CROSS-MOTION
FOR SUMMARY JUDGMENT ON THE
FOURTH CLAIM**

Pursuant to Rule 56.1 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, Defendant Hector D. LaSalle, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York ("Justice LaSalle"), respectfully submits this statement of undisputed material facts in support of his cross-motion for summary judgment on the fourth claim.

 **A. The Legislative Origins Of The Appellate Division's Control Over Licensing**

1. In 1895, after the New York State Constitution of 1894 created those intermediate courts, the Legislature delegated to the Appellate Divisions exclusive control over the admission and discipline of attorneys. Declaration of Joya C. Sonnenfeldt, dated October 4, 2023 ("Sonnenfeldt Decl."), ¶¶ 3, 4, Ex. A at 799-801.

2. Prior to 1895, the general term of the supreme court regulated attorney admission and discipline. Sonnenfeldt Decl., Ex. B at 28.

3. In 1945, the Legislature consolidated at Section 90 of the Judiciary Law the various provisions relating to attorney admission and discipline. Sonnenfeldt Decl., ¶¶ 6-7, Exs. C at 3-4, D at 38-39, 190-92.

1

4.      Since 2009, the current Rules of Professional Conduct have been "the primary standard for measuring attorney misconduct and have been adopted by each of the Appellate Divisions." Sonnenfeldt Decl., Ex. E at 2DDEPT000256. These rules set standards for attorneys regarding, *inter alia*, their duty of candor; the fees they can charge for their services; communication with clients, adversaries, and third parties; confidentiality; conflicts of interest; fiduciary obligations; and recordkeeping. *Id.* at 2DDEPT000256-65, 2DDEPT000268-82; *see* 22 N.Y.C.R.R. § 1200.

5.      Each of the four Appellate Divisions developed their own rules and processes for attorney discipline. Sonnenfeldt Decl., Ex. F at 2DDEPT000169-73; *see* 22 N.Y.C.R.R. part 605 (1st Dep't); 22 N.Y.C.R.R. part 691 (2d Dep't); 22 N.Y.C.R.R. part 806.3 (3d Dep't); 22 N.Y.C.R.R. part 1020 (4th Dep't).

6.      "In March 2015, Chief Judge Jonathan Lippman created the Commission on Statewide Attorney Discipline to conduct a comprehensive review of New York's attorney disciplinary system." Sonnenfeldt Decl., Ex. F at 2DDEPT000164. The "Lippman Commission" published its report in September 2015. *Id.* at 2DDEPT000153.

7.      The "highest priority" recommendation of the Lippman Commission was adoption "of statewide uniform rules and procedures governing the processing of disciplinary matters at both the investigatory and adjudicatory levels, from intake through final disposition, which strike the necessary balance between facilitating prompt resolution of complaints and affording the attorney an opportunity to fairly defend the allegations." *Id.* at 2DDEPT000210; Sonnenfeldt Decl., Ex. G.

8.    In 2016, the four Appellate Divisions jointly adopted the statewide Rules for Attorney Disciplinary Matters at 22 N.Y.C.R.R. part 1240 ("Statewide Rules"). Sonnenfeldt Decl., ¶ 10, Ex. G.

9.    The Statewide Rules "harmonized" the disciplinary process by creating a "uniform approach" across the four departments. *Id.*, Ex. G.

10.    After the issuance of the Statewide Rules, then-Presiding Justice Alan D. Scheinkman updated the manual that had been originally commissioned in the early 2000s by then-Presiding Justice A. Gail Prudenti to ensure coordination among the Second Department's three Committees ("Manual"), using standardized workflows, documentation, and forms. Sheridan Decl., ¶ 3; Sonnenfeldt Decl., Ex. H at 2DDEPT000004; Sonnenfeldt Decl., Ex. J at 15:16-17.

11.    As relevant to the issues raised by the Fourth Claim, the Manual remains in effect under Justice LaSalle. Declaration of Presiding Justice Hector D. LaSalle, dated September 28, 2023 ("LaSalle Decl."), ¶ 3; *see* Declaration of Catherine A. Sheridan, dated September 27, 2023 ("Sheridan Decl."), ¶ 6; Sonnenfeldt Decl., Ex. J at 15:16-17.

**B.    The Appellate Divisions Control Access To Information About Individual Attorney Licenses And Allows For Disclosure Upon Good Cause Shown**

12.    In 1945, the Legislature adopted the current confidentiality policy in Section 90(10). Adopted as subdivision 8 in L.1945, c.675; renumbered subdivision 10 by L. 1946, c. 241, § 2. Sonnenfeldt Decl., ¶ 12, Ex. I at pp. 1456-57; *see also* Pls. Ex. 19 at 4-5 of 50.

13.    A respondent attorney can waive confidentiality as to their own disciplinary proceedings or history. Joseph Decl., ¶ 10; *see Matter of Capoccia*, 59 N.Y.2d 549, 554 (1983).

14.    Absent an order by the Second Department, the Chief Attorney and their staff, and Committee members lack the authority to disclose any information or records related to disciplinary investigations or proceedings, except for when Committees confer with each other in

the furtherance of an investigation. Declaration of Andrea E. Bonina, dated September 19, 2023 ("Bonina Decl."), ¶ 23; Declaration of Darrell M. Joseph, dated September 26, 2023 ("Joseph Decl."), ¶¶ 7-9, Ex. A; Declaration of Diana Maxfield Kearse, dated August 31, 2023 ("Kearse Decl."), ¶ 5; Sheridan Decl., ¶¶ 36, 40; Sonnenfeldt Decl., Ex. J at 49:20-21.

15.     The Clerk of the Court for the Second Department is only authorized to disclose by letter to an attorney their own current registration status and a list reflecting any disciplinary history or lack thereof. Joseph Decl., ¶ 10.

16.     Within the Second Department, the "Attorney Matters" personnel handle all other requests for information and records regarding attorney misconduct. Joseph Decl., ¶ 11. If charges have been sustained and the attorney has been publicly disciplined, Attorney Matters inquires what document is being sought and then identifies any costs for production. *Id.* After payment, Attorney Matters sends the requested document(s). *Id.*

17.     Applications for disclosure of materials Section 90(10) deems confidential—"Good Cause Applications"—are made to the Appellate Division and must specify the nature and scope of the inquiry or investigation for which disclosure is sought; the papers, records or documents sought to be disclosed, or the proceedings that are sought to be opened; and why any other methods for obtaining the requested information are unavailable or impractical. Joseph Decl., ¶¶ 11-13; Sheridan Decl., ¶ 38; *see* 22 N.Y.C.R.R. § 1240.18.(d).

18.     The Presiding Justice can require that Good Cause Applications be made upon notice to certain parties. 22 N.Y.C.R.R. § 1240.18.(d); *see* LaSalle Decl., ¶¶ 9-10. When notice is directed, the notified parties are provided an opportunity to respond to the Good Cause Application. Joseph Decl., ¶ 15; Kearse Decl., ¶ 8; LaSalle Decl., ¶ 10; Sheridan Decl., ¶ 39.

19.     Good Cause Applications by members of the public—as opposed to government law enforcement or disciplinary agencies—are typically made upon notice to the respondent attorney and the relevant Committee. Joseph Decl., ¶ 15; *see* Kearse Decl. ¶ 8; Sheridan Decl., ¶ 39.

**C.  Appellate Divisions Authorize Committees To Investigate Attorney Misconduct**

20.     The Presiding Justice selects and appoints Committee members for their subject matter expertise and reputations for fairness and ethics to ensure that the Committee understands the norms and expectations of law practice. Bonina Decl., ¶¶ 5, 8; LaSalle Decl., ¶ 4-5. New Committee members receive instruction on the standards governing attorney conduct and the disciplinary process including actions authorized to be taken by the Committee and matters warranting Appellate Division action. Bonina Decl., ¶ 7.

21.     The Presiding Justice also appoints the Chief Attorney. LaSalle Decl., ¶ 4.

22.     The Presiding Justice is not involved in investigation or disposition of matters before the Committee and does not confer with Chief Attorneys or Committee members during the investigations or about the disposition of specific allegations of misconduct. LaSalle Decl., ¶¶ 6-7.

23.     The Clerk's Office does not process complaints submitted to the Committee and does not assign a court docket number unless and until a party files a motion, petition, or application requesting action by the Department. Joseph Decl., ¶ 6.

24.     Any individual—including those without personal knowledge of or a personal connection to the misconduct alleged—can submit allegations of attorney misconduct to a Committee. Sheridan Decl., ¶ 8; *see* Sonnenfeldt Decl., Ex. H at 2DDEPT000016-17.

25.     Pursuant to the Manual, individuals who submit allegations to a Committee about which they have no personal knowledge are not considered "complainants" as defined by the

Statewide Rules. Sonnenfeldt Decl., Ex. H at 2DDEPT000016-17. Those individuals receive a form letter acknowledging their submission and informing them that they will not receive any further information about the processing of the allegations by the Committee. Sheridan Decl., ¶ 14; Sonnenfeldt Decl., Ex. H at 2DDEPT000082; *see* Compl. Ex. 2; Declaration of Diana Maxfield Kearse, dated March 31, 2022 ("Kearse 2022 Decl." (ECF No. 83)), ¶ 4; Pls. Ex. 3.

26.    Complaints are typically filed by a client or former client against his, her, or their attorney and contain sensitive personal and/or attorney-client privileged information. Sheridan Decl., ¶¶ 10, 12-13; Sonnenfeldt Decl., Ex. E at 2DDEPT000286.

27.    Websites hosted by the Appellate Divisions inform the public of the applicable confidentiality policies; encourage potential complainants to reach out to respondents to try to work out a solution outside the disciplinary process; warn individuals who have been injured by attorney misconduct of the potential need to protect their rights separate from the disciplinary process; and emphasize that the Committee cannot provide legal advice, sue an attorney on behalf of a client, or compel an attorney to return money or property. Sonnenfeldt Decl., Exs. K-N; *see* Sheridan Decl., ¶ 7.

28.    The Committee and any investigation conducted under its aegis does not place any restrictions on an individual's ability to discuss or publish a complaint they submit to a Committee or limit contact with a respondent attorney. Kearse 2022 Decl. ¶ 7; Sheridan Decl., ¶ 37.

29.    The submission of a complaint to a Committee does not bar the complainant from taking legal action to protect their rights against a respondent attorney. Sheridan Decl., ¶ 11; *see* Bonina Decl., ¶ 24.

30.     Committees are empowered to authorize "*sua sponte*" investigations where the Committee becomes aware of potential misconduct. *Id.* at § 1240.7(a)(1); Bonina Decl., ¶ 11; Sheridan Decl., ¶ 9.

31.     In seeking admission to the Second Department, applicants participate in an orientation program that explains the rules of professional conduct, describes the disciplinary process, and specifies that disciplinary investigations and proceedings are confidential under Section 90(10) unless or until the Appellate Division sustains charges or otherwise issues a disclosure order. Sonnenfeldt Decl., Ex. E at 2DDEPT000290.

32.     When the Committee receives a complaint, administrative staff assign a file number, access the respondent attorney's registration information, and ascertain any disciplinary history within the Committee. Sheridan Decl., ¶ 16; Sonnenfeldt Decl., Ex. J at 9:2-11, 11:11-12.

33.     Chief Attorneys and their staff conduct an initial screening of all complaints received. Sheridan Decl., ¶¶ 15-17; Sonnenfeldt Decl., Ex. J at 9:13-14; Sonnenfeldt Decl., Ex. E at 2DDEPT000286; *see* Bonina Decl., ¶ 10. If the threshold conditions of jurisdiction (*i.e.* allegations of misconduct against a New York attorney) and venue (*i.e.* that the current principal office of the respondent is within the geographic boundary of the Committee) are met (*see* Sonnenfeldt Decl., Ex. E at 2DDEPT000285), a staff attorney reviews the substance of the complaint and recommends to the Chief Attorney whether an investigation should be opened. Sheridan Decl., ¶ 17; Sonnenfeldt Decl., Ex. J at 9:20-23, 17:11-15.

34.     The Chief Attorney can decline to investigate a matter if (a) it involves a person or conduct not covered by the Statewide Rules; (b) the allegations, if true, would not constitute professional misconduct; (c) the complaint seeks a legal remedy more appropriately obtained in another forum; or (d) the allegations are intertwined with another pending legal action or

proceeding. Sheridan Decl. ¶¶ 18-21; Sonnenfeldt Decl., Ex. J at 17:19-22, 20:5-10; *see* 22 N.Y.C.R.R. § 1240.7(d)(1)(i).

35.    The Chief Attorney can also refer the complaint to another forum when allegations involve fee disputes, matters suitable for mediation, and matters suitable for review by a bar association grievance committee. Sheridan Decl. ¶ 19; Sonnenfeldt Decl., Ex. E at 2DDEPT000286; *see* 22 N.Y.C.R.R. § 1240.7(d)(1)(ii). Referral to a bar association grievance committee may be appropriate for allegations of "minor" misconduct or a "civility" complaint. Sheridan Decl., ¶ 19.

36.    If the Chief Attorney opens an investigation, the complainant is notified, and the respondent is requested to respond in writing. Sheridan Decl., ¶¶ 22-23. A respondent's failure to cooperate with an investigation or proceeding can result in the Committee moving for interim suspension. Sheridan Decl., ¶¶ 24, 35; *see* 22 N.Y.C.R.R. § 1240.9. During an investigation, complainants and respondents often share private and sensitive information including about the respondent attorney's representation of a client and medical issues or family matters that may have contributed to the alleged misconduct or might mitigate the severity of discipline warranted. Sheridan Decl., ¶¶ 10, 23.

37.    The Statewide Rules authorize the Chief Attorney and staff to interview witnesses, obtain records, direct the respondent attorney to appear and/or produce records, and request issuance of subpoenas. Sheridan Decl., ¶ 25; Sonnenfeldt Decl., Ex. J at 43-44; *see* 22 N.Y.C.R.R. § 1240.7(b).

38.    The Chief Attorney can request that the Clerk's Office issue a subpoena during a Committee investigation. Other than that task, and disclosure requests, *supra* ¶ 17, there is no other involvement by the Clerk's Office in Committee investigations and dispositions. Joseph Decl., ¶ 6.

39.     Committee investigations are not docketed with the Clerk's Office. Joseph Decl., ¶ 6.

40.     Investigations culminate in a written report with recommendations, which staff attorneys present during Committee meetings. Sonnenfeldt Decl., Ex. E at 2DDEPT000287; Bonina Decl., ¶ 12; Sheridan Decl., ¶ 26; Sonnenfeldt Decl., Ex. J at 47-48, 50-52.

41.     These written reports remain internal to the Committee and are not shared with the respondent, complainant, or the Second Department in the event that the Committee authorizes the filing of a petition. Sheridan Decl., ¶ 26; Sonnenfeldt Decl., Ex. E at 2DDEPT000287; Sonnenfeldt Decl., Ex. J at 52:15.

42.     Once questions are answered and any additional materials the Committee may request are collected, the Committee deliberates as a body. Bonina Decl., ¶ 13; Sheridan Decl., ¶¶ 27-28; Sonnenfeldt Decl., Ex. E at 2DDEPT000287; *see* Sonnenfeldt Decl., Ex. J at 53-54.

43.     The overarching charge of the Committee is to determine whether the high standards of the profession can be maintained by privately warning or admonishing a respondent attorney or whether the attorney's conduct warrants a formal proceeding for public discipline by the Appellate Division. Sonnenfeldt Decl., Ex. K at 2DDEPT000296; *id.*, Ex. L at 2DDEPT000305; *id.*, Ex. N at 2DDEPT000312; *see* Bonina Decl., ¶¶ 6-7, 16-19.

44.     The Committee has no power under Section 90 to impose any public discipline such as suspending or disbarring an attorney. Bonina Decl., ¶ 20.

45.     The Committee can dispose of a matter by: (1) dismissing a complaint, (2) referring the matter to a suitable alternative forum, (3) issuing a Letter of Advisement to the respondent, or (4) issuing an Admonition to the respondent. Bonina Decl., ¶¶ 9, 14-19; Sheridan Decl., ¶ 30; Sonnenfeldt Decl., Ex. J at 54:4-5, 7-8; *see* 22 N.Y.C.R.R. § 1240.7(d)(2).

### D. The Appellate Division Only Handles Certain Proceedings

46.    When the Clerk's Office receives a petition, motion, or application for Appellate Division action on an attorney's license, it assigns a docket number. Joseph Decl., ¶ 4. Under certain circumstances, a respondent attorney files a petition regarding their own license. *See id.*

47.    Under the Statewide Rules, the Chief Attorney, when authorized by the Committee members, prosecutes formal misconduct proceedings before the Appellate Division. Bonina Decl., ¶¶ 21-22; Sheridan Decl., ¶¶ 4, 33; *see* 22 N.Y.C.R.R. §§ 1240.7(d)(2)(vi), 1240.8.

48.    From 1921 to 1945, the Legislature authorized the Appellate Division to designate either a local district attorney or an attorney designated by a local bar association to "prosecute" cases for the removal or suspension of attorneys. Sonnenfeldt Decl., Ex. O at 1017-18. From 1896 to 1921, the Legislature authorized the Appellate Divisions to designate local district attorneys to "prosecute" cases for suspension and removal. Sonnenfeldt Decl., Ex. B at 28.

49.    Formal proceedings may be initiated where, for example, there is an ongoing history of similar misconduct, there has been misappropriation of client or third-party funds or other violation of Rule 1.15 of the Rules of Professional Conduct, the respondent attorney refuses to cooperate with an investigation, or the behavior in the complaint raises a concern that the respondent is a danger to the public. Bonina Decl., ¶ 19.

50.    If a Committee authorizes a formal disciplinary proceeding under Section 1240.8, a Staff Attorney, under the supervision of the Chief Counsel, drafts, files, and serves on the respondent attorney a petition and notice of petition. Sheridan Decl., ¶ 32; *see* 22 N.Y.C.R.R. § 1240.8(a)(1).

51.    The Committee is the "petitioner" in the proceeding before the Appellate Division. Sheridan Decl., ¶ 32; Sonnenfeldt Decl., Ex. E at 2DDEPT000288; *see* Jud. L. §§ 90(6), (8).

10

52.    Where there is evidence of a respondent attorney's failure to preserve client or third-party funds, the Manual requires referral to the Appellate Division even where mitigating circumstances may have been raised. Joseph Decl., ¶ 5; Sheridan Decl., ¶ 29; *see* Bonina Decl., ¶ 19. The Committee may either commence a formal disciplinary proceeding under Section 1240.8 or submit a request to the Appellate Division for a court-approved Committee disposition. Joseph Decl., ¶ 5; Sheridan Decl., ¶ 29.

53.    The Appellate Division also adjudicates Good Cause Applications under Section 1240.18(d). Joseph Decl., ¶¶12-15; Sheridan Decl., ¶ 39; *see* 22 N.Y.C.R.R. § 1240.18(d).

### E.    Participation Rights and Obligations During the Disciplinary Process

54.    A complainant's role in the investigation and prosecution of alleged misconduct is at the discretion of the Committee, whose staff may request them to provide a written reply to a respondent attorney's written response to a complaint or to call the complainant as a witness in the Committee's investigation or during subsequent formal proceedings. *See* Sheridan Decl., ¶ 25; Sonnenfeldt Decl., Ex. J at 78-79; *see id.* at 31-32, 43, 60-61, 68, 74.

55.    "Should the complainant request that the complaint be withdrawn or otherwise refuse to cooperate further, it does not constitute a bar to further investigation or disposition of the complaint." Sonnenfeldt Decl., Ex. E at 2DDEPT000286.

56.    A complainant can request reconsideration by the Committee Chair of a decision by the Chief Attorney dismissing or declining to investigate a complaint or by the Committee dismissing a complaint. *Id.* at 2DDEPT000288; *see* 22 N.Y.C.R.R. § 1240.7(e)(3).

57.    Respondent attorneys have a duty to promptly and truthfully respond to Committee requests and disciplinary proceedings. Sonnenfeldt Decl., Ex. E at 2DDEPT000287; *see* Bonina Decl., ¶ 19; Sheridan Decl., ¶ 24.

58.     When a respondent attorney receives a Letter of Advisement or Admonition, the complainant is notified of the fact of the Committee's disposition but does not receive the Letter of Advisement or Admonition that is provided to the respondent attorney containing the details of the investigation and the Committee's determinations. Sheridan Decl., ¶¶ 30-31; Sonnenfeldt Decl., Ex. J at 55:24-25, 67:10, 68:9, 73:18-25, 74:4-10. Letters of Advisement and Admonition often contain otherwise privileged or sensitive information about the attorney-client relationship and the respondent attorney. Kearse Decl. ¶ 7; Sheridan Decl., ¶ 30.

59.     If a respondent attorney seeks review or reconsideration of a Letter of Advisement or Admonition, the respondent's application is not made upon notice to the complainant, nor is the complainant permitted to be heard. Sonnenfeldt Decl., Ex. J at 60, 67; *see* 1240.7(e) (1)-(2) (describing respondent's rights of review which must be made upon notice to the Committee without mention of the complainant).

### F. <u>Plaintiffs Never Requested That The Second Department Disclose Records Or Proceedings Related To the Prosecutor Complaints</u>

60.     On June 11, 2021, Ms. Kearse acknowledged receipt of the Prosecutor Complaints and noted that any resulting investigations would "remain confidential pursuant to New York State Judiciary Law §90." Compl. Ex. 2 ("Standing Policy Letter"); *see* Kearse Decl., ¶ 4. The Standing Policy Letter noted that where allegations of misconduct are based on public sources, any investigation thereof is treated as if the Committee initiated it *sua sponte*. Compl. Ex. 2.

61.     On June 22, 2021, Gregory Diskant wrote to Ms. Kearse. That letter did not request the Committee disclose any confidential records about the respondent attorneys identified in the Prosecutor Complaints. Compl. Ex. 3 at 5, 6; *see* Kearse Decl., ¶ 4.

62.    On June 30, 2021, Mr. Diskant wrote to Ms. Kearse. Compl. Ex. 6; *see* Kearse Decl., ¶ 4. That letter did not request any confidential records or seek any information about Good Cause Applications. *See* Compl. Ex. 6.

63.    On July 26, 2021, Ms. Kearse informed Mr. Diskant that "all complaints filed with this Committee, whether opened *sua sponte* or not, are thoroughly and carefully evaluated on their own merit." Compl. Ex. 7; *see* Kearse Decl., ¶ 4.

64.    At no point have Plaintiffs filed a Good Cause Application relating to the Prosecutor Complaints with the Second Department. Joseph Decl., ¶ 16; Kearse Decl., ¶ 9; LaSalle Decl., ¶ 11.

65.    In or around May 2023, Plaintiffs submitted a written request to the Second Department to access records related to the suspension of former prosecutor Glen Kurtzrock. Joseph Decl., ¶ 17; Declaration of Andrew H. Wells, Jr., ECF No. 176-21.

66.    In 2022 and 2023, Plaintiffs filed approximately thirty additional grievance complaints alleging misconduct by current and former New York prosecutors. *See* https://accountabilityny.org/.

Dated:  New York, New York
        October 6, 2023

LETITIA JAMES
Attorney General
State of New York

*Elizabeth A. Figueira*

ELIZABETH ANNE FIGUEIRA
JOYA C. SONNENFELDT
Assistant Attorneys General
28 Liberty Street, 16th Floor
New York, New York 10005
Tel: (212) 416-8528
elizabeth.figueira@ag.ny.gov
joya.sonnenfeldt@ag.ny.gov
*Attorneys for Justice LaSalle*

13