**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, AND STEVEN ZEIDMAN,<br><br>                                    Plaintiffs,<br><br>v.<br><br>STEVEN STEIN CUSHMAN, Corporation Counsel of the City of New York, in his official capacity; GEORGIA PESTANA, Former Corporation Counsel of the City of New York, in her personal capacity; MELINDA KATZ, the District Attorney for Queens County, in her official and personal capacity; HECTOR D. LASALLE, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity,<br><br>                                    Defendants. | Case No. 1:21-cv-09128 (VM)<br><br>Hon. Victor Marrero<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO STATE DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT ON
THE FOURTH CLAIM FOR RELIEF**

# TABLE OF CONTENTS

Page

STATEMENT OF UNDISPUTED FACTS ..................................................................2

ARGUMENT ............................................................................................................2

I.    Plaintiffs Have Standing To Bring A Claim Against State Defendant ...............................2

Ii.   Justice Lasalle Is Not Immune From Suit ..........................................................................5

Iii.  There Is No Reason For The Court To Abstain From Judgment .......................................9

    A.    Plaintiffs' Claim Is Not Barred Under *Rooker-Feldman* ...........................................9

    B.    *O'Shea* Abstention Is Not Warranted .................................................................10

    C.    The *Younger* Abstention Doctrine Does Not Apply ............................................11

    D.    This Case Is Ripe For Decision ...........................................................................12

IV.   The First Amendment Right Of Access Applies To The Decisions Of The Grievance Committee And Trials In The Appellate Division ...........................................13

    A.    Disciplinary Proceedings In The Grievance Committee And The Appellate Division Are Judicial Proceedings To Which The Right Of Access Attaches ....................................................................................................13

    B.    In Any Event, There Is A Presumptive Right Of Public Access To Attorney Disciplinary Proceedings And Records ................................................17

        1.    The Historical Tradition Of Openness In Attorney Disciplinary Proceedings ...........................................................................................17

        2.    Public Access Would Play A Significant Positive Role In Attorney Discipline .............................................................................................21

    C.    Judiciary Law 90(10) Is Not Narrowly Tailored to Support a Compelling State Interest .....................................................................................................22

        1.    No Compelling State Interest Supports Section 90(10) ............................22

        2.    Section 90(10) Is Not Narrowly Tailored .................................................24

CONCLUSION .....................................................................................................25

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Lab. v. Gardner*,
    387 U.S. 136 (1967)................................................................................................12

*ABC, Inc. v. Stewart*,
    360 F.3d 90 (2d Cir. 2004)....................................................................................24

*Almonte v. City of Long Beach*,
    478 F.3d 100 (2d Cir. 2007)....................................................................................9

*Anonymous v. Ass'n of the Bar of City of N.Y.*,
    515 F.2d 427 (2d Cir. 1975)............................................................................14, 19

*In re Aretakis*,
    16 A.D.3d 899 (N.Y. App. Div. 2005) ..............................................................4, 23

*Ashcroft v. American Civil Liberties Union*,
    542 U.S. 656 (2004)................................................................................................25

*In re Att'y Disciplinary Appeal*,
    650 F.3d 202 (2d Cir. 2011)....................................................................................5

*Bennett v. Saunders*,
    No. 99-CV-0854, 1999 WL 529539 (S.D.N.Y. July 23, 1999) ...............................4

*Brown v. City of N.Y.*,
    210 F. Supp. 2d 235 (S.D.N.Y. 1999).....................................................................8

*Brown v. Entm't. Merchs. Ass'n*,
    564 U.S. 786 (2011)................................................................................................22

*Brown v. N.Y.*,
    975 F. Supp. 2d 209 (N.D.N.Y. 2013).....................................................................7

*Burson v. Freeman*,
    504 U.S. 191 (1992)................................................................................................22

*Cal-Almond, Inc. v. U.S. Dep't of Agric.*,
    960 F.2d 105 (9th Cir. 1992) ................................................................................19

*In re Capoccia*,
    59 N.Y.2d 549 (1983) .........................................................................................4, 22

*Chester Bross Const. Co. v. Schneider*,
    886 F. Supp. 2d 896 (C.D. Ill. 2012) ......................................................................7

*Consol. Edison Co. v. Public Serv. Comm'n*,
    447 U.S. 530 (1980)................................................................22

*Courthouse News Service v. Gilmer*,
    48 F.4th 908 (8th Cir. 2022) ....................................................8

*CSX Transp., Inc. v. N.Y.S. Office of Real Prop. Servs.*,
    306 F.3d 87 (2d Cir. 2002).....................................................6, 7

*Ctr. for Bio-Ethical Reform, Inc. v. Black*,
    234 F. Supp. 3d 423 (W.D.N.Y. 2017) .......................................3

*In re Demetriades*,
    58 F.4th 37 (2d Cir. 2023) ......................................................23

*Doe v. Rosenberry*,
    255 F.2d 118 (2d Cir. 1958).....................................................13

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
    282 F.3d 83 (2d Cir. 2002).......................................................12

*El Vocero de Puerto Rico v. Puerto Rico*,
    508 U.S. 147 (1993).................................................................19

*Erdmann v. Stevens*,
    458 F.2d 1205 (2d Cir. 1972)...................................................14

*First Amendment Coalition v. Judicial Inquiry and Review Board*,
    784 F.2d 467 (3d Cir. 1986).....................................................20

*In re Gitto Global Corp.*,
    No. 05-CV-10334, 2005 WL 1027348 (D. Mass. May 2, 2005)............23

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*,
    457 U.S. 596 (1982)...............................................................1, 17

*Guitard v. United States Sec'y of the Navy*,
    967 F.2d 737 (2d Cir. 1992)......................................................4

*Hawaii Hous. Auth. v. Midkiff*,
    467 U.S. 229 (1984).................................................................11

*J.P. v. Chassin*,
    189 A.D.2d 137 (2d Dep't 1993)...............................................20

*Jackson v. N.Y.S.*,
    523 Fed. App'x 67 (2d Cir. 2013)..............................................12

*Johnson Newspaper Corp. v. Melino*,
564 N.E.2d 1046 (N.Y. 1990) ..................................................................................20

*Karlin v. Culkin*,
162 N.E. 487 (N.Y. 1928) ...............................................................................17, 18

*In re Kurtzrock*,
192 A.D.3d 197 (N.Y. App. Div. 2020) ...................................................................4, 12

*Landmark Commc'ns, Inc. v. Virginia*,
435 U.S. 829 (1978) ..................................................................................23

*In re Levy*,
37 N.Y.2d 279 (1975) ..................................................................................21

*Linda R.S. v. Richard D.*,
410 U.S. 614 (1973) ..................................................................................5

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ..................................................................................10

*Marchi v. Bd. of Coop. Educ. Services*,
173 F.3d 469 (2d Cir.1999) ..................................................................................12

*Marshall v. Switzer*,
900 F. Supp. 604 (N.D.N.Y. 1995) ..................................................................................6

*Morris v. Lindau*,
196 F.3d 102 (2d Cir. 1999) ..................................................................................9

*Mosby v. Ligon*,
418 F.3d 927 (8th Cir. 2005) ..................................................................................14

*N.Y. Youth Club v. Town of Harrison*,
150 F. Supp. 3d 264 (S.D.N.Y. 2015) ..................................................................................2

*New York City Liberties Union v. New York City Transit Authority*,
675 F. Supp. 2d 411 (S.D.N.Y. 2009) ..................................................................................3, 5

*New York City Liberties Union v. New York City Transit Authority*,
684 F.3d 286 (2d Cir. 2012) .................................................................................. passim

*In re New York News, Inc.*,
113 A.D.2d 92 (N.Y. App. Div. 1985) ..................................................................................4

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ..................................................................................10

*Olma v. Collins*,
    499 F. App'x 98 (2d Cir. 2012) ..................................................................................9

*Patsy v. Bd. of Regents*,
    457 U.S. 496 (1982)........................................................................................4, 11

*Press-Enterprise Co. v. Superior Court*,
    464 U.S. 501 (1984)..............................................................................17, 21, 24

*Press-Enterprise Co. v. Superior Court*,
    478 U.S. 1 (1986)................................................................................... passim

*Richmond Newspapers, Inc. v. Va.*,
    448 U.S. 555 (1980)................................................................................. passim

*In re Rodeman*,
    883 N.Y.S.2d 835 (N.Y. App. Div. 2009) ..........................................22, 23

*In re Rowe*,
    80 N.Y.2d 336 (1992) ..............................................................................21

*Silva v. Farrish*,
    47 F.4th 78 (2d Cir. 2022) ........................................................................7

*Simon & Schuster, Inc. v. Members of N.Y.S. Crime Victims Bd.*,
    502 U.S. 105 (1991)................................................................................24

*In re The Innocence Project, Inc.*,
    No. 2019-05674 (N.Y. App. Div. July 12, 2019) ....................................4

*U.S. v. Antar*,
    38 F.3d 1348 (3d Cir. 1994).....................................................................24

*U.S. v. Olivencia*,
    689 F. Supp. 1319 (S.D.N.Y. 1988)........................................................12

*U.S. v. Playboy Entm't. Grp., Inc.*,
    529 U.S. 803 (2000)................................................................................22

*Valley Forge Christian Coll. v. Ams. Un. for Separation of Church and State, Inc.*,
    454 U.S. 464 (1982)..................................................................................3

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 635 (2002)..................................................................................7

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)..................................................................................5

*Weiner v. Weintraub*,
  22 N.Y.2d 330 (1968) .................................................................................13, 16, 19

*Western Mohegan Tribe and Nation v. Orange Cnty.*,
  395 F.3d 18 (2d Cir. 2004).........................................................................................6

*Westmoreland v. Columbia Broad. Systems, Inc.*,
  752 F.2d 16 (2d Cir. 1984)................................................................................ passim

*Whole Woman's Health v. Jackson*,
  142 S. Ct. 522 (2021)..................................................................................................8

*Ex parte Young*,
  209 U.S. 123 (1908).............................................................................................6, 7, 8

**Statutes**

18 U.S.C. § 1983 ...........................................................................................................9

N.Y. Judiciary Law § 90(10) ............................................................................. passim

**Other Authorities**

22 N.Y.C.R.R. § 1240.7................................................................................................16, 24

22 N.Y.C.R.R. § 1240.8................................................................................................17

Stephen Gillers, *Lowering the Bar: How Lawyer Discipline in New York Fails to Protect the Public*, 17 NYU J. L. Pub. Pol. 485 (2014)...........................................22

## PRELIMINARY STATEMENT

Plaintiffs seek a ruling that should be self-evident under controlling First Amendment principles: the Plaintiffs have a First Amendment right of public access to the *decisions* about attorney discipline made by the Grievance Committee based on the complaints Plaintiffs filed and a concomitant First Amendment right of public access to any *trials* held in the Appellate Division based on those complaints. This Court has already addressed both the public right of access to judicial documents and the First Amendment interest in grievance proceedings. *See* ECF No. 58, at 8–17; ECF No. 94, at 19–30.

A "presumption of openness" is inherent to "our system of justice." *Richmond Newspapers, Inc. v. Va.*, 448 U.S. 555, 573 (1980). Openness "enhances the quality and safeguards the integrity of the factfinding process" and permits "the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982). As applied here, this right of access applies to the written dispositions of Plaintiffs' disciplinary complaints issued by the Grievance Committee, acting on behalf of the Appellate Division, and to any formal trial-type disciplinary proceedings held before the Appellate Division based on those complaints.

To the extent Judiciary Law § 90(10) is enforced to limit Plaintiffs' First Amendment right to access these judicial documents and proceedings, it is subject to strict scrutiny. But the State[1] makes no attempt to demonstrate that as applied to Plaintiffs, Section 90(10) is narrowly tailored to meet a compelling state interest. Instead, the State offers a mishmash of frivolous, misguided,

---

[1] This brief uses the same defined terms as Plaintiffs' opening brief. "State" refers to the sole remaining State defendant, Justice Hector C. LaSalle, Presiding Justice of the Second Department. The City Defendants are not respondents to this motion and settlement with them is anticipated.

and baseless arguments, never really addressing the issue presented. It rehashes at great length jurisdictional issues already considered and rejected by this Court. To the extent the State turns briefly to the merits of Plaintiffs' claim, it does not grapple with the well-established First Amendment right of access to judicial proceedings and it distorts the relevance of the undisputed fact that public disciplinary proceedings of attorneys was the norm prior to 1945.

## STATEMENT OF UNDISPUTED FACTS

The Court is well acquainted with the underlying facts. *See* Jan. 25, 2022 Order to Unseal, ECF No. 58; May 5, 2022 Decision and Order ("May 2022 Order"), ECF No. 90; June 13, 2022 Decision and Order ("June 13 Order"), ECF No. 94. There are no disputed material facts necessary to decide Plaintiffs' motion. Df. Response to Pl. Stmt. of Material Facts Pursuant to Local R. 56.1, ("Df. Counter 56.1"), ECF No. 200, ¶¶ 1, 2, 3, 4, 5, 7, 8, 9, 11, 12, 13, 15, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 29, 31, 32, 33, 34, 35, 37, 39, 40, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 53, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67.

## ARGUMENT

### I.    Plaintiffs Have Standing to Bring a Claim Against State Defendant

Plaintiffs allege a deprivation of their First Amendment right of access to determine the status of their Grievance Complaints, both the final dispositions by the Grievance Committee and any trial-type proceedings before the Appellate Division. By enforcing Section 90(10) to keep this information secret, Plaintiffs contend the State has caused Plaintiffs to suffer an injury readily redressable by the State, which can release the decisions and open the courthouse doors. Plaintiffs, therefore, have standing to bring their claim.

The State argues that Plaintiffs fail to demonstrate a constitutionally cognizable injury, but this ignores the long-standing principle that deprivation of a constitutional right, including the First Amendment right to access, constitutes a concrete, particularized injury. *See N.Y. Youth Club v.*

*Town of Harrison*, 150 F. Supp. 3d 264, 277 (S.D.N.Y. 2015) ("It is well-established that impairment of rights guaranteed by the Constitution is an injury sufficient to confer standing." (citing *Valley Forge Christian Coll. v. Ams. Un. for Separation of Church and State, Inc.*, 454 U.S. 464, 486 (1982)); *see also Ctr. for Bio-Ethical Reform, Inc. v. Black*, 234 F. Supp. 3d 423, 432 (W.D.N.Y. 2017) ("Actual impairment of fundamental rights guaranteed by the Constitution is an injury sufficient to confer standing.").

The Second Circuit's decision in *New York City Liberties Union v. New York City Transit Authority* is instructive. 684 F.3d 286, 298 (2d Cir. 2012). The NYCLU challenged a policy limiting public access to hearings conducted by New York City's Transit Adjudication Bureau ("TAB"). *Id.* at 293. In finding standing, the court concluded that the NYCLU had suffered a "concrete injury" by its exclusion from a TAB hearing in violation of its claimed First Amendment right. *Id.* at 295. In so ruling, the Court affirmed the trial court's "uncontroversial" ruling that "an alleged deprivation of First Amendment rights alone may suffice to constitute an injury in fact." 675 F. Supp. 2d 411, 425–26 (S.D.N.Y. 2009), *aff'd*, 652 F.3d 247 (2d Cir. 2011), *opinion amended and superseded*, 684 F.3d 286 (2d Cir. 2012), *and aff'd*, 684 F.3d 286 (2d Cir. 2012).

The State attempts to distinguish *NYCLU*, claiming that because Plaintiffs did not seek an order from the Appellate Division to open the proceedings for "good cause" shown, "they are unlike the plaintiff in *NYCLU*, whose representatives had repeatedly attempted to attend the hearings to which they claimed there was a public right of access." Df. Br. 16–17. The State made similar arguments in support of its motion to dismiss, *see* ECF No. 41, at 2, and again in opposing Plaintiffs' previous motion for summary judgment, *see* ECF No. 78, at 23–24; and the Court correctly ignored them both times, *see infra* at 6, 11–12. The argument fails on the facts and the law. On the facts, the Second Circuit opinion cites only two specific unsuccessful attempts

by NYCLU to attend TAB hearings.  684 F.3d at 295.  Compare that to Plaintiffs' *twenty-one*

different complaints from *six* different law professors about which the Grievance Committee

repeatedly refused to provide information, both in the Kearse letter and by ignoring a follow up

request.  *See* Decl. of Shelley Attadgie ("Attadgie Decl."), Ex. 2.  On the law, there is no

requirement, statutory or otherwise, that Plaintiffs ask the Second Department for information

regarding the status of the Grievance Complaints before seeking federal relief for a First

Amendment violation.  *See Patsy v. Bd. of Regents,* 457 U.S. 496, 516 (1982) (explaining that

Section 1983 claims, including First Amendment claims, do not require exhaustion of state

remedies); *see also Bennett v. Saunders*, No. 99-CV-0854, 1999 WL 529539, at *4 (S.D.N.Y. July

23, 1999) ("The doctrine requiring Plaintiffs to exhaust their administrative remedies [is

inapplicable] when 'a plaintiff has raised a substantial constitutional question.'" (quoting *Guitard

v. U.S. Sec'y of the Navy*, 967 F.2d 737, 741 (2d Cir. 1992)).[2]  It suffices that Plaintiffs filed the

Grievance Complaints and were denied access to the results of their complaints in violation of

their First Amendment rights.

Finally, State Defendant claims that "Plaintiffs are mistaken that they have a generalized

interest in knowing whether prosecutorial misconduct is being adequately disciplined."  Df. Br.

---

[2] As Plaintiffs pointed out in their earlier summary judgment brief, ECF No. 64 at 8-9, it would be futile for Plaintiffs to seek relief through the "Good Cause Application" the State proposes.  To the extent that Section 90(10) affords even the theoretical possibility of partial relief on constitutional claims, Plaintiffs would confront the demonstrated hostility of the New York courts to claims to open grievance proceedings.  To Plaintiffs' knowledge, *In re Aretakis*, 16 A.D.3d 899 (N.Y. App. Div. 2005), *In re Capoccia*, 59 N.Y.2d 549 (1983), and *In re New York News, Inc.*, 113 A.D.2d 92 (N.Y. App. Div. 1985), are the only three cases in the seventy-eight years since Section 90(10) was enacted in which records were released based on the "good cause" exception.  In all three cases, disclosure was ordered because the actions of the respondent attorney were deemed to constitute a waiver of confidentiality, not because of anything the complainant did or argued.  What little law there is demonstrates the difficulty a third party would face making such a motion.  Consider *In re The Innocence Project, Inc.*, No. 2019-05674 (N.Y. App. Div. July 12, 2019), where the Second Department refused to unseal disciplinary proceeding records involving disgraced former prosecutor, Glenn Kurtzrock, even though two years had passed without any disciplinary action after Kurtzrock was fired for misconduct by the Suffolk County District attorney.  Eventually, three years after the referral, Kurtzrock was suspended from practice.  *In re Kurtzrock*, 192 A.D.3d 197, 220 (N.Y. App. Div. 2020).

4

15. Again, the State is wrong on the facts and the law.  On the facts, Plaintiffs have a *particularized* interest in knowing whether *particular* prosecutors whose misconduct was documented with *particularity* are disciplined for their misconduct.  On the law, the case the State cites, *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973), stands for the unremarkable proposition that a private citizen lacks standing to force a prosecutor to prosecute another citizen.  It was in that context that the Court stated that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Id.* at 619.  *In re Att'y Disciplinary Appeal*, 650 F.3d 202 (2d Cir. 2011), is similar.  Plaintiffs are not seeking a court order that the State prosecute, or decline to prosecute, anyone.  They just want to learn what happened to their Complaints and they have standing to press that First Amendment claim.[3]

## II.    Justice LaSalle is Not Immune From Suit

Contrary to what the State contends, neither the Eleventh Amendment nor judicial immunity shield Justice LaSalle from the relief Plaintiffs seek:  declaratory, and if necessary, prospective injunctive, relief against a state official, acting in his official capacity.  Prior to bringing this cross-motion, the State recognized as much.  During the discovery process, the parties negotiated to limit the number of claims and defendants.  The State asked that Plaintiffs dismiss original defendants Diane Maxwell Kearse and Andrea E. Bonina, the chief counsel and chair of the Grievance Committee, respectively, and asked that the State Defendants be reduced to Justice LaSalle alone.  Counsel argued that "Justice LaSalle who is sued in his official capacity on behalf

---

[3]  The State also contends that CRC lacks standing.  The Court need not consider the issue since the Law Professors have standing and that is sufficient.  *See, e.g.*, *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977) ("Because of the presence of this plaintiff [with standing], we need not consider whether the other individual and [organizational] plaintiffs have standing to maintain the suit.").  In any event, CRC plainly has organizational standing because it alleges that it worked with the Law Professors to prepare and file the Grievance Complaints.  *See* ECF No. 1, at 3.  That gives it, as an organization, a First Amendment interest in learning about the outcome of those Grievance Complaints.  See *NYCLU*, 675 F. Supp. 2d 411, 425.

of the Second Department ***is the only defendant necessary to defend against Claim IV and, if Plaintiffs prevail, with control over the records and information Plaintiffs seek***." Attadgie Decl. Ex. 1.  Plaintiffs agreed and so Justice LaSalle is the sole remaining State defendant.[4]

The Court has already considered and rejected substantively similar immunity arguments in connection with former Defendant Diana Maxfield Kearse.  *See* ECF No. 90, at 29–35.  And, of course, the State has already conceded that Justice LaSalle is a proper defendant.  The State now nonetheless argues that he is immune from suit.  The State had it right the first time.  Neither the Eleventh Amendment nor the doctrine of judicial immunity insulates Justice LaSalle from Plaintiffs' claims.  Because the doctrines are overlapping, we treat them together.

The Eleventh Amendment does not bar Plaintiffs' claim.  In *Ex parte Young*, the Supreme Court recognized that state sovereign immunity does not bar claims arising under federal law for prospective injunctive or declaratory relief against state officials, acting in their official capacity, who are responsible for the challenged action.  *See* ECF No. 90, at 30 (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Western Mohegan Tribe and Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004) (per curiam) ("*Ex parte Young* is a limited exception to the general principle of sovereign immunity.  It 'allows a suit for injunctive or declaratory relief challenging the constitutionality of a state official's actions in enforcing state law.'" (quoting *CSX Transp., Inc. v. N.Y.S. Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)); *Marshall v. Switzer*, 900 F.

---

[4] The State now denies that Justice LaSalle retains control over the relevant records, claiming instead that "the New York Unified Court System/Office of Court Administration ('USC/OCA'), has possession, custody, and control of the records of the Grievance Committee."  Df. Counter 56.1 ¶¶ 20, 38.  This is a distinction without a difference.  First, Plaintiffs cannot sue the USC/OCA as it is an arm of the State and entitled to sovereign immunity.  Second, the State nowhere claims that USC/OCA will ***not*** comply with an order from Justice LaSalle to release the records, and it surely will.  Counsel's email, quoted above, acknowledges Plaintiffs seek "information or records within the Grievance Committee, which is controlled by the Second Department"—not the USC/OCA.  Attadgie Decl. Ex. 1.  Not surprisingly, the Presiding Justice has already promulgated rules affecting the retention and management of Committee records, *see* Attadgie Decl., Ex 3 at 2DDEPT000859–860.  He can do the same here.

Supp. 604, 615 (N.D.N.Y. 1995) ("Actions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action.").

To determine if a claim is permitted by *Ex parte Young*, the court asks "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *CSX Transp., Inc.*, 306 F.3d at 98 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Here, Plaintiffs allege that the State is enforcing Section 90(10) in violation of the public right of access under the First Amendment. "An allegation that state officials are enforcing a law in contravention of controlling federal law is sufficient to allege an ongoing violation of federal law for the purposes of *Ex parte Young*." *Brown v. N.Y.*, 975 F. Supp. 2d 209, 223 (N.D.N.Y. 2013) (citing *Chester Bross Const. Co. v. Schneider*, 886 F. Supp. 2d 896 (C.D. Ill. 2012)); *see also Verizon Md., Inc.*, 535 U.S. at 645 (finding that plaintiff's "prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry'" under *Ex parte Young*).

Plaintiffs' claim against Justice LaSalle also satisfies the second inquiry: Plaintiffs seek declaratory relief and/or an injunction that the State cannot enforce Section 90(10) to deprive Plaintiffs access to adjudications by the Grievance Committee and trial-type proceedings in the Appellate Division. If granted, the relief sought would prospectively end the on-going violation of the public right of access. *See Silva v. Farrish*, 47 F.4th 78, 86 (2d Cir. 2022) (allowing claims seeking prospective relief against state officials to proceed, explaining that plaintiffs' suit amounts to a "typical *Young* action" in that "[i]f the plaintiffs succeed in obtaining their requested relief, at most the state would need to tailor its regulatory scheme to respect the plaintiffs' . . . rights").

Contrary to what State Defendant implies, *Whole Women's Health* did not rewrite the rule to hold that suits against state-court judges may never fall within the *Ex parte Young* exception. Df. Br. 17–18.  To the contrary, the Court cited—and reaffirmed—the rule of *Ex parte Young,* explaining only that its "traditional exception" does not "normally permit federal courts to issue injunctions against state-court judges" because "those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021) (citing *Ex Parte Young*, 209 U.S. at 163).  Plaintiffs' claim is not precluded by *Whole Woman's Health*.  Plaintiffs do not seek to interfere with Justice LaSalle's judicial work resolving disputes between parties.  Rather, they challenge his administrative actions in enforcing Section 90(10) in violation of the public right of access under the First Amendment.  *See Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 912 (8th Cir. 2022) (rejecting defendant's claim that *Whole Women's Health* sets forth "an absolute rule" that state sovereign immunity shields state court judges from suits in their official capacity and explaining that "the rule . . . has not changed over the last century: state sovereign immunity shields state-court judges and clerks from prospective relief that will interfere with their ability to 'act[] in any case.'" (quoting *Ex parte Young*, 209 U.S. at 163)); *see also Gilmer*, 48 F. 4th 908 at 912 (holding that the exception under *Ex parte Young* applies as plaintiff's "lawsuit is about 'enjoin[ing] named defendants from taking specified unlawful actions,' . . . not 'enjoin[ing] courts from proceeding in their own way to exercise jurisdiction.'" (quoting *Ex parte Young*, 209 U.S. at 163)).

Such an action against a judicial officer is expressly permitted by 18 U.S.C. § 1983.  As this Court has already explained, the amended text of Section 1983—actually quoted by the State—explicitly carves out an exception to judicial immunity by permitting suits seeking declaratory relief to proceed against *judicial officials*.  *See* ECF No. 90, at 32 ("The doctrine of

individual immunity does not protect against claims for declaratory relief." (citing *Brown v. City of N.Y.*, 210 F. Supp. 2d 235, 239 n.6 (S.D.N.Y. 1999)).  The amended text makes clear that the Court should first order declaratory relief against Justice LaSalle, on the assumption that he will comply with that order.  An injunction is permitted only if Justice LaSalle violates the declaratory degree.  18 U.S.C. § 1983.  We doubt that an injunction will be necessary.  The State has already implicitly promised compliance with this Court's order by arguing that Justice LaSalle is "the only defendant necessary to defend against Claim IV and, if Plaintiffs prevail, with control over the records and information Plaintiffs seek."  Attadgie Decl., Ex. 1.  Nonetheless, as a matter of prudence, Plaintiffs seek both forms of relief.  *See* ECF No. 1, at 39–40, Prayer for Relief G, H.[5]

## III.    There is No Reason for the Court to Abstain From Judgment

### A.    Plaintiffs' Claim is Not Barred Under *Rooker-Feldman*

The State inaptly cites the *Rooker-Feldman* doctrine as a reason to abstain *"[i]f* the Court determines that the Complainant Status Letter *is an order* applying section Section 90(10) and causing Plaintiffs injury, *which it is not* . . . ."  Df. Br. 20 (emphasis added).  The Complainant Status Letter is just a letter, sent by Ms. Kearse telling Plaintiffs that they would receive no information at all about their complaints unless and until the Appellate Division determined to impose public discipline on the subjects of their complaints.  *See* Compl. Ex. 2.  That was a clear statement that the Grievance Committee would deny Plaintiffs their First Amendment right to information about their complaints.  But we agree with the State that the letter is not a court order.  Thus, as the State agrees, the *Rooker-Feldman* doctrine has no application.

---

[5]  Legislative immunity also does not shield Justice LaSalle because he is sued in his official capacity.  *See Olma v. Collins*, 499 F. App'x 98, 100 (2d Cir. 2012); *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007) ("Immunity, either absolute or qualified, is a personal defense that is available only when officials are sued in their individual capacities; '[t]he immunities [officials] enjoy when sued personally do not extend to instances where they are sued in their official capacities.'" (quoting *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999), *abrogated on other grounds* by *Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012)).

### B. *O'Shea* Abstention is Not Warranted

There is no reason for the Court to abstain under *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974). As this Court stated in denying Defendants' motion to dismiss, *O'Shea* directs federal courts "to abstain from hearing cases where the requested relief would constitute 'a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings.'" ECF. No. 90, at 15, citing *O'Shea* at 502. This Court has already recognized that this is "very different" from what Plaintiffs seek here:

> Here, Plaintiffs are asking the Court to determine the constitutionality of a state statute, not to oversee internal judicial procedures or ongoing proceedings . . . Determining the constitutionality of a state statute is, to quote *Marbury v. Madison*, "emphatically the province and duty of the judicial department." 5 U.S. (1 Cranch) 137, 177 (1803); *see also id*. at 178 ("So if a law be in opposition to the constitution . . . the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.").

ECF No. 90, at 16. Plaintiffs seek a declaration about the constitutionality of Section 90(10) and, as this Court held, it is "unclear how Plaintiffs would be able to bring their constitutional challenges in those state disciplinary proceedings due to their lack of direct involvement in the underlying actions." ECF No. 90, at 11. There is no need to revisit this ruling now.

The State tries to circumvent the problem by suggesting that Plaintiffs' constitutional issues could be raised in an application before the Appellate Division to open the proceedings for "good cause" shown. Df. Br. 22–23. Defendants made this exact argument in the pre-motion letter on which the Court's ruling was based and the Court correctly ignored it. It is no more persuasive now. First, it is far from clear that such an avenue is available to Plaintiffs, given that they are not parties in any state court proceeding and, as the State admits, other than the phrase "good cause", Section 90(10) provides no "details as to the process" for making such an application. Df. Br. 5. That is consistent with the incoherent application of Section 90(10) by the New York courts— what the State itself calls its "patchwork treatment" of the law. *See* Df. March 31, 2022 brief in

opposition to summary judgment, ECF No. 78, 12–15.  There are only three cases actually applying the good cause exception and all were based on the conduct of the respondent in the proceeding.  *See supra* p.4, n.2.  Indeed, there is no hint in New York case law that the "good cause" standard permits anything other than case-by-case application, let alone that it is a proper vehicle for a federal constitutional challenge to the **statute** itself.  Second, the argument that the court should defer to a "good cause" application is in tension with the principle that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."  *Patsy,* 457 U.S. at 516.  Third, Plaintiffs' claims do not remotely implicate *O'Shea.*  A ruling for Plaintiffs will not, as this Court has ruled, require federal oversight of "internal judicial procedures or ongoing proceedings."  If Plaintiffs prevail, the Second Department, not this Court, will have to determine how to provide the required access.

## C.    The *Younger* Abstention Doctrine Does Not Apply

In denying Defendants' motion to dismiss, this Court has already explained why *Younger* abstention does not apply to this case.  ECF No. 90, at 7–14.  The Court recited **each and every** type of relief the Plaintiffs sought, including Plaintiffs' claims for access to attorney disciplinary hearings and public release of records relating to Plaintiffs' complaints, and concluded:

> ***Even if the Court were to take every one of those actions, nothing would necessarily affect the way in which the State can conduct its disciplinary investigations and disciplinary proceedings.***  The Court would not be stepping in or directly interfering with such proceedings.  Increased public disclosure may generate increased attention and publicity for the state's actions, but as the Supreme Court has said, "even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'"  *Sprint*, 571 U.S. at 81–82 (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)).  The *Sprint* Court cautioned against allowing the exception to swallow the rule.  In fact, federal court abstention here would unduly extend the limited *Younger* exception to include federal cases where a state proceeding would not be directly affected by the outcome of the federal case, but where the federal and state cases are tangentially related.  The Court finds *Younger* and its progeny do not provide a compelling basis for the Court to take the exceptional and extraordinary measure of declining jurisdiction over this matter.

*Id*. at 13-14 (emphasis added).  Plaintiffs still seek the same relief and so this analysis applies directly.  It was correct, it is the law of the case, and there is no compelling reason to revisit it here.  *See Jackson v. N.Y.S.*, 523 Fed. App'x 67, 69 (2d Cir. 2013).

### D.    This Case Is Ripe For Decision

Finally, the State argues that Plaintiffs' claim for live access to Appellate Division trials is not ripe since there is no evidence that the Grievance Complaints have or will soon result in any formal proceeding.  Df. Br. 30.  That is no surprise since the State has kept secret all information about how it is handling the complaints.  That does not mean there will be no trials.  The complaints filed two years ago contain evidence of prosecutorial misconduct that should warrant discipline and, if disputed, a trial.  Charges against rogue prosecutor Glenn Kurtzrock took three years to go to trial after the complaint was filed.  *In re Kurtzrock*, 192 A.D.3d 197, 220 (N.Y. App. Div. 2020).

In any event, the State's ripeness argument is absurd since, as the State sees it, the Plaintiffs will never know that a trial is imminent, and this dispute will never be ripe.  That is not how ripeness works.  "[T]he ripeness inquiry requires courts to consider both the fitness of the issues for judicial decision and the hardship resulting from withholding judicial consideration."  *Marchi v. Bd. of Coop. Educ. Services*, 173 F.3d 469, 478–79 (2d Cir.1999) (citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 149, (1967)) (emphasis added).  Here, there are no disputed facts bearing on the access issue, making the dispute fit for decision.  *See U.S. v. Olivencia*, 689 F. Supp. 1319, 1323 (S.D.N.Y. 1988).  Not resolving the issue now will unfairly harm Plaintiffs since, by the State's argument, their important First Amendment claim will never be resolved.  That cuts sharply against the State's argument because "in the First Amendment context, the ripeness doctrine is somewhat relaxed."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002), *abrogated on other grounds* by *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019).

**IV.    The First Amendment Right of Access Applies to the Decisions of the Grievance Committee and Trials In The Appellate Division**

In our opening papers, we demonstrated Plaintiffs entitlement under the First Amendment to access to the *decisions* about attorney discipline made by the Grievance Committee on Plaintiffs' complaints and to live access to any resulting *trials* before the Appellate Division (or a special referee).  This was true for two separate reasons: (1) attorney disciplinary proceedings before the Grievance Committee and the Appellate Division are judicial proceedings to which a First Amendment right of access applies; and (2) in any event, under the so-called "experience and logic" test, the First Amendment right of access applies because attorney disciplinary proceedings have historically been open and open proceedings serve important public interests.  Secrecy is proper only if it is narrowly tailored to meet a compelling state interest.

The State largely ignores the first reason and responds to the second with meaningless distinctions about the historical record.  And it skips over black-letter First Amendment analysis. It offers no argument that Section 90(10) is narrowly tailored to support a compelling state interest.

**A.    Disciplinary Proceedings In The Grievance Committee And The Appellate Division Are Judicial Proceedings To Which The Right Of Access Attaches**

The State does not meaningfully dispute that under New York law, attorney disciplinary proceedings are "judicial proceedings".  Of course, attorney disciplinary proceedings in the Appellate Division are judicial proceedings, as the Second Circuit held in *Doe v. Rosenberry,* 255 F.2d 118, 120 (2d Cir. 1958).  They are "judicial proceedings" because the term necessarily includes "any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest . . .".  Likewise, attorney disciplinary proceedings in the Grievance Committee are also judicial proceedings.  In *Weiner v. Weintraub*, 22 N.Y.2d 330, 331–32 (1968), the New York Court of Appeals held that proceedings before a "Grievance Committee[] of a bar association" "constitute

a 'judicial proceeding,'" as the Committee is functioning as "an arm of the Appellate Division." The Second Circuit has adopted the same analysis, relying in part on the prior role that New York courts played in attorney discipline. "[P]etitions or complaints charging professional misconduct of an attorney, which in the past were presented to the General Term of the Supreme Court are now usually filed with the Grievance Committee of a bar association. . . . *[A] proceeding before such a committee constitutes a 'judicial proceeding*.*"* *Anonymous v. Ass'n of the Bar of City of N.Y.*, 515 F.2d 427, 433 (2d Cir. 1975) (emphasis added). The Appellate Division's delegation to a grievance committee does not change the judicial nature of the proceeding. A state court's "conduct of disciplinary proceedings with respect to those admitted to practice before it amounts to a judicial inquiry. . . . Although the court, for practical reasons, invokes the assistance of bar associations and their committees . . . , the disciplinary power continues to rest exclusively with the court." *Erdmann v. Stevens*, 458 F.2d 1205, 1208 (2d Cir. 1972); *see also Mosby v. Ligon*, 418 F.3d 927, 931–32 (8th Cir. 2005) ("Because the Committee is created and appointed by the Arkansas Supreme Court, operates pursuant to rules promulgated by that court, and is subject to review by that court, the Committee's decision to discipline [the respondent attorney] is the functional equivalent of a state-court judgment."). The State admitted as much in moving to dismiss Plaintiffs' claims: "state-initiated attorney disciplinary proceedings for violations of state ethics rules are an example of civil enforcement proceedings." ECF No. 78, at 28.

Because Grievance Committee and Appellate Division proceedings are judicial proceedings—civil enforcement proceedings—the qualified First Amendment right of access applies. *Westmoreland v. Columbia Broad. Sys., Inc.,* 752 F.2d 16, 23 (2d Cir. 1984). The State's responses to this are meritless. First, the State incorrectly suggests that Plaintiffs are making a common law access claim. Df. Br. 34. Not so. Plaintiffs' claim is based on the First Amendment

14

right of access to judicial proceedings.  As the Second Circuit said in *Westmoreland*, "the First Amendment does secure to the public and to the press a right of access to civil proceedings . . . ." *Id.* at 23 (internal citations and quotation marks omitted).

Second, the State repeatedly insists that the Grievance Committee proceedings are akin to grand jury proceedings, which are secret, and that the Committee performs no adjudicative role. *See, e.g.*, Df. Br. 26–27, 29.  But the grand jury analogy doesn't take the State where it wishes to go; and the Committee's role plainly includes adjudication of disputes between adverse parties. When the grand jury issues an indictment at the conclusion of its investigation, that action is public. In cases where the grand jury investigation is already public (as the complaints here are public), a grand jury decision not to indict is also often released in the public interest.  That is what Plaintiffs seek here—not the investigation the Grievance Committee undertakes, but its conclusion, be it a dismissal, a letter of advisement, a letter of admonition, or a referral to the Appellate Division.

When the Committee takes any of these actions, it is no longer acting as an investigator or prosecutor, and any analogy to a grand jury disappears.  Rather, in reaching a judgment permitted by law, the Committee is acting as a neutral adjudicator resolving a dispute, typically between a complainant and an attorney respondent.  As Chief Counsel Kearse testified, "Our job is to look at both sides objectively.  We don't take either side, whether the attorney or the complainant." *See* Wells Decl., Ex. 8 at Tr. 32:4–6.  Confusing two issues, the State argues that "[t]he Committee is not a 'neutral *adjudicator*' empowered to make public factual findings or recommendations. . . ." Df. Br. 29 (emphasis in original).  The Committee is certainly not empowered to make its findings public, but it remains a "neutral adjudicator" empowered to make not only factual findings, but *decisions*, that in 98% of cases finally resolve the dispute between two adverse parties.

15

The Committee's adjudicative function is expressly permitted by law. *See* 22 N.Y.C.R.R. §§ 1240.7(d)(2)(i), (iv), (v) and (vi) (setting forth the types of adjudicative actions that may be taken, including issuing dismissal, Letters of Advisements and Letters of Admonishment); *see also* Wells Decl., Ex. 8 at Tr. 59:11–12 (describing the Letter of Advisement as a "lesser sanction" than that of Admonishment); *id.* at Tr. 70:7–71:18 (describing the consequences of these letters and explaining that Letters of Admonition are "considered discipline"). The Committee's judgment is disclosed to both the complainant and the attorney, both of whom are free to publicly disclose that judgment. 22 N.Y.C.R.R. §§ 1240.7(d)(2)(i), (d)(3). A sanctioned attorney may move for rehearing or file an appeal to the Appellate Division. 22 N.Y.C.R.R. §§ 1240.7(e). Sanctions issued by the Committee will inform any subsequent proceedings involving the attorney, including whether to refer the matter to the Appellate Division. *See* Df. Counter 56.1 ¶¶ 35, 37; Df. Br. 9.

The proceedings of the Grievance Committee "constitute a judicial proceeding" with the Committee functioning as "an arm of the Appellate Division." *Weiner v. Weintraub*, 22 N.Y.2d 330, 331–32 (1968). As such, the public is entitled to access to the Committee's decisions under the First Amendment. *Westmoreland,* 752 F.2d at 23. Indeed, the State does not dispute that this result follows automatically from the conclusion that the Committee's decisions are judicial documents. For all but two percent of the cases that the Committee considers, its decisions are "the final and most important step" in the attorney disciplinary proceedings, making an opportunity for "public observation" of the Committee's work necessary under the First Amendment. *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1, 12 (1986).

Finally, the State does not dispute that formal trial-type disciplinary proceedings before the Appellate Division or a special referee are judicial proceedings. These proceedings have all the features of any other civil proceeding, including a complaint (styled as a petition) and an answer,

then discovery, all leading to a trial featuring openings, witness testimony and summations.  *See* 22 N.Y.C.R.R. § 1240.8(a)(1)(i); Pl. 56.1 ¶ 42; 22 N.Y.C.R.R. § 1240.8(a)(2)–(a)(4); Pl. 56.1 ¶¶ 43, 44; *see also* Wells Decl., Exs. 21, 22.  The referee's findings thereafter may be affirmed or sustained by the Appellate Division, and charges sustained may result in public censure, suspension, or disbarment of the accused attorney.  *See* 22 N.Y.C.R.R. § 1240.8(b)(1); Pl. 56.1 ¶¶ 49–50.  It is undisputed that these trial-type proceedings in the Appellate Division are judicial proceedings subject to the First Amendment right of access.

### B.    In Any Event, There Is A Presumptive Right Of Public Access To Attorney Disciplinary Proceedings And Records

Even if the proceedings before the Grievance Committee and Appellate Division were not judicial proceedings, they are sufficiently analogous to judicial proceedings to still be subject to a First Amendment right of access.  Under the standards set out in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982), and *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise I*"), 464 U.S. 501 (1984), the tradition of openness in grievance proceedings and the powerful functional values served by public access together give rise to a presumption of access under the First Amendment.  *See NYCLU*, 684 F.3d at 298 ("[T]here is no principle that limits the First Amendment right of access to any one particular type of government process.").

### 1.    The Historical Tradition of Openness in Attorney Disciplinary Proceedings

The State does not genuinely dispute the historical tradition of public proceedings for disciplining attorneys, going back to the English common law.[6]  Rather, it argues that history

---

[6]  The State strangely reads *Karlin v. Culkin*, 162 N.E. 487 (N.Y. 1928), to "demonstrate[] a historical absence of public attorney disciplinary proceedings."  Df. Br. 27.  The argument is strange since the facts—not contested by the State—show there were in fact "public attorney disciplinary proceedings" throughout the previous century.  *See infra*

should be ignored because today the proceedings are secret under Judiciary Law 90(10). That is just wrong. In access cases like this one, the precise reason for the dispute is that current practice is to keep the proceeding closed, when it used to be open. Starting with the institution of the current (closed) practice, as the State suggests, would render the historical inquiry irrelevant. That is not what the case law demands. In *Richmond Newspapers*, the Court explained that in conducting its historical analysis, the Court should look to whether the proceedings were open in the founding era and even before. *See* 448 U.S. at 569.

Since then, courts have looked to the openness of the proceeding as far back as the colonial period, finding that—even if not a perfect match—such tradition is relevant and indeed dispositive of the issue whether there is a historical practice of openness. *See Press-Enterprise II*, 478 U.S. at 8. In *Press-Enterprise II*, the Court specifically noted that while there was no doubt that "the modern trial with jurors open to interrogation for possible bias is a far cry from the 'town meeting trial' of ancient English practice," the openness of such a proceeding nevertheless still bore directly on the question of whether civil proceedings today should be open. *See id.* ("Yet even our modern procedural protections have their origin in the ancient common-law principle which provided, not for closed proceedings, but rather for rules of conduct for those who attend trials.").

Since *Press-Enterprise II*, the Second Circuit has explained that the focus is "not on formalistic descriptions of the government proceeding but on the kind of work the proceeding actually does and on the First Amendment principles at stake." *NYCLU*, 684 F.3d at 299. Applying this approach to closed TAB hearings in *NYCLU*, the Court looked to the "kind of work" the proceeding performs. "The *process* that goes on at TAB hearings is *a determination of whether*

---

p. 19–20. *Karlin*, discussed in Plaintiffs' opening papers, demonstrates only that preliminary investigations, were then, as they are now, conducted in secret, a proposition with which we have no dispute. Pl. Br. 20.

*a respondent has violated a Transit Authority Rule*.  And *that* process was presumptively open from the inception of the Rules system in 1966, when such proceedings were heard only in open criminal courts."  *Id.* at 301–302 (emphasis in original).  Moreover, the analysis is not limited to New York history.  "[T]he 'experience' test . . .  does not look to the particular practice of any one jurisdiction, but instead to the experience in that type or kind of hearing throughout the United States." *El Vocero de Puerto Rico v. Puerto Rico,* 508 U.S. 147, 150–51 (1993) (internal quotation marks and citations omitted); *see also Cal-Almond, Inc. v. U.S. Dep't of Agric.,* 960 F.2d 105, 109 (9th Cir. 1992) (surveying several state statutes to determine a tradition of public access).

Applying this guidance, there is a clearly established tradition of openness to attorney disciplinary proceedings in the United States and in New York.  There is no dispute over the key facts.  In this country, until the mid-twentieth century, states adopted England's practice of conducting attorney discipline through public proceedings.  Df. Counter 56.1 ¶ 55; *see also* Pl. Br. 14–16 (citing cases).  Prior to the enactment of Section 90(10) in New York, petitions or complaints charging professional misconduct of an attorney were presented publicly to the Supreme Court in New York and adjudicated as equity suits or contempt proceedings.  Df. Counter 56.1 ¶ 55.  The State devotes pages to arguing that a relatively minor change in the form of disciplinary proceedings—the replacement of private attorneys by the Grievance Committee—is so important it renders prior history irrelevant.  The courts are well aware of the change and have frequently described it, without ever suggesting that it was anything other than a change in form or that it affected the kind of work the process entailed.  *Weiner*, 22 N.Y.2d at 331 ("Petitions or complaints charging professional misconduct of an attorney which, in the past, were presented to the General Term of the Supreme Court . . . are now usually filed with the Grievance Committee of a bar association."); *Ass'n of the Bar of City of N.Y.*, 515 F.2d at 433 (same).  In fact, there has

been no change in substance. As with the TAB procedures in *NYCLU*, "the *process* that goes on at [Grievance Committee proceedings] is *a determination of whether a respondent has violated a* [rule of professional conduct]. And *that* process was presumptively open from the inception [of the New York court system], when such proceedings were heard only in open [civil] courts." *NYCLU*, 684 F.3d at 301–302.

Today, there is no question that New York's practice of complete secrecy for attorney disciplinary proceedings is not the national norm. Forty-one jurisdictions across the country permit public access to information regarding attorney discipline, at the latest, upon a finding of probable cause. Df. Counter 56.1 ¶ 65. New York is an outlier, and its closed proceedings matter little in evaluating the existence of a prevalent, national historic tradition.

For these reasons, the State's analogies to disciplinary procedures of judges, dentists and physicians are irrelevant. In *First Amendment Coalition v. Judicial Inquiry and Review Board*, 784 F.2d 467, 468 (3d Cir. 1986) (en banc), the Third Circuit rejected a claim for access to ***judicial*** disciplinary proceedings, finding that the judicial board's proceedings were "administrative proceedings" that did not have "a long history of openness." *Id.* at 472–73. Similarly, in *Johnson Newspaper Corp. v. Melino*, 564 N.E.2d 1046, 1047–49 (N.Y. 1990), the court denied a request to open a disciplinary hearing for a ***dentist*** because, in part, "there is no suggestion that professional disciplinary hearings have any tradition of being open to the public . . .". And *J.P. v. Chassin,* 189 A.D.2d 137 (2d Dep't 1993), involved a disciplinary proceeding for a ***physician*** in which no First Amendment claim of a right of access was asserted. The Court nonetheless applied the "history and logic" test, and concluded, "[a]pplying that test, there is no public right to access [to a physician disciplinary proceeding] pursuant to Public Health Law § 230." These cases simply

have no bearing on the question of whether there is a history—indeed, a well-documented and nationwide history—of openness in attorney disciplinary proceedings.

### 2.    Public Access Would Play A Significant Positive Role In Attorney Discipline

The State does not grapple directly with the logic prong of the *Press-Enterprise II* test, which is set forth in our opening papers.  Pl. Br. 16–18.  Briefly, the logic prong is clearly satisfied because disciplinary proceedings implicate all the same interests in promoting fairness, adherence to procedure, impartiality of adjudicators, and an enhanced performance of all involved in the process as the trial proceedings addressed in *Press-Enterprise II* and *Richmond Newspapers*.  *See Richmond Newspapers*, Inc., 448 U.S. at 569 (noting that openness "gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality") (plurality opinion); *Press-Enterprise I*, 464 U.S. at 508 (same); *Westmoreland*, 752 F.2d at 23 (same).  Here the logic prong has added force because the respondents are attorneys and, indeed, prosecutors sworn to enforce the criminal laws.  "The primary concern of a disciplinary proceeding is the protection of the public in its reliance on the integrity and responsibility of the legal profession."  *In re Rowe*, 80 N.Y.2d 336, 341 (1992); *see also In re Levy*, 37 N.Y.2d 279, 282 (1975) (same).

The secrecy that pervades New York's grievance process shows that it is more concerned about protecting the privacy interests of attorneys—even prosecutors and other public servants—accused of misconduct than in protecting the public.  That interest in secrecy negatively affects the public faith in the integrity of the disciplinary process.  As decades of court decisions and legal commentary persuasively argue, public faith can only be remedied by public access.  *See Richmond Newspapers, Inc.*, 448 U.S. at 572 ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.");

*Press-Enterprise II,* 478 U.S. at 8; *see also* Stephen Gillers, *Lowering the Bar: How Lawyer Discipline in New York Fails to Protect the Public*, 17 NYU J. L. Pub. Pol. 485, 503-04 (2014).

### C.    Judiciary Law 90(10) Is Not Narrowly Tailored to Support a Compelling State Interest

Whether (1) because Grievance Committee proceedings are judicial proceedings or (2) because the "history and logic" test is satisfied, or (3) both, Plaintiffs have shown that they have a presumptive First Amendment right of access to Grievance Committee *decisions* and Appellate Division *trials.*    Insofar as it bars such access, Judiciary Law Section 90(10) is presumptively invalid and subject to strict scrutiny.   "[T]he Government bears the burden to rebut that presumption." *U.S. v. Playboy Entm't. Grp., Inc.*, 529 U.S. 803, 817 (2000).  The State must prove the constitutionality of the regulation by showing (1) that the regulation serves a compelling governmental interest; and (2) that the regulation is narrowly tailored to serve that compelling interest.  *Id.* at 813.  The Supreme Court has made it clear that "it is the rare case in which . . . a law survives strict scrutiny."  *Burson v. Freeman*, 504 U.S. 191, 211 (1992).

### 1.    No Compelling State Interest Supports Section 90(10)

The State cannot show that a compelling state interest supports Section 90(10)'s rule of secrecy.   "Mere speculation of harm does not constitute a compelling state interest."  *Consol. Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 543 (1980).  A compelling state interest must be "justified by [a] high degree of necessity."  *Brown v. Entm't. Merchs. Ass'n*, 564 U.S. 786, 804 (2011).  New York's courts have cited two interests to support Section 90(10) blanket secrecy.

First, the New York Court of Appeals has explained that Section 90(10)'s confidentiality provisions "were enacted primarily, if not only, for the benefit of the attorney under investigation." *Capoccia*, 59 N.Y.2d at 554.  The law allegedly "protects an attorney's reputation from potentially unfounded accusations."  *In re Rodeman*, 883 N.Y.S.2d 835, 837 (N.Y. App. Div. 2009).  This is

arguably a legitimate state interest, but not a compelling one.  As the Supreme Court has stated, "[o]ur prior cases have firmly established [] that injury to official reputation is an insufficient reason for repressing speech that would otherwise be free."  *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841–42 (1978) (statute that sanctioned persons for divulging information regarding judicial misconduct proceedings violated the First Amendment); *see also In re Demetriades*, 58 F.4th 37, 46 (2d Cir. 2023) (interest in avoiding "reputational harm" "cannot meet the 'weighty' standard for overriding the presumptions of open records and public access"); *In re Gitto Global Corp.,* No. 05-CV-10334, 2005 WL 1027348, at *12 (D. Mass. May 2, 2005), *aff'd*, 422 F.3d 1 (1st Cir. 2005) (interest in "avoiding embarrassment and protecting a measure of privacy" cannot overcome First Amendment interest in permitting public access to bankruptcy report).

Second, New York courts have stated that in addition to protecting attorneys' reputations, Section 90(10) also "safeguards information that a complainant may deem private, thereby removing a potential disincentive to the filing of complaints alleging professional misconduct."  *In re Rodeman*, 883 N.Y.S.2d 835, 837 (N.Y. App. Div. 2009) (citing *Aretakis*).  This may also be a legitimate state interest with respect to some complainants, but it is entirely speculative when applied to all persons who may wish to pursue grievances against a lawyer.  In fact, the courts are littered with publicly filed lawsuits brought by disgruntled clients against their lawyers.

The State adds two other purported interests in secrecy—"managing the attorneys . . . charged with . . . administering justice" and providing potential witnesses and complainants with "a confidential forum for full and frank discussions" about alleged wrongdoing.  Df. Br. 31–32.  These again may be legitimate state interests, but the State nowhere explains why confidentiality is critical to managing attorneys or why full and frank testimony affecting a professional's career is not more reliably obtained in a public forum than in a modern star chamber proceeding.  *See*

*e.g., Richmond Newspapers*, Inc., 448 U.S. at 569 (noting that openness "discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality") (plurality opinion); *Press-Enterprise I*, 464 U.S. at 508 (same); *Westmoreland*, 752 F.2d at 23 (same).

It is not clear whether the State contends that it has a compelling interest in denying live access to trials in the Appellate Division, but it does not have such an interest. Such trials take place only upon a finding of probable cause by the Grievance Committee. 22 N.Y.C.R.R. § 1240.7(d)(2)(vi). To stay with the State's favorite grand jury analogy, once the grand jury finds probable cause that the defendant committed a crime, the trial takes place in public. Here, too, that should be the rule. As made clear in Plaintiffs' opening brief, live access to such formal disciplinary proceedings, just like live access to any other judicial proceeding, is "a vital component of the First Amendment right of access . . . ." *ABC, Inc. v. Stewart*, 360 F.3d 90, 99 (2d Cir. 2004); *see also U.S. v. Antar*, 38 F.3d 1348, 1360 n.13 (3d Cir. 1994).

## 2.    Section 90(10) Is Not Narrowly Tailored

Even if it were supported by a compelling state interest, Section 90(10)'s denial of access to Grievance Committee decisions and Appellate Division trials would still be unconstitutional because it is not narrowly tailored to serve any purported state interest. The interests that the State identifies plainly establish that the law is not narrowly tailored. It says it protects against "unnecessary disclosure of information about medical issues, family matters, and attorney-client privilege that arise in disciplinary proceedings." Df. Br. 32. All of these may be legitimate state interests, but they could easily be protected by a confidentiality order dealing with these issues in an appropriate case. They do not make the law narrowly tailored. Rather, they demonstrate that the law is vastly overbroad and suppresses access far more than necessary to accomplish these limited goals. *Simon & Schuster, Inc. v. Members of N.Y.S. Crime Victims Bd.*, 502 U.S. 105, 121 (1991). Moreover, by ignoring the availability of confidentiality orders where appropriate, the

statute ignores less-restrictive alternatives. *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 665–66 (2004). Indeed, the complaints filed by the Law Professors raise none of these issues.

The same problem is true for the two interests identified by the New York courts as supporting Section 90(10). Protecting the confidentiality of accused lawyers has no place here because the lawyers have been publicly identified in complaints filed by the Law Professors and their conduct has already been sanctioned by the courts. Protecting the privacy of the complainants likewise is not applicable because the complainants—the Law Professors—have chosen to identify themselves. In all respects, Section 90(10) is overbroad, keeping secret far more than is necessary to achieve its stated purpose. It fails strict scrutiny and is unconstitutional as applied in this case.

## CONCLUSION

Judiciary Law Section 90(10) is unconstitutional insofar as it restricts the Plaintiffs from access to the *decisions* of the Grievance Committee and to *trials* in the Appellate Division arising from their complaints. For the reasons set forth above, the Court should grant Plaintiffs' Motion for Summary Judgment.

Dated: November 17, 2023
New York, New York

Respectfully submitted,

/s/Gregory L. Diskant
Gregory L. Diskant
Elisabeth Shane
Shelley Attadgie
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel:212-336-2000
Fax:212-335-2222
gldiskant@pbwt.com
eshane@pbwt.com
sattadgie@pbwt.com

*Attorneys for Plaintiffs*

25

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2023, I caused the foregoing document to be served upon counsel of record via ECF.


/s/ Gregory L. Diskant
Gregory L. Diskant