**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, AND STEVEN ZEIDMAN,

                                   Plaintiffs,

v.

HECTOR D. LASALLE, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity,

                                   Defendant.

Case No. 1:21-cv-09128 (VM)

Hon. Victor Marrero

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: 212-336-2000
Fax: 212-335-2222

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ............................................................................................4

ARGUMENT...............................................................................................................12

I.      Plaintiffs Are The Prevailing Party. ...........................................................13

II.     The Fee Amount Requested Is Reasonable. ...............................................14

        A.    The Hourly Rates Are Reasonable.....................................................15

        B.    The Hours Expended Were Reasonable. ............................................17

III.    The Costs Requested Are Reasonable. .......................................................20

CONCLUSION ...........................................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*28th Highline Assocs. v. Roache*,
  No. 18-CV-1468, 2019 WL 10632851 (S.D.N.Y. July 29, 2019)..........................................20

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
  522 F.3d 182 (2d Cir. 2008)....................................................................................14, 16

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d
  91 (2d Cir. 2004) ...........................................................................................................20

*Bailey v. Pataki*,
  2016 WL 3545941 (S.D.N.Y. June 16, 2016) ......................................................................19

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008)..............................................................................................14

*Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*,
  652 F.3d 277 (2d Cir. 2011)..............................................................................................14

*Capital2Market Consulting, LLC v. Camston Wrather, LLC*,
  No. 22-CV-7787, 2023 WL 2366975 (S.D.N.Y. Mar. 6, 2023) .............................................13

*Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Commc'n*,
  934 F.3d 238 (2d Cir. 2019)..............................................................................................12

*Chrysafis v. Marks*,
  21-CV-2516, 2023 WL 6158537 (E.D.N.Y. Sept. 21, 2023) ...............................................12

*Civil Rights Corps v. Pestana*,
  No. 21-CV-9128, 2022 WL 1422852 (S.D.N.Y. May 5, 2022), ECF No. 90 .....................6, 7

*Davis v. City of N.Y.*,
  No. 10-CV-699, 2011 WL 4946243 (S.D.N.Y. Oct. 18, 2011)........................................17, 18

*Grant v. Martinez*,
  973 F.2d 96 (2d Cir. 1992)...........................................................................................13, 17

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
  No. 96-CV-8414, 2021 WL 6105564 (S.D.N.Y. Dec. 2, 2021) .............................................15

*Hensley v. Eckhart*,
  461 U.S. 424 (1983).........................................................................................................14

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*HomeAway.com, v. City of N.Y.*,
    523 F. Supp. 3d 573 (S.D.N.Y. Mar. 1, 2021) .......................................................................15

*Juscinska v. Meson Sevilla, Ltd.*,
    No. 19-CV-5284, 2021 WL 706548 (S.D.N.Y. Feb. 23, 2021)...............................................15

*KCG Holdings v. Khandekar*,
    No. 17-CV-3533, 2021 WL 623927 (S.D.N.Y. Feb. 17, 2021)................................................13

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998)........................................................................................12, 13, 19

*Lunday v. City of Albany*,
    42 F.3d 131 (2d Cir. 1994)......................................................................................................17

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993) .........................................................................................19

*Najera v. 144 Ninth Gotham Pizza, Inc.*,
    2017 WL 728703 (S.D.N.Y. Feb. 24, 2017)............................................................................17

*Pastre v. Weber*,
    800 F. Supp. 1120 (S.D.N.Y. 1991)........................................................................................19

*Pulliam v. Allen*,
    466 U.S. 522 (1984)................................................................................................................12

*Raishevich v. Foster*,
    247 F.3d 337 (2d Cir. 2001)....................................................................................................11

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
    818 F.2d 278 (2d Cir. 1987)....................................................................................................20

*Reiseck v. Universal Commc'ns. of Miami, Inc.*,
    No. 06-CV-777, 2014 WL 5374684 (S.D.N.Y. Sept. 5, 2014)...............................................20

*Reiter v. MTA N.Y.C. Transit Auth.*,
    457 F.3d 224 (2d Cir. 2006)....................................................................................................14

*Silva v. Legend Upper W. LLC.*,
    590 F. Supp. 3d 657 (S.D.N.Y. 2022).....................................................................................20

*Sugarman v. Vill. of Chester*,
    213 F. Supp. 2d 304 (S.D.N.Y. 2002).....................................................................................18

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*,
    471 U.S. 234 (1985) ............................................................................................................... 17

**Statutes**

42 U.S.C. § 1988 ...................................................................................................................... 12

Plaintiffs Civil Rights Corps, and Professors Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in support of their motion for attorneys' fees and costs.

## PRELIMINARY STATEMENT

In this motion, Plaintiffs seek recovery of the statutory attorneys' fees and costs associated with their successful challenge to the Grievance Committee's (herein after "the State")[1] sealing of disciplinary proceedings and related records pursuant to N.Y. Jud. Law Section 90(10). On November 4, 2021, Plaintiffs brought suit under 42 U.S.C. § 1983, alleging that Section 90(10) unconstitutionally restricts their First Amendment right of access to the proceedings and records related to the twenty-one formal Grievance Complaints filed by Plaintiffs against New York state prosecutors. They also sued the Corporation Counsel of the City of New York and the Queens District Attorney ("the City Defendants"), alleging that those defendants together with the State were illegally threatening Plaintiffs for publishing the Grievance Complaints in purported violation of Section 90(10).

Those Grievance Complaints, filed in May 2021, asked that the Second Department investigate and publicly discipline each attorney for his or her misconduct. Upon their filing, Plaintiffs were informed by the Second Department Grievance Committee, through its Chief Attorney, that pursuant to Second Department policy, the complaints would be investigated, if at all, through a *sua sponte* investigation by the Committee, and Plaintiffs would receive no further information regarding any action, or inaction, taken on their complaints unless public discipline was imposed, a sanction so unlikely that it was all but certain that any other discipline imposed

---

[1] The Complaint originally named Justice LaSalle, presiding Justice of the Second Department, the chair of the Grievance Committee and the chief counsel of Grievance Committee. At the request of the State, Plaintiffs dismissed all defendants except Justice LaSalle.

would remain under lock and key forever.  Plaintiffs were therefore forced to spend the next three years litigating before this Court to ensure that this was not the case, and they were successful.

On May 5, 2022, the Court denied State Defendants' motion to dismiss in full and denied Defendant Kearse and the City Defendants' motions in part, while reserving judgment on issues requiring a determination regarding the constitutionality of Section 90(10).  On June 13, 2022, the Court denied the remaining aspects of the motions to dismiss and granted Plaintiffs partial summary judgment on their Third Claim for relief, ruling that Plaintiffs had a First Amendment right to publish their Grievance Complaints.  Thereafter, Plaintiffs resolved their dispute with the City Defendants in a settlement in which the City agreed to pay Plaintiffs' reasonable attorneys' fees.  That number was calculated by assigning the City Defendants responsibility for one half of the fees incurred through the commencement of settlement.  *See* Diskant Decl. ¶¶18-19.  The remaining half was allocated to the State and is part of the relief sought here.

On July 22, 2024, Plaintiffs secured another significant summary judgment victory before this Court on their constitutional claims for access against the State.  In ruling on Plaintiffs' motion for summary judgment on its Fourth Claim, the Court declared that Plaintiffs have a presumptive First Amendment right to access (1) all disciplinary hearings in the Second Department considering imposition of public discipline related to Plaintiffs' complaints; (2) documents necessary to understand those hearings, including court orders, motions and related submissions, document evidence, and docket sheets; and (3) all dispositions made by the Grievance Committee pursuant to 22 N.Y.C.R.R. § 1240.7(d)(2)  related to their grievance complaints.  July 22, 2024 Decision and Order ("July 2024 Order"), at 117-118, ECF No. 209. The Court further declared that access to such proceedings and records may not be restricted absent "specific, on-the-record findings . . . that (1) restrictions serve higher values that would be

prejudiced by disclosure; (2) restrictions on disclosure are no more extensive than necessary to protect those higher values; and (3) that alternatives to restriction have been considered and would not reasonably protect those higher values." *Id.* at 118. This ruling brought the case to an end.

Plaintiffs therefore move, pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d)(2), for an award of reasonable attorneys' fees and costs associated with their successful challenge to Defendant's application of Section 90(10), both with respect to Plaintiffs' right to publish their Complaints and to Plaintiffs' right to access to disciplinary records. On both of these claims, the Third and Fourth Claim for relief, Plaintiffs were the prevailing party by virtue of having secured the declaratory relief referenced above. Specifically, Plaintiffs seek to recover $476,638.67, comprised of fees ($457,685.55) and costs ($18,953.12) for work performed from June 2, 2021 (the date the dispute began with Plaintiffs' receipt of the Johnson Letter, detailed further *infra*), through November 21, 2023 (the date work on the Plaintiffs' summary judgment motion concluded).

The attorneys' fees and costs Plaintiffs request are presumptively reasonable; as the prevailing party, Plaintiffs' request should, therefore, be granted. *First*, the rates requested here are the same rates that provided the basis for the heavily negotiated settlement reached between Plaintiffs and the City Defendants. Diskant Decl. ¶¶18-19. *Second*, these rates are commensurate with those that have been awarded to attorneys of comparable skill and experience in prior cases in this district, and they are significantly discounted from the rates normally charged by Plaintiffs' counsel, Patterson Belknap Webb & Tyler LLP ("Patterson")—which represented Plaintiffs entirely *pro bono* for the work in question. *Third*, the requested award is preeminently reasonable in light of the novelty and complexity of the issues involved in this litigation and the experience— and success—of the Patterson attorneys who represented Plaintiffs in seeking relief, which required significant fact development, legal research, strategic analysis, and original drafting.

For the reasons set forth herein, this Court should grant Plaintiffs' motion and award them $476,638.67 in attorneys' fees and costs.

## STATEMENT OF FACTS

Because the Court is familiar with the underlying facts, *see* January 25, 2022 Order to Unseal, ECF No. 58; May 5, 2022 Decision and Order ("May 2022 Order"), ECF No. 90; June 13, 2022 Decision and Order ("June 13 Order"), ECF No. 94; July 22, 2024 Decision and Order ("July 2024 Order"), ECF No. 209, Plaintiffs summarize them only briefly.

On May 3, 2021, the Plaintiff Law Professors, with support of the Plaintiff Civil Rights Corps ("CRC"), filed twenty-one (21) complaints pursuant to New York Judiciary Law § 90(10) (the "Grievance Complaints") against individual attorneys currently or formerly employed by the Queens County District Attorney's Office for misconduct committed while working as an assistant district attorney. *See* July 2024 Order, at 19 (citing Pls. 56.1 ¶ 2, ECF No. 174). The Law Professors asked that the Second Department investigate and publicly discipline each attorney for the documented misconduct. *See* Pls. 56.1¶ 3. The Law Professors also published their Grievance Complaints online at AccountabilityNY.org. *See* Nov. 4, 2021 Compl. ("Compl."), ECF No. 1 ¶¶ 3; 52; see also June 13 Order at 3.

On June 2, 2021, James Johnson ("Johnson"), former Corporation Counsel for the City of New York, wrote a letter (the "Johnson Letter") to the Committee, copying the Law Professors, expressing his view that publication of the Grievance Complaints online was an "abuse of the grievance process to promote a political agenda" and violated State law, specifically Section 90(10). *See* July 2024 Order at 20 (first citing Ex. 1 to Compl. at 3; and then citing June 13 Order at 4–5.) Johnson also expressed his view that even publication of his own letter criticizing the Law Professors would be a violation of the same law. *Id.* (citing Ex. 1 to Compl. at 3 n.4). On June 11, 2021, the Grievance Committee for the 2nd, 11th, and 13th judicial districts, through its

Chief Attorney, Diana Maxfield Kearse ("Kearse"), responded to the Grievance Complaints with its own letter (the "Kearse Letter"), which was labelled "Confidential" and advised the Law Professors that, because the complaints were "based on information derived from public sources, specifically, court decisions and court records," the Committee would initiate any investigation sua sponte. *Id.* (first citing Pls. 56.1 ¶ 5; Def. 56.1 ¶ 60; and then citing Ex. 2 to Compl.). Accordingly, the Law Professors would not be treated as "complainants" in accordance with § 1240.2(e) of the New York Codes, Rules and Regulations ("NYCRR"), and would not receive the notice to which complainants are entitled about the disposition of their complaints under §1240.7(d)(1)(iii); (d)(3); and (e)(4). *Id.* at 21 (citing Pls. 56.1 ¶¶ 6-7). Instead, pursuant to the Second Department policy, any action by the grievance committee would "remain confidential" under Section 90(10). *Id.*

Frustrated by further attempts over the next few weeks to obtain any information regarding the status of the Grievance Complaints or to otherwise resolve the matter through letter correspondence, on November 4, 2021, Plaintiffs initiated this litigation pursuant to 42 U.S.C. Section 1983, asserting five claims for declaratory and injunctive relief: (1) that Defendants retaliated against the Plaintiffs in violation of their First Amendment rights; (2) violations of the Fourteenth Amendment's Equal Protection Clause; (3) that Section 90(10) violates the First Amendment of the United States Constitution and Article I, Section 8 of the New York Constitution, both facially and as-applied; (4) Defendants violated the Constitutions of the United States and of New York by denying Plaintiffs their right to access government proceedings and records; and (5) if the Court finds that Section 90(10) is not unconstitutional, that Defendants must allow access to the records at issue under the statute's good-cause exception.

From the time the Complaint was filed, the State fought hard against any relief for the Plaintiffs and sought to shroud any information regarding New York's attorney disciplinary

process and the Grievance Complaints in secrecy.  At the outset of the case, the Plaintiffs had filed

all the exhibits to the Complaint under seal in light of the threats from the State and the City

Defendants that they must be treated as secret under Section 90(10), even though the exhibits were

merely correspondence between Plaintiffs and the Defendants regarding the Johnson letter and the

handling of the Grievance Complaints in the Second Department.  Therefore, immediately after

filing the Complaint, Plaintiffs moved to unseal the Exhibits.  *See* ECF No. 9.  Both the State and

City Defendants opposed Plaintiffs' motion in detailed letter briefing.  *See* ECF Nos. 48–50.  Upon

consideration of Plaintiffs' motion, the Court issued an order authorizing the unsealing of the

exhibits of the Complaint, finding that such exhibits are judicial documents central to the claims

in the case to which a strong presumption of public access applies under both the common law and

First Amendment right of access and cannot be overcome by any countervailing interest.  *See* ECF

No 58.

        Around the same time, in January 2022, Defendants filed three letters explaining

their intent to seek dismissal, ECF Nos. 36, 41, 47, which the Court construed as Defendants'

respective motions to dismiss the Complaint.  *See* Order on MTD, ECF No. 90.  Plaintiffs opposed.

*See* ECF Nos. 39, 44, 55.  While the motions to dismiss were *sub judice*, on February 22, 2022,

Plaintiffs filed a motion for partial summary judgment on Count III of the Complaint.  The City

Defendants, State Defendants, and Defendant Kearse filed three separate oppositions to Plaintiffs'

motion for summary judgment, ECF Nos. 77, 78, 82, to which Plaintiffs replied, ECF No. 85.

        On May 5, 2022, this Court mostly denied Defendants' motions to dismiss,

reserving some issues raised by those motions for future consideration.  *See Civil Rights Corps v.*

*Pestana*, No. 21-CV-9128, 2022 WL 1422852 (S.D.N.Y. May 5, 2022), ECF No. 90.  In a

subsequent decision, this Court ruled in favor of Plaintiffs as to all the reserved issues on

Defendants' motions to dismiss and granted Plaintiffs' motion for partial summary judgment on

Count III.  *See Civil Rights* Corps *v. Pestana*, No. 21-CV-9128, 2022 WL 2118191 (S.D.N.Y. June 13, 2022), ECF No. 94.  More specifically, the Court held that "Section 90(10)'s prohibition on (1) publication of attorney grievance complaints by the private individuals who filed the complaints, and (2) publication of correspondence related to grievance complaints or . . . Committee business by the private recipients of that correspondence" constituted a prior restraint on constitutionally protected speech, and that the restraint was not narrowly tailored to protect a compelling governmental interest.  *Id.,* 2022 WL 2118191 at *7; see also *id.* at *10.  The Court denied summary judgment on the Third Claim to the extent it raised a facial challenge to Section 90(10).  *Id.* at *10.

In the ensuing months, the parties engaged in discovery and exchanged documents and correspondence regarding Plaintiffs' remaining claims.[2]  The parties also engaged in settlement discussions and conferences with Magistrate Judge Figueredo that resolved some of the claims in the case.  Significantly, Plaintiffs and the City Defendants were able to reach a settlement agreement that included Plaintiffs receipt of a monetary amount that accounted for the City Defendants' share of Plaintiffs' reasonable attorney fees accrued through December 19, 2022.  This share was calculated by applying rates agreed upon between the parties and found to be reasonable by courts in this district for work performed by attorneys of varying levels of experience, multiplying those rates by the hours of work performed, applying a ten percent discount to that total to account for any potential overbilling, and then dividing the number in half to represent the City Defendants' responsibility for the hours expended.  As a consequence of this negotiation, the Plaintiffs and the City Defendants agreed that the City would pay half the total reimbursable legal fees through December 19, 2022, to the Plaintiffs.  Plaintiffs now seek the other

---

[2]  Although the City Defendants sought to stay all discovery pending their interlocutory appeal of the Court's decision on qualified immunity, the Court denied their motion in part, finding them unlikely to succeed on the merits of the immunity claim, and granted it as to discovery unrelated to claims for equitable relief.  *See* ECF No. 111.

half of that sum, $195,687.00, from the State for its share of work performed through the date of the settlement with the City.[3]

Although settlement with the State was not achieved, in order to streamline the issues remaining in the case, Plaintiffs agreed to voluntarily dismiss, without prejudice, Counts I, II, and V against the State Defendants. *See* ECF No. 156. They also dismissed all claims, in their entirety, against Defendants Kearse and Bonina. *Id.*

At the close of discovery, Plaintiffs moved for summary judgment against the State on the remaining Fourth Claim, seeking declaratory judgment that Plaintiffs have a First Amendment right (1) to attend any hearings in the Second Department that may result from the Grievance Complaints, (2) to view records of the Second Department necessary to understand those hearings, and (3) to view the final dispositions of the Grievance Complaints reached by the with respect to the Grievance Complaints that had been filed, even if reached without a hearing. The State filed a cross-motion for summary judgment, arguing *inter alia*, that this Court did not have jurisdiction over Plaintiffs' claim and that Defendant LaSalle enjoyed absolute immunity from suit.

On July 22, 2024, the Court, in a 118-page opinion, granted Plaintiffs' motion, in part, and denied LaSalle's cross motion to dismiss on various jurisdictional and immunity grounds. In its opinion, the Court conducted a thorough analysis of the history of attorney grievance proceedings in the United States dating back to the 19th century and the logical benefits served by a system of openness. *See* July 2024 Order, at 77-109. Through such an analysis, the Court determined that there exists a presumptive right of access under the First Amendment to any hearings in the Second Department associated with the Grievance Complaints and their related

---

[3] The City Defendants in total paid $200,000 to settle the claims against them. The additional amount was added in an effort to resolve the matter after further negotiation regarding amounts owed for the CRC attorneys' work. Plaintiffs do not seek to recover fees for the CRC attorneys in this motion.

records, in addition to the final dispositions of the Grievance Committee, as set forth in Section 1240.7(d)(2).  *Id.* at 117-18.   Absent "specific, on-the-record findings . . . that restrictions serve higher values . . . are no more extensive than necessary to protect those higher values . . . and . . . that alternatives to restriction have been considered and would not reasonably protect those higher values," these rights may not be abridged.  *Id.* at 118.

   To Plaintiffs' knowledge, this is the first time a Court in this Circuit has determined that such rights to such proceedings and documents exist under the First Amendment.  As this Court noted in its opinion, this landmark ruling will substantially improve and benefit not only the public, but the entire process of attorney disciplinary proceedings in the Second Department.  *Id.* at 85-91, 106, 108.

   Plaintiffs now move for an award of $457,685.55 in fees and $18,953.12 in costs for the work of their law firm, Patterson Belknap Webb & Tyler, LLP ("Patterson"), on the merits of their challenge to the Defendants' application of Section 90(10).  Diskant Decl. ¶¶ 10-11.  The request is in two parts.  First, Plaintiffs seek fees and costs for 50 percent of work performed from the inception of the dispute until the parties commenced settlement negotiations.  Second, Plaintiffs seek fees and costs for 100 percent of the work performed thereafter until the completion of summary judgment briefing.[4]  The requested rates and hours for the Patterson timekeepers as to whom Plaintiffs seek to recover attorneys' fees for work performed on this matter between June 2, 2021, and December 19, 2022, and December 20, 2022 through November 21, 2023 are as follows:

---

[4]  Plaintiffs have also reduced the fees sought between December 20, 2022 and November 21, 2023 by any hours billed exclusively towards reaching settlement with the City Defendants in 2023.

| Unbilled Time from June 2, 2021 through December 19, 2022 | | | |
|---|---|---|---|
| Timekeeper | Hours | **Discounted Rate** | Total |
| *Partners* | | | |
| Diskant, Gregory L. | 165.20 | $600.00 | $99,120.00 |
| Knobler, Jonah M. | 3.80 | $600.00 | $2,280.00 |
| *Senior Associates* | | | |
| Kinkle, Jeffrey | 225.00 | $375.00 | $84,375.00 |
| Skinner, Jeffrey | 140.10 | $375.00 | $52,537.50 |
| Walter-Warner, Jake O. | 143.80 | $375.00 | $53,925.00 |
| Kim, Esther | 15.10 | $375.00 | $5,662.5 |
| *Midlevel Associates* | | | |
| Shane, Elisabeth | 186.70 | $325.00 | $60,677.50 |
| Chaudhuri, Gargi | 121.90 | $325.00 | $39,617.50 |
| Attadgie, Shelley | 28.70 | $325.00 | $9,327.50 |
| *Junior Associates/Law Clerk* | | | |
| Wells, Andrew | 115.00 | $150.00 | $17,250.00 |
| *Paralegals/Litigation Practice Support* | | | |
| Dauenheimer, Michael R. | 13.30 | $125.00 | $1,662.50 |
| O'Shea, Sean | 16.30 | $125.00 | $2,037.50 |
| Tilahun, Samson | 20.60 | $125.00 | $2,575.00 |
| Carvalho, Leonardo | 13.80 | $125.00 | $1,725.00 |
| Weng, Stephanie | 13.30 | $125.00 | $1,662.5 |
| Holliday, Rachel | 3.40 | $125.00 | $425.00 |
| | | | |
| **Total Fees** | | | **$434,860.00** |
| **Discount for Overbilling** | | 10% | **$391,374.00** |
| **Total State Defendant Share** | | 50% | **$195,687.00** |

| Unbilled Time from December 20, 2022 through November 21, 2023 | | | |
|---|---|---|---|
| **Timekeeper** | **Hours** | **Discounted Rate** | **Total** |
| *Partners* | | | |
| Diskant, Gregory L. | 103.80 | $600.00 | $62,280.00 |
| *Senior Associates* | | | |
| Brandon, Jacqueline L. | 12.30 | $375.00 | $4,612.50 |
| *Midlevel Associates* | | | |
| Shane, Elisabeth | 236.20 | $325.00 | $76,765.00 |
| Chaudhuri, Gargi | 33.70 | $325.00 | $10,952.50 |
| Attadgie, Shelley | 261.6 | $325.00 | $85,020.00 |
| *Junior Associates/Law Clerk* | | | |
| Wells, Andrew | 335.00 | $150.00 | $50,250.00 |
| *Paralegals/Litigation Practice Support* | | | |
| Tilahun, Samson | 19.40 | $125.00 | $2,425.00 |
| Manning, William | 1.70 | $125.00 | $212.50 |
| Carvalho, Leonardo | 12.60 | $125.00 | $1,575.00 |
| Weng, Stephanie | 5.50 | $125.00 | $687.50 |
| Coggins, Stephanie A. | 19.00 | $125.00 | $2,375.00 |
| Kosman-Rimskiy, Roman | 1.90 | $125.00 | $237.50 |
| Maitland, Kurt | 6.10 | $125.00 | $762.50 |
| Holliday, Rachel | 4.20 | $125.00 | $525.00 |
| | | | |
| **Total Fees** | | | **$298,680.00** |
| **Less Value of Hours Billed toward Settlement with the City** | | 21.6 hours for $7,570.50 | **$291,109.50** |
| **Discount for Overbilling** | | 10% | **$261,998.55** |
| **Total Fees for Entire Period** | | | **$457,685.55** |

Application of these discounted rates to the hours billed by these team members yields a significant discount from the total fees that would have been chargeable at Patterson's customary rates and is a fair accounting of the value of time worked on prevailing in this litigation.

## ARGUMENT

Under 42 U.S.C. § 1988(b), a court "may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."   Courts have discretion in deciding whether to award fees, but "this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees." *Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001).  Although Section 1988(b) provides that attorneys' fees are not recoverable in an action against a judicial officer "for an act or omission taken in such officer's judicial capacity," judges have no immunity from an attorneys' fee award under 42 U.S.C.A. § 1988, if the official is not immune from the underlying relief on which the award is premised.  That, is, judicial immunity does not bar an award of attorneys' fees in cases in which prospective relief was properly awarded against the defendants. *Pulliam v. Allen*, 466 U.S. 522, 526-44 (1984).[5]

Here, Plaintiffs are the prevailing party on their challenge to Section 90(10) because they obtained nearly the full extent of declaratory relief sought from the Court in both of their motions for summary judgment, and Defendant's motions were denied in full.  *See Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Commc'n*, 934 F.3d 238, 243 (2d Cir. 2019) ("To qualify as a prevailing party, a plaintiff 'must obtain at least some relief on the merits of his claim.'") (quoting *Farrar v. Hobby*, 506 U.S. 103, 111(1992)).

---

[5] Further, as the Court noted in its summary judgment opinion, Plaintiffs did not challenge the *adjudicatory* acts of Judge LaSalle as unconstitutional, rather, his administration implementation of Section 90(10), *see* July 22 Order at 49, 70, and Section 1988(b)'s restriction does not apply to such actions taken by a justice in an administrative capacity. *See Chrysafis v. Marks*, 21-CV-2516 (GRB)(AYS), 2023 WL 6158537, at *2 n.1 (E.D.N.Y. Sept. 21, 2023) ("The parties agree that the provision in Section 1988(b) that attorneys' fees are not recoverable in an action against a judicial officer "for an act or omission taken in such officer's judicial capacity" does not apply here because defendant was sued not in his judicial capacity, but rather in his administrative capacity as New York State's Chief Administrative Judge.").

Plaintiffs seek customary intra-district rates for a novel, complex, and important case, which were also the basis for the monetary settlement between Plaintiffs and the City Defendants. These fees are reasonable and the Court should therefore grant Plaintiffs' motion.

## I.      Plaintiffs Are The Prevailing Party.

District courts are authorized by the Civil Rights Attorney's Fees Awards Act of 1976 to award reasonable attorneys' fees to a "prevailing party" in Section 1983 actions. 42 U.S.C. § 1988(b). A plaintiff "prevails" for purposes of Section 1988 if he or she "succeed[s] on any significant issue in ligation which achieved some of the benefit the [plaintiff] sought in bringing suit." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) (alteration omitted) (quoting *Tex. State Teacher's Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)).

Here, Plaintiffs are the prevailing party because the Court granted their motions for summary judgment in almost all respects, denied Defendant's motions in their entirety, and awarded Plaintiffs the relief sought by declaring their right to publish their complaints and correspondence with the Grievance Committee and their presumptive right to access all disciplinary hearings, related records, and final dispositions related to the twenty-one grievance complaints filed on May 3, 2021, *see* July 2024 Order at 117-118, access to which they were previously denied under Defendants' application of New York Section 90(10). *See, e.g., KCG Holdings v. Khandekar,* No. 17-CV-3533, 2021 WL 623927, at *4 (S.D.N.Y. Feb. 17, 2021) (even when full extent of relief sought was not granted, the Court considered Plaintiffs prevailing parties where it granted them summary judgment on three of their four claims, dismissed all of Defendant's counterclaims, and then granted Plaintiffs an injunction).

As such, Plaintiffs are entitled to their reasonable attorneys' fees and costs.

## II.    The Fee Amount Requested Is Reasonable.

"Once a district court determines that a party has prevailed, it must calculate what constitutes a reasonable attorney's fee." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). In determining "the presumptively reasonable fee," district courts consider various factors, including the *Johnson* factors, in ascertaining a reasonable hourly rate, and then multiply that rate "by the number of hours reasonably expended." *Capital2Market Consulting, LLC v. Camston Wrather, LLC,* No. 22-CV-7787, 2023 WL 2366975, at *5 (S.D.N.Y. Mar. 6, 2023)); *see also Leblanc-Sternberg*, 143 F.3d at 763-64 ("The process of determining a reasonable fee ordinarily begins with the court's calculation of a so-called 'lodestar' figure, which is arrived at by multiplying 'the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" (citation omitted)). The Second Circuit has instructed courts to be "mindful of the Supreme Court's observation that 'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckhart*, 461 U.S. 424, 435 (1983).

Here, the rates and hours used to calculate Patterson's fees request and the rates charged are reasonable in light of rates found to be reasonable by courts in this district for work performed by attorneys of varying levels of experience, the results obtained, the qualifications of the team, and the novelty and difficulty of the constitutional issues before the Court. Moreover, the final numbers were heavily negotiated with the City Defendants and are a reduction not only from Patterson's ordinary rates, but from the rates Plaintiffs originally sought in this case as reasonable.

**A.     The Hourly Rates Are Reasonable.**

A reasonable hourly rate is "what a reasonable, paying client would be willing to pay." *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289– 90 (2d Cir. 2011).   It "should be based on market rates 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).   "In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* [*v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),] factors," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19).

Courts also approve "higher billing rates" in cases involving "difficult constitutional questions," because those cases require "impressive credentials and deep relevant experience" of counsel and require considering "the customary billing rates of these lawyers." *HomeAway.com*, *v. City of N.Y.*, 523 F. Supp. 3d 573, 596-97 (S.D.N.Y. Mar. 1, 2021).

Patterson's requested rates here—$600/hour for partners, $375/hour for senior associates, $325/hour for midlevel associates, $150/hour for junior associates/law clerks, and $125 for paralegals and litigation support professionals—reflect significant discounts off the rates actually charged to Patterson clients and are certainly consistent with (if not lower than) the market rate of firms of "reasonably comparable skill, experience, and reputation" in the Southern District

of New York, including as recognized in recent statutory fee awards.  *HomeAway.com, Inc.*, 523 F. Supp. 3d at 601 (awarding rates of $650 for partner with extensive civil rights experience, $600 for partner with less experience in this area, $500 for counsel, $400 for senior associates, $375 mid-level associate, $300 for junior associates, and $150 for legal assistants in a complex civil rights case under 42 U.S.C. § 1988); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 96-CV-8414, 2021 WL 6105564, at *4 (S.D.N.Y. Dec. 2, 2021), *report and recommendation adopted*, 2021 WL 5866486 (S.D.N.Y. Dec. 8, 2021) (recommending an award of $650 per hour for partners; $500 per hour for counsel; $400 per hour for senior associates; $350 per hour for mid-level associates; $300 per hour for junior associates; and $175 per hour for paralegals and litigation support professionals); *Juscinska v. Meson Sevilla, Ltd.*, No. 19-CV-5284, 2021 WL 706548, at *2 (S.D.N.Y. Feb. 23, 2021) (awarding requested rate of $375 per hour for attorney with 15 years' experience, but noting prevailing rates of $400 to $600 per hour in civil rights cases).

What's more, these rates are a reduction of the rates Plaintiffs originally sought from the City Defendants and were already relied upon as the basis for Plaintiffs' monetary settlement with the City Defendants in this action.  More specifically, in December 2023, the City Defendants and Plaintiffs settled for an amount calculated by applying the rates set forth above for each timekeeper who billed time to this case through December 19, 2022, applying a ten percent discount to account for any potential excessive billing, and then dividing that number by fifty percent to account for the City Defendants' share of the fees for the litigation up to that point.  Plaintiffs accordingly seek the fees associated with the State's liability on Count III, and the remainder of the fees for time Plaintiffs' counsel expended subsequent to December 19, 2022, to litigate the remaining claims in the case against the State.

The requested rates are also reasonable considering "the reputation and ability of the attorney[s], the attorney[s'] experience, and the level of skill required for the particular case."

*Arbor Hill*, 522 F.3d at 188.   Patterson's lead attorney, Gregory Diskant, is a highly accomplished trial lawyer with over thirty years of litigation experience, with particular expertise in constitutional litigation and significant experience challenging government action.  In recent years, Mr. Diskant's work has taken him to the United States Supreme Court, representing a pro bono client on a constitutional challenge to political gerrymandering.  *See* Diskant Decl. ¶33.  Further, nearly all of the associates on the team had significant clerkship experience and/or experience challenging government action.   *See, e.g.*, *id*. ¶¶ 35-42.   The team's collective experience, expertise, and credentials all support hourly rates in line with those approved in comparable cases.

Finally, the requested rates are also well-justified in light of "the novelty and difficulty of the questions" and the "results obtained."   *Arbor Hill*, 522 F.3d at 186 n.3, 190.   As the Court's lengthy opinion makes clear, this case involved multiple complex legal questions relating not only to the merits of Plaintiffs' First Amendment claims, but also to the Court's ability to consider such claims, including analyses of various jurisdictional, standing, immunity, and abstention doctrines.  The First Amendment questions at issue were ones of first impression which reasonably required a greater expenditure of time, including hours of legal research into the history of attorney disciplinary proceedings across the United States since the early 18th century and a complex review of multi-jurisdictional case law and policies to successfully prove the merits of this novel claim.   Ultimately, Plaintiffs' efforts in culminated in an "excellent result[]": the public now has an established, presumptive First Amendment right of access to hearings and related records and documents and such openness will substantially benefit the attorney disciplinary proceedings in the Second Department.  July 2024 Order at 85-91, 106, 108.

### B.    The Hours Expended Were Reasonable.

The reasonableness of the hours an attorney expends depends on "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time

expenditures." *Grant*, 973 F.2d at 99.   While the court should make "a conscientious and detailed inquiry" to ensure that the "number of hours were usefully and reasonably expended," *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994), "favorable results obtained" by a prevailing party support a finding that the hours billed were reasonable, *Najera v. 144 Ninth Gotham Pizza, Inc.*, 2017 WL 728703, at *2 (S.D.N.Y. Feb. 24, 2017).   Work done prior to the filing of a complaint— including work done developing the theory of the case—is included in the fee award when the work "was useful to advance the federal claims subsequently asserted [in the complaint]."   *Davis v. City of New York*, No. 10-CV-699, 2011 WL 4946243, at *5-6 (S.D.N.Y. Oct. 18, 2011); *see also Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985).

Here, the work Patterson performed in the weeks leading up to filing the lawsuit— which included in-depth research into First Amendment jurisprudence and case law regarding the application of N.Y. Jud. Law Section 90(10), the development of a factual record and strategy, and correspondence with Defendant Kearse and the Acting Corporation Counsel for the City—all went toward "advanc[ing] the federal claims subsequently asserted" and is thus compensable.   *Davis*, 2011 WL 4946243, at *5.   That pre-suit work directly informed the preparation of what was to become the 40-page, 107-paragraph complaint filed in on November 4, 2021.

The case proceeded expeditiously from the time of filing.  A little over a month after filing the Complaint, Plaintiffs sought leave to file a motion for summary judgment on Count III of their complaint.  By April 2022, Plaintiffs fully briefed and filed a 25-page memorandum in support of its motion for partial summary judgment, supported by an attorney declaration and 15 Exhibits, and a 25-page reply brief in response to three separate opposition briefs filed by the City Defendants, State Defendants and Defendant Kearse.

Following months of discovery – which included preparing for and taking the deposition of Diana Kearse, who had been voluntarily dismissed as Defendant in the case – meet

and confers, conferences before Magistrate Judge Figueredo, and simultaneous attempts to settle,[6] Plaintiffs filed their second motion for summary judgment on Count IV of the complaint, which was accompanied by a 25-page memorandum, attorney declaration, and 22 exhibits.  As detailed above, the preparation of summary judgment motions for both Counts III and IV in this case required extensive research into procedural and substantive arguments regarding jurisdiction, qualified immunity, abstention, standing, and First Amendment jurisprudence, in addition to the synthesis and analysis of complex Second Department rules and regulations pertaining to attorney disciplinary proceedings.  And of course, Plaintiffs faced opposition from the State at every step, with the State filing a letter motion to dismiss all claims, a 30-page memorandum in opposition to Plaintiffs' motion for summary judgment on Count III, and its own cross motion for summary judgment on Count IV, accompanied by a 35-page memorandum, five declarations, and 15 exhibits.  *See Bailey v. Pataki*, 2016 WL 3545941, at *4 (S.D.N.Y. June 16, 2016) ("Defendants hotly contested this entire litigation and were represented by the Office of the New York Attorney General . . . in light of their adversaries' substantial efforts, plaintiffs' intense preparation . . . w[as] necessary."); *Pastre v. Weber*, 800 F. Supp. 1120, 1126 (S.D.N.Y. 1991) (finding that "the time expended in connection with [a] summary judgment motion was fully warranted" where "[t]he motion was complex and aggressively pursued.").

Despite the extensive work required to successfully litigate this case, the Patterson case team was leanly staffed, with no more than three associates working on the matter at one time[7], and only one partner leading the team for a vast majority of the case.  *See* Diskant Decl. ¶ 13. The

---

[6] The Patterson attorneys are also entitled to reimbursement for reasonable efforts undertaken to reach settlement with the State.  *Sugarman v. Vill. of Chester*, 213 F. Supp. 2d 304, 312 (S.D.N.Y. 2002) ("This conclusion is consistent with the general public policy that courts should encourage settlement whenever possible, for to deny civil rights attorneys from recovering fees expended during settlement efforts would create an unnecessary disincentive to settlement.").

[7] With the exception of a three-month period between December 2022 and March 2023 where four associates were staffed on the matter in order to assist with one associate's transition off the case, and a two-week period in October 2023 where an additional associate was brought in to assist on a discrete research issue.

hours expended by this team were reasonable and have already been voluntarily reduced by ten percent to account for any overbilling.

### III.    The Costs Requested Are Reasonable.

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg*, 143 F.3d at 763 (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)); *see also Miltland Raleigh-Durham v. Myer*s, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." (citation omitted)).    Recoverable disbursements include items such as fees for court reporting services, expenses for travel, mailing, photocopies, witness fees, filing fees, e-discovery vendor fees, and process server fees. *See, e.g., Reiseck v. Universal Commc'ns. of Miami, Inc.*, No. 06—CV-777, 2014 WL 5374684, at *8 (S.D.N.Y. Sept. 5, 2014) (expenses for travel, mailing, photocopies, witness fees, and research acceptable); *Silva v. Legend Upper W. LLC.*, 590 F. Supp. 3d 657, 667 (S.D.N.Y. 2022) (filing and process server fees acceptable); *28th Highline Assocs. v. Roache*, No. 18-CV-1468, 2019 WL 10632851, at *6 (S.D.N.Y. July 29, 2019), adopted by, 2020 WL 5659465 (S.D.N.Y. Sept. 23, 2020) (awarding $40,000 for e-discovery hosting, processing, and production costs).    The Second Circuit also holds that "charges for . . . online research may properly be included in a fee award." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004).

Here, Plaintiffs' request for $18,953.12 in costs is reasonable.    Plaintiffs seek recovery only for those costs "'incidental and necessary' to the[ir] representation." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987).    The Court should approve Plaintiffs' request for $18,953.12 in costs.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion and award them $476,638.67 in attorneys' fees and costs associated with their work successfully challenging the State's application of N.Y. Jud. Law Section 90(10).

Dated: August 5, 2024
      New York, New York

Respectfully submitted,

/s/ Gregory L. Diskant_____
Gregory L. Diskant
Elisabeth Shane
Shelley Attadgie
PATTERSON BELKNAPWEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel:212-336-2000
Fax:212-335-2222
gldiskant@pbwt.com
eshane@pbwt.com
sattadgie@pbwt.com

*Attorneys for Plaintiffs*